FILED
JOHN P. HEHMAN
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

2012 NOV 27 PM 2: 42

| | |
|---|---|
| VINCENT LUCAS,<br>Plaintiff,<br><br>v.<br><br>MANCHESTER SERVICES, INC., a Missouri<br>corporation;<br><br>SUB-PAR VENTURES, LLC, a Missouri limited<br>liability company;<br><br>QALL CORD PHILIPPINES LTD CO., a<br>business incorporated in the Philippines;<br><br>TELEMARKETER CALLING FROM (407) 476-<br>5680 AND OTHER TELEPHONE NUMBERS,<br>Defendants. | Case No. 1:12CV630-SAS-SKB<br>Judge Spiegel<br>Magistrate Judge Bowman<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**1. Violation of the Federal Telephone<br>Consumer Protection Act (47 USC §<br>227, 47 CFR § 64.1200)**<br><br>**2. Violation of the Ohio<br>Telemarketing Act (Ohio Rev. Code §<br>109.87) and Ohio Telephone<br>Solicitation Act (Ohio Rev. Code §<br>4719)**<br><br>**3. Violation of the Ohio Consumer<br>Sales Protection Act (Ohio Rev. Code<br>§ 1345)**<br><br>**4. Invasion of privacy by<br>unreasonable intrusion**<br><br>**5. Negligence**<br><br>**6. Nuisance** |

## INTRODUCTION

1.  Manchester Services, Inc. ("Manchester") and Sub-Par Ventures, LLC ("Sub-Par") permit

their telephone numbers to be used by foreign companies who use these telephone numbers to

make illegal telemarketing calls that violate the Telephone Consumer Protection Act and Ohio

Telephone Solicitation Act. The calls also invade consumers' right to privacy by intrusion into

1

the solitude of their homes. The term "consumer" is used hereinafter to refer to a recipient of a telemarketing call. The Manchester Services and Sub-Par Ventures know or conscientiously avoid knowing that their telephone numbers are being used for illegal telemarketing. These companies ignore obvious signs that their numbers are being used for illegal telemarketing, and these companies continue to permit their numbers to be used for illegal telemarketing after receiving numerous complaints of illegal telemarketing.

2.  Manchester Services directly profits from the illegal telemarketing calls through revenue they receive for caller ID name (CNAM) database queries. When the consumer's local telephone company receives a call with one of these Defendants' telephone numbers as the caller ID number, the local telephone company either

    a.  does a CNAM database query to determine the name that should be displayed on the consumer's caller ID device, or

    b.  does not send the caller name to the consumer's caller ID device.

These Defendants are paid by the consumer's local telephone company each time that the telephone company makes a query into these Defendants' CNAM databases.

3.  Furthermore, Manchester Services shares some of the revenue for CNAM database queries with the telemarketing companies. This revenue sharing scheme inherently encourages illegal telemarketing – *paying the telemarketers for their illegal calls*. Because of this revenue-sharing scheme, the telemarketer profits from the call even when the consumer does not answer the telephone or when the consumer rejects the telemarketer's offer.

4.  It is believed and alleged in good faith that Sub-Par Ventures also derives revenue from CNAM database queries and also shares CNAM revenue with foreign telemarketing companies.

This belief is based on the fact that Manchester Services and Sub-Par Ventures have common management and the same telemarketing message was used in calls from Manchester and Sub-Par telephone numbers.

5.  Manchester Services and Sub-Par Ventures put the general public at great danger by permitting their telephone numbers to be used by foreign telemarketing companies.

      a. The courts where these foreign companies reside may refuse to enforce a U.S. court judgment based on the Telephone Consumer Protection Act or Ohio Telephone Solicitation Act or may not cooperate in permitting discovery.  Hence, there is heightened danger that a foreign company will ignore U.S. telemarketing laws.

      b. Furthermore, consumers who give the telemarketer personal information such as credit card numbers or agree to purchase something from the telemarketer have little or no legal recourse if they have a problem.  As described later, the telemarketer deliberately conceals its identity.  Even if the consumer learns the identity of the telemarketer, obtaining and enforcing a judgment in a foreign court against the telemarketer may be impractical.  Furthermore, by displaying a U.S. telephone number on the consumers' caller ID device, the consumer is misled into believing that they are talking to a U.S. company who they could sue and enforce judgment against in U.S. courts.

6.  The risk of harm to the public described above was foreseeable and self-evident. Manchester Services and Sub-Par Ventures were negligent in providing the services and revenue-sharing plan described in this Complaint and failing to take precautions to reduce the likelihood that their services would be used for illegal telemarketing.

7.  The risk of harm was so foreseeable and self-evident that Manchester Services and Sub-Par Ventures are not just negligent but also reckless and they inflicted the resulting harm willfully and knowingly.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over the claims herein pursuant to 47 USC § 227(b)(3), 47 USC § 227(c)(5), and Ohio Rev. Code § 2305.01.  This venue is appropriate because all the telephone calls described in the following paragraphs were received in Clermont County, Ohio.

## FACTS

9.  In July 2002, Cincinnati Bell assigned the phone number (513) 947-1695 to my residential telephone line in Clermont County, Ohio.  That phone number has been assigned to my residential phone line ever since.

10. The phone number (513) 947-1695 is on the national Do Not Call registry (http://donotcall.gov) and has been since July 1, 2003.

11. Defendants do not have an "established business relationship" with me as that term is defined in 47 USC § 227(a)(2) and 47 CFR § 64.1200(f)(4) and I have not given the Defendants express invitation or permission to call me.

12. The outgoing message on my answering machine for my phone at (513) 947-1695 says

> This is Vincent Lucas.  This number is on the national Do Not Call registry.  If you have an established business relationship with me or you are calling about a non-business related matter, you may leave a message after the tone.

13. On August 9, 2012 at 4:05 p.m., I received the following message on my answering machine.

4

... account services and we're calling in reference to your current credit card account. There are no problems currently with your account. It is urgent however that you contact us concerning your eligibility for lowering your interest rate to as little as 6.9%. Your eligibility expires shortly so please consider this your final notice. Press the number 3 to discontinue further notices or press the number 1 on your phone now to speak with a live operator and lower your interest rates. Thank you. Have a great day.

The message was delivered to my residential phone line (513) 947-1695 using a pre-recorded voice. The message does not state the identity of the caller or the phone number from which the call was made. My caller ID showed that the message came from (407) 476-5680, but did not show the identity of the caller.

14. The same telemarketer has called me at telephone number (513) 947-1695 using the same pre-recorded message on 11/1/2012 and 10/1/2012. My caller ID has displayed the following as the caller's telephone number for these telephone calls: 646-417-9501 and 417-800-2317.

15. The same telemarketer also called me from 417-800-2317 on 10/12/2012 and from 417-800-2325 but did not leave a message.

16. The telemarketer also called me at telephone number (513) 947-1695 using the same pre-recorded message on 8/23/2012, 6/16/2012, 5/24/2012, 5/18/2012, 5/04/2012, 4/17/2012, 12/06/2011, 9/29/2011, 9/14/2011, 9/10/2011, and 7/22/2011. For these calls, my caller ID showed the following as caller's telephone number: 253-382-9908, 253-382-9903, 503-457-1300, 503-902-8480, 407-429-9999, 503-902-8479, 305-304-9999, 206-496-0802, 407-480-9999, 406-219-2301, 206-312-9999. The telemarketer also called me at (513) 947-1695 using a similar pre-recorded message offering to lower my interest rate on 9/7/2011, 9/9/2011, and 11/26/2012. For these calls, my caller ID showed the following as caller's telephone number: 508-475-1352, 508-475-1394, and 626-668-8224.

5

17. During one of the telephone calls described in ¶ 14, I pressed one to speak to a live representative. I asked the representative what the name and address of the business or organization is that was calling. The representative only identified the business as "card member services." When I pressed for more information regarding what the name of the business was, the representative said that the business was card member services for "Visa".

18. In truth, the telemarketer is not Visa U.S.A, Inc. and is not authorized by Visa U.S.A., Inc. to act on their behalf.

19. During another telephone call described in ¶ 14, I pressed one to speak to a live representative and again asked the representative for the name and address of the business or organization that was calling. Again the representative only identified the business as "card member services."

20. The prerecorded message and statements by the telemarketer's live representatives are intentionally designed to mislead the consumer into believing that the consumer already has a credit account with the telemarketer (or company that the telemarketer is calling on behalf of). The term "card member services" implies services for someone who already a card member, i.e. someone who has a credit card with the telemarketer. The term "card member services" is used by several banks, such as Chase Bank, First National Credit Card, and U.S. Bank, as the name of the customer service department for their credit card holders. The prerecorded message says "there are no problems currently with your account," implying that the consumer already has a credit account with the telemarketer.

21. The telephone numbers (407) 476-5680 and (646) 417-9501 are currently assigned to Manchester Services, Inc. and were assigned to that company on the dates of the telephone calls.

6

22. Manchester Services, Inc. claims that it is not responsible for originating the telemarketing call and claims that it had given Qall Cord Philippines Ltd. Co. permission to use Manchester's (407) 476-5680 telephone number. Manchester claims that the telephone number was assigned to Qall Cord Philippines on the date of the telephone call.

23. Qall Cord Philippines Ltd. Co. does business with Manchester Services, Inc. using the address Block 7, Lot 2 Hyacinth Street, Camella Homes 1, Muntinlupa City, Philippines 1772. Qall Cord Philippines Ltd. Co. is registered with the Philippines Securities and Exchange Commission.

24. The telephone numbers 417-800-2317 and 417-800-2325 are currently assigned to Sub-Par Ventures, LLC.

25. Chris Gose is a member of the Board of Directors of Manchester Services, Inc. and is the founder of Sub-Par Ventures, LLC.

26. Michael Starkey is a member of the Board of Directors of Manchester Services, Inc. and is the registered agent in Missouri for Sub-Par Ventures, LLC.

27. Other individuals or entities, whose identities are not known at this time, may be involved in the wrongful actions that are the subject of this lawsuit. This Complaint will be amended when their identities are discovered.

28. I have suffered actual economic loss as a result of the actions of the Defendants described above. The Defendants' actions have wasted my time. If it were not for the actions of the Defendants, I could have used that time to earn money by working more hours at my occupation.

## CAUSES OF ACTION

### I. VIOLATION OF THE FEDERAL TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), OHIO TELEMARKETING ACT, AND OHIO TELEPHONE SOLICITATION ACT

#### A. TELEMARKETING

29. The telemarketer willfully violated the Federal Telephone Consumer Protection Act and Ohio Telephone Solicitation Act by the actions described in ¶¶ 13-20. Namely,

- the telephone calls were made to a residential line using an artificial voice (47 USC § 227(b)(1)(B));

- the calls were made to a number listed on the national Do Not Call registry (47 USC § 227(c));

- the calls did not state the identity and telephone number or address of the entity making the call (47 USC § 227(d)(3)(A), Ohio Rev. Code § 4719.06);

- the calls were made by an entity that is not registered as a telemarketer in Ohio (Ohio Rev. Code 4719.02); and

- the telemarketer knowingly caused the caller identification system to transmitted false information during some of the calls (47 USC § 227(e)). The telemarketer transmits the false information as part of an effort to defraud, cause harm, and wrongfully obtain something of value by attempting to mislead the consumer into believing that the call is coming from a U.S. company with whom the consumer already has a line of credit.

30. The telemarketer also violated the Ohio Telemarketing Act at Ohio Rev. Code § 109.87(B)(1) by the actions described in ¶¶ 13-20.

#### B. VICARIOUS AND/OR CONTRIBUTORY LIABILITY OF DEFENDANTS WHO ASSISTED OR FACILITATED TELEMARKETING

31. As described in ¶ 2, Manchester Services and Sub-Par Ventures receive revenue when outbound calls are made using their telephone numbers. Hence, these Defendants receive revenue each time that a call is made using their phone numbers as the caller ID number and the consumer's local telephone company looks up the caller ID name for that number. If the local telephone company chooses not to look up the name, in lieu of the caller name the telephone company typically displays on the consumer's caller ID device the city and state associated with the telephone number.

32. Manchester Services gives Qall Cord Philippines Ltd. Co. permission to use telephone number (407) 476-5680, (646) 417-9501, and at least fourteen other numbers, knowing that the Qall Cord will transmit that number to the caller ID service as the telephone number of the caller.

33. Nevertheless, although (407) 476-5680 is Manchester Services's telephone number, Manchester Services claims that when Qall Cord Philippines makes outbound calls using that number, the telephone call does not originate from Manchester Services and is not routed through Manchester Services's equipment.

34. Manchester Services provide a Caller Name Management Service (CNAM-MS) which allows its clients to customize the caller ID name displayed to consumers when their clients call consumers using the telephone numbers supplied by Manchester Services. The service allows Manchester's clients to specify any name that they wish to be displayed on the caller ID.

35. The caller ID name that Qall Cord Philippines has put into Manchester's CNAM-MS system for (407) 476-5680 is "card services". Hence, if the consumer's telephone company looks up the caller ID name, the name that is displayed on the consumer's caller ID is "card services".

9

36. Manchester Services has a revenue sharing agreement with Qall Cord Philippines in which Manchester Services pays Qall Cord Philippines a portion of the revenue that Manchester receives for CNAM database queries.

37. On good-faith belief, Sub-Par Ventures also provides Caller Name Management Service and has a revenue sharing agreement with its client who uses the (417) 800-2317 telephone number.

38. Manchester Services also provides Qall Cord Philippines with an interactive voice response (IVR) system. If the consumer calls (407) 476-5680, this IVR system handles the call.

39. The IVR system provided by Manchester Services for (407) 476-5680 does not state the identity of the telemarketer, does not allow the caller to report a violation of the law, and does not allow the caller to speak with a live representative. When someone calls (407) 476-5680, the IVR system says

> You have been contacted for telemarketing purposes. If you do not wish to receive these calls and would like to be added to our do-not-call list, please press 1. If you would like to speak to a live person, please press 2.

However, when the caller presses 2 during normal business hours, the caller gets a message saying that the "mailbox is full" and is not able to speak with a live person.

40. On September 6, 2012, I sent a letter with the following message to Michael Starkey, Operations Officer for Manchester Services

> I am writing to notify you that telephone number (407) 476-5680 is being used to make telemarketing calls that violate 47 USC § 227 and Ohio Revised Code § 4719. Your most prudent course of action would be to immediately stop aiding Qall Cord Philippines Ltd. Co. and other foreign companies in placing calls to telephone numbers in the United States.

Starkey acknowledged receipt of the letter on September 7.

10

41. Nevertheless, after receiving the September 6 letter, Manchester Services continues to permit Qall Cord Philippines to use (407) 476-5680 and continues to share CNAM lookup revenues with them. Many others have received illegal telemarketing calls from (407) 476-5680 after September 7. When I asked Starkey what Manchester Services did in response to the letter, Starkey said that Manchester Services is not responsible for "policing" the use of their services.

42. Manchester Services and Sub-Par Ventures knew, should have known, or consciously avoided knowing that their telephone numbers were and are being used for telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c). Manchester Services permitted Qall Cord to use Manchester's telephone number after Manchester was aware of consumer complaints of illegal telemarketing. Manchester Services and Sub-Par Ventures ignored other evidence that its telephone numbers were and are being used for telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c).

43. Qall Cord Philippines Ltd Co. violated 47 USC § 227(e) by transmitting false caller ID information by transmitting (407) 476-5680 as the caller ID number. This caller ID number is false because the call does not originate from Manchester Services, which the entity that the telephone company has assigned that telephone number to, and the call is not routed through any of Manchester Service's equipment. Furthermore, the consumer cannot call (407) 476-5680 during normal business hours to find out the identity of the telemarketer or speak to a live representative of the telemarketer.

44. Manchester Services knowingly assisted and facilitated the violation of 47 USC § 227(e) by giving Qall Cord Philippines permission to use (407) 476-5680, knowing that Qall Cord would transmit false caller ID information by transmitting (407) 476-5680 as the caller ID number.

11

45. Qall Cord Philippines Ltd. Co. violated 47 USC § 227(e) by causing false caller ID name information to be transmitted to consumers through the actions described in ¶ 35. "Card services" is not the name of the telemarketer, and furthermore misleads the consumer as described in ¶ 20. Some consumers, such as the Plaintiff, saw "Orlando, FL" on their caller ID device instead of this name. This misleads consumers into believing that the telephone call is coming from a company located in the United States.

46. Manchester Services assisted and facilitated Qall Cord Philippines in violating 47 USC § 227(e). Manchester Services knew or consciously avoided knowing that Qall Cord Philippines had put false caller ID name information in Manchester's CNAM-MS system. Manchester Services had the right and ability to supervise Qall Cord Philippines's use of Manchester's CNAM-MS service, particularly what name Qall Cord Philippines puts into the CNAM-MS service.

47. Manchester Services encouraged and financially rewarded Qall Cord Philippines for the telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c) through its CNAM revenue-sharing program. Manchester Services had the right and ability to terminate Qall Cord's participation in the revenue-sharing program after learning that Qall Cord was using Manchester's telephone number for illegal telemarketing, but Manchester Services knowing chose not to. Sub-Par Ventures also encouraged and financially rewarded its client for the telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c) through its CNAM revenue-sharing program.

48. Manchester Services conscientiously avoided knowing that Qall Cord was using Manchester's telephone numbers for telemarketing calls that violate 47 USC § 227(b)(1)(B) and

12

(c) by providing an IVR system for answering inbound calls to (407) 476-5680 and not providing an option in that IVR system for consumers to report illegal telemarketing calls to Manchester.

49. Manchester Services and Sub-Par Ventures financially benefit from the calls from its telephone numbers that violate 47 USC § 227(b)(1)(B) and (c), through, inter alia, CNAM lookup revenue and fees Manchester charges Qall Cord for supplying the IVR system. Manchester Services and Sub-Par Ventures know or conscientiously avoid knowing that this revenue is derived from telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c).

50. Manchester Services and Sub-Par Ventures had the absolute right and ability to put any conditions or restrictions that it wants on the use of its telephone numbers. Manchester Services and Sub-Par Ventures could have put conditions or restrictions on the use of its telephone numbers that would have reduced the likelihood that the number would be used in making telemarketing calls that violate 47 USC § 227(b)(1)(B) and 47 USC § 227(c), but knowingly chose not to.

51. Manchester Services and Sub-Par Ventures knowingly materially assisted and facilitated the telemarketer in circumventing technology available to consumers for blocking unwanted telemarketing calls, thereby violating the consumer's right, provided by 47 USC § 227(c), not to be called. Various equipment and services are available to consumers that block telephone calls from specific telephone numbers. The consumer specifies which telephone numbers to block. However, Manchester Services, Sub-Par Ventures, and other companies have supplied the telemarketer with thousands of telephone numbers. As a result, the technology for blocking specific telephone numbers is ineffective in blocking the telemarketer's unwanted calls. Furthermore, even if the consumer learned every number supplied to the telemarketer by Manchester Services and Sub-Par Ventures and blocked every one of those numbers, the

13

telemarketer can obtain a new set of telephone numbers and again send unwanted calls to the consumer. The telemarketer used a different telephone number almost every time that they called me.

52. Manchester Services is vicariously and/or contributorily liable for the telemarketing calls sent to me using Manchester's telephone numbers. Sub-Par Ventures, LLC is vicariously and/or contributorily liable for the telemarketing calls sent to me using Sub-Par Ventures, LLC's telephone numbers.

## VIOLATION OF THE OHIO CONSUMER SALES PROTECTION ACT

53. Under 15 USC § 6102(c), any violation of the Telemarketing Sales Rule (16 CFR §§ 310.1-310.9) is an unfair or deceptive act or practice.

54. The telephone calls described in ¶¶ 13-19 are deceptive, unfair, and unconscionable and violate Ohio Rev. Code § 1345.02(A). Namely,

    a. The calls are designed to deceive the consumer into believing that the consumer already has a credit account with the telemarketer or company that the telemarketer is calling on behalf of. See ¶ 20.

    b. The pre-recorded message does not disclose the fact that the purpose of the call is to effect a new sale (in violation of Ohio Admin. Code § 109:4-3-11, 16 CFR § 310.4(d)(2)) and does not disclose the nature of the goods or services (violating 16 CFR § 310.4(d)(3)). The pre-recorded message instead leads the consumer to believe that the call is from an existing creditor, who might be offering to modify the terms of an existing line of credit.

14

c.  The telephone calls do not disclose the identity of the seller in violation of 16 CFR §
    310.4(d)(1).

d.  The telephone calls were made using a pre-recorded voice in violation of 16 CFR §
    310.4(b)(v).

e.  The telephone calls were placed to a number on the U.S. Do-Not-Call registry in
    violation of 16 CFR § 310.4(b)(iii)(B) and the Defendants did not honor my do-not-
    call request, expressed in my answering machine's outgoing message (¶ 12) and my
    correspondence with Michael Starkey (¶ 40).

## INVASION OF PRIVACY

55.  The persistent, unwanted telephone calls made by the telemarketer as described in ¶¶ 13-20
invaded my right to privacy by unreasonable intrusion into the solitude and seclusion of my
home.

## NEGLIGENCE

56.  The telemarketer was negligent per se in violating the Federal Telephone Consumer
Protection Act, Ohio Telephone Solicitation Act, and Ohio Telemarketing Act.

57.  A reasonable individual would recognize the risk of providing the services and revenue-
sharing plan that Manchester Services and Sub-Par Ventures provided their telemarketing clients.

58.  As described in ¶¶ 6 and 7, Manchester Services and Sub-Par Ventures were negligent in
providing services and revenue-sharing plan to telemarketers and failing to take reasonable
precautions to reduce the likelihood that their services would be used for illegal telemarketing.

## NUISANCE

15

59. The actions of the Defendants described in ¶¶ 13-20 are a nuisance which has interfered with my lawful enjoyment of my home.

### CIRCUMSTANCES WHICH JUSTIFY TREBLE AND PUNITIVE DAMAGES

60. The Defendants performed the actions described in the preceding paragraphs willfully and knowing that the actions violate the TCPA and Ohio law. The Defendants performed these actions with the purpose of deriving profit from causing tortious injury, namely invading my right to privacy, and the Defendants should have reasonably expected that their actions would cause this injury. The Defendants performed these actions with willful, reckless disregard of my rights, and hence the actions demonstrate malice.

WHEREFORE, the Plaintiff asks that the Court grant the following relief:

1. Award the Plaintiff $1500 for each violation of 47 USC § 227(b), $1500 for each call which violated 47 USC § 227 (c), and $200 for each violation of Ohio Rev. Code § 1345.02, and actual and punitive damages for the causes of action under Ohio tort law. *See* 47 USC § 227(b)(3), § 227(c)(5), Ohio Rev. Code § 1345.09(B), and *Charvat v. NMP, LLC*, 656 F. 3d 440, 448-452 (6th Cir 2011). For the calls from telephone numbers (407) 476-5680, (646) 417-9501, (417) 800-2317, and (417) 800-2317, this is at least $14,800.

2. Award the Plaintiff costs, attorney fees, and interest,

16

3. Issue a permanent injunction forbidding Qall Cord Philippines Ltd. Co. from making calls to telephone numbers in Ohio and forbidding all the Defendants from violating or helping others violate 47 USC § 227 and Ohio Rev. Code § 4719,

4. Issue a permanent order requiring the Defendants to pay the Plaintiff $1500 each and every time in the future that they call the Plaintiff plus an additional $1500 each time that they call using an artificial or pre-recorded voice, or permanent injunction prohibiting the Defendants from making telephone calls to the Plaintiff, and

5. Such further relief as may be appropriate.


Respectfully submitted,


Vincent Lucas
P.O. Box 272
Amelia, OH 45102
(513) 947-1695
vincentlucaslegal@gmail.com
Plaintiff

17