UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VINCENT LUCAS,   Case No. 1:12-cv-630

    Plaintiff,   Spiegel, J.
        Bowman, M.J.

v.

TELEMARKETER CALLING FROM (407) 476-5670
AND OTHER TELEPHONE NUMBERS, et al.,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff paid the requisite filing fee and initiated this litigation *pro se* on August 20, 2012, asserting that three Defendants violated federal and state law by engaging in illegal telemarketing practices. Pursuant to the practice and General Orders of this Court, this *pro se* litigation has been referred to the undersigned magistrate judge for review and disposition, by order or by report and recommendation, of all dispositive and non-dispositive motions. Since initiating suit, Plaintiff has twice amended his complaint to add new claims and defendants. (Docs. 2, 20).

Currently pending before this Court are four dispositive motions: (1) two motions seeking a preliminary injunction against multiple Defendants; (2) Plaintiff's motion for default judgment against Defendant Qall Com Philippines Ltd. Co., and (3) a motion to dismiss all claims filed by six recently added Defendants. This Report and Recommendation addresses the motions for preliminary injunction and motion for

1

default judgment. The motion to dismiss will be addressed in a future Report and Recommendation, after the time for responsive briefing has expired.

## I. Background

On November 27, 2012, Plaintiff filed a motion seeking a preliminary injunction against three entity Defendants named in his first amended complaint.[1] (Docs. 2, 3). Only two of those Defendants were initially served and appeared of record: Manchester Services, Inc., and Sub-Par Ventures, LLC - both identified as Missouri business entities. The third, non-appearing entity, Qall Cord Philippines Ltd Co., ("Qall Cord") is a foreign company identified as "a business incorporated in the Philippines." [2]

On January 23, 2013, Plaintiff filed a Stipulation of Dismissal, notifying the Court that the parties had resolved all claims between Plaintiff and Defendants Manchester Services, Inc. and Sub-Par Ventures LLC. (Doc. 14). On January 28, 2013, Plaintiff transmitted a similar notification via email to this Court, stating that the two referenced Defendants "are no longer parties to this case." On February 8, 2013, Plaintiff moved for leave to file a second amended complaint (Doc. 18), in part to add six new Defendants. Plaintiff's tendered Second Amended Complaint also omitted Manchester Services, Inc. and Sub-Par Ventures LLC as Defendants, in accordance with the prior dismissal of those Defendants (Doc. 14).

The Court granted Plaintiff's motion to further amend his complaint, and the amended complaint was filed on February 21, 2013. (Doc. 20). After Defendant Qall

---

[1] A fourth Defendant (never served) is identified only as "Telemarketer Calling From (407) 476-5680 and Other Telephone Numbers.
[2] The spelling of this Defendant's name is identified variously by Plaintiff as "Qall Cord" and "Qual Cord." (*Compare* Doc. 20, ¶¶8, 43, 44). For convenience, the Defendant's name is spelled "Qall Cord" in this R&R, consistent with the caption and in accordance with the docket sheet of this Court.

Cord continued to fail to appear of record despite several attempts by Plaintiff to effect service, this Court granted Plaintiff's motion pursuant to Rule 4(f)(3), Fed. R. Civ. P., to serve Qall Cord by email. On February 25, 2013, summons was returned executed via the method of service authorized by this Court. (Doc. 21).

On March 11, 2013, Plaintiff filed a second motion seeking a preliminary injunction, this time against the Defendants newly added to his second amended complaint: Pacific Telecom Communications Group, International Telephone Corporation, Telephone Management Corporation, F. Antone Accuardi, Fred Accuardi, and Steve Hamilton. (Doc. 22). Defendants have not responded directly to the motion for a preliminary injunction. However, after obtaining an extension of time to respond to the second amended complaint, on May 31, 2013, the referenced Defendants filed a motion to dismiss all claims against them for failure to state a claim. (Doc. 35).

On March 22, 2013, Plaintiff filed an application for entry of default against the foreign Defendant, Qall Cord, and the Clerk filed an Entry of Default concerning that Defendant on March 25, 2013. (Docs. 24, 25). On April 2, 2013, Plaintiff filed a motion for default judgment against Qall Cord.(Doc. 27).

**II. Analysis**

**A. Motions Seeking Preliminary Injunctive Relief (Docs. 3, 22)**

Plaintiff has filed two separate motions seeking preliminary injunctions against various Defendants. Plaintiff's first motion will be denied on grounds that it is moot. Plaintiff settled his claims with two of the three Defendants against which he sought injunctive relief, and the third Defendant, Qall Cord, is a foreign entity against which Plaintiff has already obtained an entry of default, and against which Plaintiff has moved

3

for a default judgment. Acknowledging the difficulties in enforcing injunctive relief against such a foreign owned and operated company, Plaintiff does not seek a permanent injunction against Qall Cord. (Doc. 27 at 9).

Plaintiff's second motion for preliminary injunctive relief also should be denied. Plaintiff's second motion asserts that he is seeking a preliminary injunction under both "specific statutory authorization" and under the Court's general equity powers.

First, Plaintiff seeks relief under Ohio Rev. Code §4719.15(A), which authorizes a court to "grant an injunction, temporary restraining order, or other appropriate relief" against a "telephone solicitor or salesperson who committed the violation" of Ohio's statutes governing telemarketers. Plaintiff also relies upon portions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b)(3) and (c)(5), that authorize "an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation." Federal and state courts have concurrent jurisdiction over private suits arising under the TCPA. *See Mims v. Arrow Financial Servs.*, LLC, 132 S. Ct. 740 (2012).

In addition to relying upon the referenced statutes, Plaintiff seeks a preliminary injunction under the general equitable powers of this Court. In determining whether to issue a preliminary injunction under its general equitable powers, the Court balances the following factors:

1. Whether the party seeking the injunction has shown a substantial likelihood of success on the merits;

2. Whether the party seeking the injunction will suffer irreparable harm absent the injunction;

3. Whether an injunction will cause others to suffer

4

>    substantial harm; and
>
> 4. Whether the public interest would be served by a preliminary injunction.

See *Procter & Gamble v. Bankers Trust Co.*, 78 F.3d 219, 226-227 (6th Cir. 1996).

Neither the referenced statutes, nor this Court's general equitable powers, favor imposition of a preliminary injunction.  Plaintiff's second amended complaint seeks damages and permanent injunctive relief based upon Plaintiff's receipt of telemarketing calls to Plaintiff's residential telephone number, notwithstanding the fact that Plaintiff has placed that number on the U.S. Do Not Call Registry.  Plaintiff alleges that he has received ten telephone calls from Defendant Qall Cord containing a pre-recorded message offering to lower his interest rate.  (Doc. 20, ¶¶18, 22, 27), and that his call history reflects that he received two additional calls from Qall Cord in which no message was left.  (Doc. 20, ¶¶20, 27).

In his second amended complaint and motion, Plaintiff alleges that two of the telemarking calls originated from telephone numbers owned by Defendant Telephone Management Corporation ("TMC"), and that seven calls originated from telephone numbers owned by Defendant Pacific Telecom Communications Group ("PacTel").  Plaintiff alleges that through discovery, he has learned that PacTel assigned six telephone numbers to Defendant International Telephone Corporation ("ITC"), an entity allegedly located in Belize.  Defendant Fred Accuardi is alleged to be the President of TMC. Defendant Steve Hamilton is alleged to be the President, Treasurer, and Secretary of PacTel.  (Doc. 20 at ¶75).  Plaintiff alleges that the third individual Defendant, F. Antone Accuardi, is general counsel to both TMC and Pacific Telecom.

5

ITC also is alleged to be "owned and managed by the Accuardi family." (Doc. 22 at 5). Defendant F. Antone Accuardi admits that he is "a private attorney whose clients include TMC, PacTel and ITC." (Doc. 35 at 3). The essence of Plaintiff's claims against all six Defendants is that they are engaged in the marketing and sale of telephone numbers to telemarketers who engage in illegal practices, despite Defendants' knowledge that their customers (the telemarketers) are engaged in illegal activity.

The purpose of a preliminary injunction is to maintain the relative positions of the parties until proceedings on the merits can be conducted. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981); *see also Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98, 102 (6th Cir. 1991). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *See Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566, 573 (6th Cir.2002).

Perhaps the singular most important fact in this case is what is *not* alleged by Plaintiff. Notably, Plaintiff does not allege that any of the three entity Defendants, or three individuals against whom he seeks a preliminary injunction, are themselves engaged in telemarketing to Plaintiff's home. Rather, the basis of Plaintiff's claims against all six Defendants rests on theories of vicarious and contributory liability, including the Defendants' allegedly "long history of aiding telemarketers" by permitting and encouraging the use of Defendants' services for illegal telemarketing purposes. (Doc. 22 at 15). Plaintiff alleges that the entity Defendants "knew that their telephone numbers were being used for telemarketing calls that violate 47 U.S.C. §227(b)(1)(B) and 227(c)." (Doc. 20 at ¶50). In a footnote advocating preliminary injunctive relief,

Plaintiff briefly posits that "there is no proof that the TMC Group [a reference to the three entities] is not the telemarketer." (Doc. 22 at 12, n.7). Despite that footnote, Plaintiff has never alleged (and Defendants deny) that any of the Defendants have personally placed telemarketing calls to his home. The statutes on which Plaintiff relies for preliminary injunctive relief authorize that relief against the persons engaged in telemarketing. The statutes do not provide the same clear basis for relief against entities or persons who are alleged to be liable for "assisting and facilitating" illegal telemarketing activity. *See generally Baltimore-Washington Telephone Co.*, 584 F. Supp.2d 736 (D. Md., 2008)(holding that the TCPA does not encompass a cause of action for aiding and abetting).

For much the same reasons, the undersigned declines to recommend preliminary injunctive relief against the six Defendants under the Court's general equitable powers. The Federal Communications Commission ("FCC") is the federal agency directed to promulgate regulations to implement the TCPA. Defendants recently filed a motion to dismiss all of Plaintiff's claims against them based upon FCC Declaratory Ruling, FCC 13-54 at ¶11 (April 17, 2013), and Plaintiff's failure to allege an agency relationship between Defendants and the telemarketer(s) who actually made the illegal calls to Plaintiff's home. Defendants additionally argue that Plaintiff has failed to plead the essential elements of a cause of action to hold them liable under a joint enterprise theory of liability. Defendants present multiple arguments against Plaintiff's state law claims.

Without prejudging the merits of Defendants' motion, as to which Plaintiff has not had the opportunity to respond, the Court concludes that the arguments contained

therein raise substantial legal issues that disfavor granting Plaintiff the preliminary injunctive relief that he seeks. In short, on the preliminary record presented to this Court to date, Plaintiff has failed to satisfy his heavy burden of demonstrating that extraordinary relief is warranted.[3]

Plaintiff argues that he may suffer from irreparable injury due to the "invasion of solitude and seclusion of one's home" that results from telemarketing calls. (Doc. 22 at 18). Plaintiff alleges that he received approximately twenty-five calls from Qall Cord and a second unknown telemarketer between July 22, 2011 and January 26, 2013. (Doc. 20 at ¶¶18-22). He admits that his injury may be compensated by the monetary damages provided for by statute, but speculates, due to other ongoing litigation against the same entity Defendants, that the corporate Defendants may become insolvent by the time that he is able to obtain a judgment in this case, and/or that Defendant "Antone Accuardi is skilled at hiding money in Belize." (Doc. 22 at 18). Plaintiff argues more vigorously that the "irreparable injury to the general public is much greater," since most people do not seek legal recourse when they receive illegal telemarketing calls. (*Id.*).

It is unclear whether enjoining the referenced Defendants actually would prevent Plaintiff from receiving the illicit telemarketing calls, given that none of the Defendants is accused of having made those calls. Moreover, a "race to judgment" between Plaintiff and others who may be engaged in litigation against the same Defendants is not

---

[3]On June 3, 2013, Plaintiff filed a "Notice" that appears to reference a resolution through settlement of "all claims brought under state law" brought against the six Defendants. Presumably, any such settlement would also moot any basis for a preliminary injunction under state law, although this Court independently finds that the requested relief is not warranted.

grounds for awarding a preliminary injunction. And because this is not a class action, Plaintiff has no standing to assert "irreparable injury" on behalf of "the general public."

Plaintiff argues that the injunction will not cause "legitimate" harm to anyone, because all six Defendants whose conduct he seeks to enjoin are currently "ignoring complaints of illegal telemarketing." (Doc. 22 at 19). But an injunction against the Defendants is likely to harm their various businesses. Whether the portion of that business to which Plaintiff objects is "legitimate" remains at the heart of this case. The public interest lies in preserving the status quo through denial of Plaintiff's motion for a preliminary injunction, and instead proceeding through the ordinary course of litigation. Neither the allegations of Plaintiff's complaint, nor those contained in his motion, favor granting extraordinary relief.

### C. Motion for Default Judgment Against Qall Cord (Doc. 27)

In contrast to Plaintiff's motions for a preliminary injunction, the undersigned recommends granting Plaintiff's motion for entry of a default judgment against foreign Defendant Qall Cord Philippines Ltd. Co. The record reflects that Plaintiff has obtained service on Defendant Qall Cord, but that Qall Cord has chosen not to appear in this Court. An Entry of Default was filed against Qall Cord on March 25, 2013. (Doc. 25).

Pursuant to the TCPA, an aggrieved person may recover statutory damages of $1500 for each willful or knowing violation of the automated-call requirements, §227(b)(3), as well as $1500 for a willful or knowing violation of the do-no-call-list requirements, §227(c)(5). Thus, Plaintiff may recover $3,000 per telephone call in damages under the TCPA. *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011).

9

Plaintiff asserts that he is entitled to additional damages under the Ohio Consumer Sales Protection Act ("OCSPA") for the same telephone calls. The Sixth Circuit in *Charvat* held that "delivering a prerecorded message without prior express consent, in violation of 47 U.S.C. §227(b)(3)(A), is not <u>by itself</u>, a violation of the OCSPA." *Id.*, 656 F.3d at 450 (emphasis added). However, *Chavret* teaches that violations of the TCPA can constitute independent violations of the OCSPA, so long as the circumstances of those calls violate specific provisions of the OCSPA. Thus, in *Chavret*, the plaintiff was permitted to proceed on three distinct damage claims under Ohio law for each call, because the plaintiff alleged that each call violated provisions of Ohio law designed to: (1) ensure a method of contacting the offending telemarketer; (2) maintain and comply with a do-not-call registry; and (3) identify the purpose of the call. Although the plaintiff in *Chavret* had alleged that the telemarketer was liable for violating six separate provisions, the Sixth Circuit held that several of the provisions protected the same type of injury. Therefore, the court held that, despite citing six separate provisions of the OCSPA, the plaintiff could recover only for three distinct claims. *Id.* at 451-452. As in *Chavret*, Plaintiff here has alleged independent violations of the OCSPA sufficient to prove his entitlement to additional statutory damages under state law for the ten calls during which a message was left. Although Plaintiff assumes four separate violations of the OCSPA, the undersigned concludes that, under *Chavret*, Plaintiff is entitled to damages of $200.00 per call for only three distinct claims.

Plaintiff also claims damages against Qall Cord for the two calls made to his residential phone line on dates on which no message was left. The undersigned declines to recommend an award of damages for the latter two calls, because it is

10

unclear that the unanswered calls, identified solely by Plaintiff's call history, violated state and federal law.[4]

Plaintiff also claims entitlement to a discretionary award of prejudgment interest. Plaintiff argues that the Court should exercise its discretion to award such interest because Qall Cord's conduct, in failing to identify itself at the time of the calls, and in failing to accept service of process, delayed this litigation. However, the record reflects that Plaintiff was able to identify Qall Cord approximately three months after initiating suit. Plaintiff promptly amended his complaint as of right at that time. The docket reflects that no activity had occurred in the intervening time. The relatively minimal three month delay in identifying Qall Cord does not justify an award of prejudgment interest. Similarly, the difficulty in obtaining service does not justify such an award, given that Qall Cord is a foreign corporation located in a country that does not participate in the Hague Convention, and as to which some difficulty in service is to be expected. Thus, Plaintiff's request for prejudgment interest should be denied.

In the sample order tendered to this Court, Plaintiff includes language requiring Qall Cord to pay future monetary damages, in varying amounts depending on the nature of the call, at any time that Defendant "calls Plaintiff at his residential telephone number" in the future. Such prospective damages are in the nature of injunctive relief against a foreign entity, and would not permit this Court adequate review of whether damages

---

[4] Although TCPA regulations prohibits a person or entity from disconnecting "an unanswered telemarketing call prior to at least 15 seconds or four (4) rings," see 47 C.F.R. §64.1200(a), Plaintiff has not alleged the length of the unanswered calls. It is also unclear how Plaintiff's allegation that a call was made from a given number equates to proof of an unlawful "solicitation," particularly given that only two such calls were made.

11

would in fact be owed for any future misconduct. For that reason, the request for conditional future damages also should be denied.

Except as limited by the above discussion, entry of a default judgment appears appropriate against Qall Cord in this case, and there is no just reason for delay.

### III. Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT:**

1. Plaintiff's first and second motions for preliminary injunctive relief (Doc. 3, 22) should be **DENIED**;

2. Plaintiff's motion for the entry of default judgment against foreign Defendant Qall Cord Philippines Ltd. Co., the spelling of whose name is alternatively identified by Plaintiff as Qual Cord Philippines Ltd. Co. (Doc. 27) should be **GRANTED**, with Defendant Qall Cord Philippines Ltd Co. directed to pay to Plaintiff the sum of $3600.00 for each of the ten calls placed by that Defendant in violation of state and federal law, as alleged in the Second Amended Complaint, for a total damage award of $36,000.00.

           s/Stephanie K. Bowman
           Stephanie K. Bowman
           United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VINCENT LUCAS,            Case No. 1:12-cv-630

    Plaintiff,        Spiegel, J.
                     Bowman, M.J.

  v.

TELEMARKETER CALLING FROM (407) 476-5670
AND OTHER TELEPHONE NUMBERS, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

13