**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

VINCENT LUCAS,                                  Case No. 1:12-cv-630

           Plaintiff,                            Spiegel, J.
                                        Bowman, M.J.

   v.

TELEMARKETER CALLING FROM (407) 476-5670
AND OTHER TELEPHONE NUMBERS, et al.,

           Defendants.


# REPORT AND RECOMMENDATION

Plaintiff initiated this litigation *pro se* on August 20, 2012, asserting that three Defendants violated federal and state law by engaging in illegal telemarketing practices. Pursuant to the practice of this Court, this *pro se* litigation was referred to the undersigned magistrate judge for review and disposition, by order or by report and recommendation ("R&R"), of all dispositive and non-dispositive motions. To date, Plaintiff has twice amended his complaint. (Docs. 2, 20). Plaintiff recently moved for leave to file a third amended complaint, which motion has been granted by separate order entered this same day.

In addition to Plaintiff's motion for leave to file a third amended complaint, currently pending before this Court are two dispositive motions: (1) the motion of the six Defendants added by Plaintiff's second amended complaint to dismiss all claims against

them; and (2) Plaintiff's motion for summary judgment. This Report and Recommendation addresses those two dispositive motions.

### I. Factual and Procedural Background

Plaintiff's lawsuit alleges that he received a number of telemarketing calls to his residential telephone number, notwithstanding the fact that Plaintiff has placed that number on the U.S. Do Not Call Registry. Plaintiff alleges that he has received ten telephone calls from Defendant Qall Cord Philippines Ltd Co., ("Qall Cord"), a foreign company identified as "a business incorporated in the Philippines," containing a pre-recorded message offering to lower his interest rate. (Doc. 20, ¶¶18, 22, 27). Plaintiff alleges that his call history reflects that he received two additional calls from Qall Cord in which no message was left. (Doc. 20, ¶¶20, 27).

After initiating suit in August, 2012, and amending his complaint in November 2012, Plaintiff filed a motion seeking a preliminary injunction against three entity Defendants named in his first amended complaint. (Docs. 2, 3). Only two of those Defendants were initially served and appeared of record: Manchester Services, Inc., and Sub-Par Ventures, LLC - both identified as Missouri business entities. The third, Qall Cord, did not appear, and no service was attempted on a fourth "unknown" telemarketer.[1]

On January 23, 2013, Plaintiff filed a Stipulation of Dismissal, notifying the Court that the parties had resolved all claims between Plaintiff and Defendants Manchester

---

[1]The fourth Defendant was identified only as "Telemarketer Calling From (407) 476-5680 and Other Telephone Numbers." The unknown telemarketer Defendant has been omitted from Plaintiff's recently tendered third amended complaint.

Services, Inc. and Sub-Par Ventures LLC.  (Doc. 14).  On February 21, 2013, Plaintiff

filed his second amended complaint.  The second amended complaint omitted claims

against the two Defendants with whom Plaintiff had settled, retained Plaintiff's claims

against Qall Cord and the unidentified telemarketer, and added claims against six new

Defendants.  (Docs. 19, 20).

On March 11, 2013, Plaintiff filed a second motion seeking a preliminary

injunction against the six Defendants newly added to his second amended complaint:

Pacific Telecom Communications Group, International Telephone Corporation,

Telephone Management Corporation, F. Antone Accuardi, Fred Accuardi, and Steve

Hamilton.  (Doc. 22).  The six referenced Defendants (hereinafter the "Accuardi

Defendants") did not respond directly to the Plaintiff's motion for a preliminary injunction,

but instead filed a motion to dismiss all claims against them.  (Doc. 35).

On June 6, 2013, the undersigned recommended the entry of default judgment

against foreign Defendant Qall Cord, but recommended denial of Plaintiff's motion for

preliminary injunctive relief against the six Accuardi Defendants. (Doc. 37).   For

additional background and the convenience of this Court, portions of the prior analysis

are repeated verbatim:

> In his second amended complaint…, Plaintiff alleges that two of the
> telemarking calls originated from telephone numbers owned by Defendant
> Telephone Management Corporation ("TMC"), and that seven calls
> originated from telephone numbers owned by Defendant Pacific Telecom
> Communications Group ("PacTel"). Plaintiff alleges that through discovery,
> he has learned that PacTel assigned six telephone numbers to Defendant
> International Telephone Corporation ("ITC"), an entity allegedly located in
> Belize.  …. The essence of Plaintiff's claims against all six Defendants is
> that they are engaged in the marketing and sale of telephone numbers to
> telemarketers who engage in illegal practices, despite Defendants'

knowledge that their customers (the telemarketers) are engaged in illegal activity.

*********

Perhaps the singular most important fact in this case is what is *not* alleged by Plaintiff.  Notably, Plaintiff does not allege that any of the three entity Defendants, or [the] three individuals…are themselves engaged in telemarketing to Plaintiff's home.  Rather, the basis of Plaintiff's claims against all six Defendants rests on theories of vicarious and contributory liability, including the Defendants' allegedly "long history of aiding telemarketers" by permitting and encouraging the use of Defendants' services for illegal telemarketing purposes.  (Doc. 22 at 15).  Plaintiff alleges that the entity Defendants "knew that their telephone numbers were being used for telemarketing calls that violate 47 U.S.C. §227(b)(1)(B) and 227(c)."  (Doc. 20 at ¶50).  …Plaintiff has never alleged (and Defendants deny) that any of the Defendants have personally placed telemarketing calls to his home.  The statutes on which Plaintiff relies for preliminary injunctive relief authorize that relief against the persons engaged in telemarketing.  The statutes do not provide the same clear basis for relief against entities or persons who are alleged to be liable for "assisting and facilitating" illegal telemarketing activity. *See generally Baltimore-Washington Telephone Co.*, 584 F. Supp.2d 736 (D. Md., 2008)(holding that the TCPA does not encompass a cause of action for aiding and abetting).

(Doc. 37 at 5-7, emphasis original).

Based in part upon this analysis and the "substantial legal issues" presented in the Accuardi Defendants' motion to dismiss, the undersigned recommended that Plaintiff's motion for preliminary injunctive relief against those Defendants be denied. (Doc. 37 at 7-8).  On August 27, 2013, the prior Report and Recommendation ("R&R"), with one small modification,[2] was adopted by the presiding district judge.  (Doc. 51).

On September 12, 2013, Plaintiff moved for leave to file a third amended complaint.  Plaintiff explains that the third amended complaint "expands on the allegations of negligence and joint liability with regards to the TMC Group Defendants,

---

[2]In response to Plaintiff's objections, Judge Spiegel agreed that the amount of the default judgment against Defendant Qall Cord should be slightly increased.

based on arguments in [Plaintiff's] Response to Defendants' Motion to Dismiss." (Doc. 53 at 2, footnote omitted). In addition, Plaintiff's third amended complaint adds new claims against two additional defendants, one of whom (presumably) was previously identified as the unknown telemarketer. In addition to seeking leave to file a third amended complaint, Plaintiff has moved for partial summary judgment against the Accuardi Defendants. (Doc. 41). Defendants filed a response to that motion, to which Plaintiff has filed a reply. (Docs. 47, 48).

## II. Analysis

### A. The Accuardi Defendants' Motion to Dismiss

Although the undersigned previously acknowledged "substantial legal issues" in Defendants' motion to dismiss Plaintiff's second amended complaint, the same Defendants have chosen not to oppose Plaintiff's motion to file a third amended complaint. According to Plaintiff's motion, his third amended complaint expands on Plaintiff's theories of joint liability against the Accuardi Defendants, as well as on the basis for Plaintiff's state negligence claim, directly in response to Defendants' pending motion to dismiss. In light of the filing of Plaintiff's third amended complaint, the pending motion to dismiss the earlier complaint is now moot. To the extent that Defendants disagree with Plaintiff's position that the third amended complaint cures any prior deficiencies in the claims against them, they remain free to file a new motion to dismiss, either in addition to or in lieu of filing an answer to that complaint.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff seeks judgment as a matter of law on the issue of whether Plaintiff's "acceptance of the offer to cure under Ohio Revised Code §1345.092 is a binding, final

resolution of the claims under Ohio law against" the Accuardi Defendants. Plaintiff maintains that the Accuardi Defendants conveyed a valid offer to cure under the referenced statute, which Plaintiff accepted. According to Plaintiff, his state law claims therefore have been fully resolved, and the Defendants are legally bound to pay him $5,350.00 under their offer to cure. The undersigned disagrees, and recommends the denial of Plaintiff's motion for (partial) summary judgment on the state law claims brought against the Accuardi Defendants.

Effective July 3, 2012, Ohio enacted a new provision of its Consumer Sales Practices Act, in part to encourage speedy resolution of claims brought under that Act. O.R.C. §1345.092 states, in relevant part, that a "supplier" who is sued by a "consumer" under the CSPA may make a "cure offer" in order to resolve the dispute. The statute explains that such a "cure offer" must be delivered by the seller by certified mail. O.R.C. §1345.092(A).

Subsection (D) of §1345.092 details what must be included in such offers, including both of the following two provisions:

> (1)    Language that clearly explains the resolution being offered by the supplier consisting of the following separate components:
>
> (a)    A supplier's remedy that consists solely of monetary compensation to resolve alleged violations of this chapter;
>
> (b)    Reasonable attorney's fees that consist of legal fees necessary or reasonably related to the filing of the initial complaint…;
>
> (c)    Court costs incurred by the consumer that are related to the filing of the initial compliant;
>
> (2)    A prominent notice that clearly and conspicuously contains the following disclosure in substantially the following form:

NOTICE: THIS LETTER INCLUDES A "CURE OFFER" THAT IS BEING OFFERED TO SETTLE ALL ALLEGED VIOLATIONS OF CHAPTER 1345. OF THE REVISED CODE RAISED BY YOUR WRITTEN COMPLAINT. THE CURE OFFER INCLUDES BOTH A "SUPPLIER'S REMEDY" TO SOLVE THIS DISPUTE AND AN OFFER TO PAY YOUR ATTORNEY'S FEES UP TO $2,500.00 AND YOUR COURT COSTS IN FILING THE COMPLAINT. YOU ARE NOT OBLIGATED TO ACCEPT THIS CURE OFFER AND HAVE THE RIGHT TO CONSULT WITH LEGAL COUNSEL BEFORE MAKING YOUR DECISION.

YOU MUST NOTIFY THE SUPPLIER WITHIN 30 DAYS OF RECEIPT OF THIS CURE OFFER OF YOUR DECISION TO EITHER ACCEPT OR REJECT THE OFFER BY FILING A RESPONSE WITH THE COURT AND SENDING A COPY OF THE RESPONSE TO THE SUPPLIER. IF THE COURT DOES NOT RECEIVE YOUR RESPONSE WITHIN THE REQUIRED TIME, YOUR FAILURE TO RESPOND WILL, BY LAW, BE CONSIDERED REJECTION OF OUR OFFER.

REJECTION OF THIS CURE OFFER COULD IMPACT YOUR ABILITY TO COLLECT COURT COSTS AND LEGAL FEES. IF A COURT, JURY, OR ARBITRATOR FINDS IN YOUR FAVOR, BUT DOES NOT AWARD YOU AN AMOUNT MORE THAN THE VALUE OF THE SUPPLIER'S REMEDY, THE SUPPLIER WILL NOT BE RESPONSIBLE FOR TREBLE DAMAGES, ATTORNEY'S FEES, OR ANY COURT COSTS YOU INCUR AFTER THE DATE THIS CURE OFFER WAS MADE (fill in the date).

VALUE OF SUPPLIER'S REMEDY = $(fill in the blank)

THE SELLER ALSO AGREES TO PAY YOUR ATTORNEY'S FEES, UP TO $2,500.00, THAT ARE NECESSARY OR REASONABLY RELATED TO THE FILING OF YOUR INITIAL CLAIM, AS WELL AS YOUR COURT COSTS.

Ohio Rev. Code Ann. § 1345.092(D).

**Defendant's "Notice" and Plaintiff's "Acceptance."**

The Defendants executed a waiver of service on April 15, 2012, (Doc. 28), and thereafter served their "cure offer" by certified mail on May 14, 2013. Defendant's letter

states that it is an "offer to settle" that is not subject to Rule 408 of the Federal Rules of

Evidence.  In relevant part, the correspondence states:

> In exercising its right to cure for your clients' claims made pursuant to Revised Code Chapter 1345, my clients [the six Accuardi Defendants] would also like to resolve this matter in its entirety.  Accordingly I have been authorized to settle this matter as follows for five thousand dollars.
>
> In exchange for the above compensation, your client must agree to dismiss the claims against my client[s] with prejudice and sign a release agreement with my client[s].

(Doc. 31 at 1).    Defense counsel signed her name below those terms.  Immediately

below counsel's signature, Defendants included all of the conspicuous "Notice"

language required by O.R.C. § 1345.092(D)(2).  The lone alteration to that language

was the insertion of "May 14, 2012" in the "fill in the date" space to denote the date that

the cure offer was made, and the insertion of "$5,000" to denote the value of the

supplier's remedy in the second corresponding "$(fill in the blank)" space.

On June 3, 2013, within the time limits prescribed by statute, Plaintiff filed of

record in this Court a "Notice" that purports to be his "acceptance of the offer to cure."

(Doc. 36).  Plaintiff's "acceptance" is in the form of a responsive letter to defense

counsel, and states:

> I hereby accept your clients' offer to cure my claims under Ohio Revised Code §1345 with the understanding that acceptance of this offer would resolve all claims brought under state law against your clients but would not in any way affect the claims brought under federal law …. To be absolutely clear, my claims under federal law will not be dismissed or compromised as the result of accepting your clients' offer to cure my state law claims under Ohio Revised Code §1345….

(Doc. 36 at 1, emphasis original).  Plaintiff's letter further articulates his belief that:

> An offer to cure under ORC § 1345.092 may not require, as a condition for accepting the offer, that a plaintiff forfeit federal legal rights and claims.

> ORC §1345.092(D)(1)(a) says that the resolution offered by the supplier must contain a "supplier's remedy that consists *solely* of monetary compensation *to resolve alleged violations of this chapter.*"

(Doc. 36 at 1-2, emphasis original).  In other words, Plaintiff's acceptance is a conditional one, in that he makes clear that he is rejecting Defendant's offer "to settle" and "to resolve this matter **in its entirety,**" (Doc. 31 at 1, emphasis added), and instead is construing the Defendants' offer as limited to his "state law" claims.  In addition to highlighting what he perceives to be statutory language in favor of this interpretation, Plaintiff represents in his letter that any other statutory construction would be improper because "a state statute cannot diminish my rights to treble damages, court costs, etc. under federal statutes in pursuing federal claims in a federal court."  (Doc. 36 at 2).

Plaintiff's entire motion for summary judgment is based upon the same legal fiction and is in its essence, a misguided interpretation of the Ohio statute. Plaintiff's argument rests on the premise that a Defendant cannot execute a global settlement of both federal claims and state law claims, if one of those state law claims happens to fall under §1345.

This Court agrees with Defendant that the Ohio statute should not be interpreted in the narrow fashion that Plaintiff seeks.[3]  If the Ohio legislature had intended to restrict the "cure offer" only to settlement of claims falling under §1345, the legislature presumably could have, and would have, made that intention more explicit by more clearly stating that no other claims may be settled by a cure offer filed under the

---

[3]As Plaintiff acknowledges, no case law supports his position.  While Plaintiff suggests that is due to the recency of enactment, the passage of time may prove the alternative construction to be an equal factor.

statute.[4]  The small portion of the statute on which Plaintiff relies makes no such clear statement of intent.  Instead, the provision states only that a supplier's offer language must reflect a remedy that "consists solely of monetary compensation to resolve alleged violations of this chapter." The undersigned interprets the word "solely" as modifying the phrase "monetary compensation," and not as grafting the word "solely" onto the phrase "alleged violations of this chapter."  Indeed, even the conspicuous "Notice" language does not support the extremely narrow construction that Plaintiff advocates, since it states that the offer "**INCLUDES** A 'CURE OFFER' THAT IS BEING OFFERED TO SETTLE ALL ALLEGED VIOLATIONS OF CHAPTER 1345." *See* O.R.C. §1345.09(D)(2)(emphasis added).

Plaintiff additionally argues that because the Defendants "did not explicitly mention" his federal claims, their offer should not be construed as including the federal claims.  But Defendants did convey an offer to "settle" the matter "in its entirety," which is sufficient to include the federal claims.  While Defendants did not articulate every claim, neither did they express the offer as limited to settlement of "state claims" as opposed to referencing the litigation "in its entirety."  It is obvious based on Plaintiff's own cleverly-worded "acceptance" letter that Plaintiff was well aware of Defendants' intent, despite his hopeful retort to counsel that the offer would be "accepted" only for his state law claims.

---

[4]As the Defendants are quick to point out, Plaintiff's own conditional acceptance explicitly added to the settlement all of his "state law claims," not just those arising under O.R.C. §1345.  (*See also* Doc. 41 at 4, conceding that Plaintiff "volunteered to let the offer to cure act as a resolution of the other claims under state law."

It is also worth noting that even if Plaintiff's statutory construction were accepted by this Court, acceptance of that construction would require this Court to deem Defendants' "cure offer" invalid at the outset.[5]  If the statute requires an offer to be restricted to state law claims brought under O.R.C. §1345, then Defendant's "cure offer" was facially deficient, because the offer clearly specified its intent to resolve the litigation "in its entirety."

Last, Plaintiff contends that his "acceptance" legally bound the Defendants, under the statutory provision that deems acceptance of a cure offer "effective when it is filed with the court."  However, as explained above, Plaintiff did not unconditionally "accept" Defendants' offer, but instead conditioned his acceptance upon Defendants' acceptance of his counter-offer.  Defendants obviously did not accept Plaintiff's counter-offer.

In his reply memorandum, Plaintiff argues that Defendants confuse his statutory right to cure under §1345.09 with a contractual right to settle his claims.  But it is Plaintiff who appears to be confused, to the extent that this Court's interpretation of the referenced statute is that it does not **preclude** global settlements, but instead merely dictates the terms required to meet the specific provisions of a statutory "cure" or settlement of claims filed under O.R.C. §1345.  For example, the statute mandates terms such as the inclusion of court costs, specifies the method of delivery of the cure offer, the timing of the offer and acceptance or rejection, and other details that are not

---

[5]In favor of his construction, Plaintiff reasons that the Defendants would otherwise be entitled to gain the benefit of the statute (including penalties under §1345.09(G)) if he were ultimately to win at trial a sum that was less than the Defendants' $5,000 offer for the CSPA claims, but significantly more than $5,000 as a total judgment, based on sums awarded for additional federal claims for which the Defendants offered nothing.  However, this Court's statutory interpretation does not require that result, because a reviewing court could still determine that Defendants' offer did not "substantially" conform to the statute.

required in a mere contractual settlement.   What the statute does not do is to plainly forbid the parties from including additional terms to resolve other claims, not filed under §1345, in the same litigation.  Further, and even if the statute were interpreted to require a statutory "cure offer" to be limited to §1345 claims, the statute does not prohibit a non-statutory, contractual agreement to settle all claims, including those brought under O.R.C. §1345.

Plaintiff attaches as additional "authority" a copy of a press release by a law firm posting at www.autolawohio.com, dated the day the legislation took effect, in which the author advised his readers (presumably auto dealer clients) of the same view that Plaintiff advocates herein:

> Businesses should be cautious whenever making a cure offer. Consumers' lawyers rarely file complaints in which they only allege violations of the CSPA, and the cure offer only settles claims made under the CSPA.  If a cure offer is accepted by the consumer and there are other claims that remain pending, the business will essentially fund the remainder of the litigation that is pending against itself.

> It is unlikely that a cure offer could be written to settle non-CSPA claims because the "Right to Cure" Amendment requires (among other things) a "prominent" notice that must be in substantially the following form, stating in part: "NOTICE: THIS LETTER INCLUDES A 'CURE OFFER' THAT IS BEING OFFERED TO SETTLE ALL ALELGED VIOLATIONS OF [THE CSPA] RAISED BY YOUR WRITTEN COMPLAINT."  In other words, if the cure offer is modified to settle all claims raised by the consumer complaint, then the cure offer will probably be found invalid for failing to substantially follow the statutory language.

> Again, business should be cautious when making a cure offer because it may not resolve all aspects of pending litigation, even if the cure offer is accepted by a consumer.

(Doc. 48-1 at 1-2).

In addition to this authority, the undersigned notes the description of the Suppliers' "Cure Offer" Remedy provided by the Legal Aid Society of Cleveland's on-line resource, LASC/OSLA, Ohio Consumer Law §2:140 (updated Sept. 2013).  After setting forth the general requirements of the statute including the consumer's right to attorney fees and court costs, the LASC commentator states:  "It is unclear how the attorney's fees and court costs provision applies to complaints with multiple claims which presumably would be further litigated."  *Id.*

With all due respect to the law firm whose advice Plaintiff has taken to heart, the undersigned is not convinced that the Ohio legislature intended to preclude the global settlement of all claims, whenever a case includes a claim brought under the Ohio CSPA.  Likewise, the Legal Aid Society's commentary does not directly address the issue of whether additional claims *could* be settled together with a statutory "cure offer," but only alludes to the problem of allocating proportional legal fees if only the §1345 claims alone are settled under the statutory provision.  And again, to the extent that the law firm's commentary were adopted by any reviewing court, the Defendants' offer to resolve the "matter in its entirety" alternatively would be "invalid for failing to substantially follow the statutory language."  (Doc. 48-1 at 2).

Plaintiff presents additional arguments in his reply memorandum concerning principles of contract law, whether the letter contains severable offers (both an offer to settle the litigation and a separate statutory cure offer under §1345), whether the Defendants' offer should be construed as a contract of adhesion, and how any ambiguities and alleged inconsistencies with statutory legal rights should be construed.

13

For the reasons previously articulated, the undersigned is not persuaded by any of the additional arguments.

**III.  Conclusion and Recommendations**

Accordingly, **IT IS RECOMMENDED THAT:**

1.   Defendants' motion to dismiss (Doc. 35) should be **DENIED as moot,** but without prejudice to refile with respect to the claims asserted in Plaintiff's third amended complaint;

2.  Plaintiff's motion for summary judgment (Doc. 41) should be **DENIED**.


  *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VINCENT LUCAS,                                    Case No. 1:12-cv-630

          Plaintiff,                              Spiegel, J.
                                        Bowman, M.J.

     v.


TELEMARKETER CALLING FROM (407) 476-5670
AND OTHER TELEPHONE NUMBERS, et al.,

          Defendants.


**NOTICE**


       Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).