IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VINCENT LUCAS, <br>     Plaintiff, | : <br> : <br> : | Case No. 1:12CV630-SAS-SKB |
| | : | |
|     v. | : <br> : | Spiegel, J. <br> Bowman, M.J. |
| | : | |
| PACIFIC TELECOM COMMUNICATIONS GROUP, a Nevada corporation; | : <br> : <br> : | **THIRD AMENDED COMPLAINT** |
| STEVE HAMILTON, as an individual person and in his capacity as president of Pacific Telecom Communications Group; | : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** <br><br> **1. Violation of the Federal Telephone Consumer Protection Act (47 USC § 227, 47 CFR § 64.1200)** |
| TELEPHONE MANAGEMENT CORPORATION, INC., an Oregon corporation; | : <br> : <br> : | **2. Violation of the Ohio Telemarketing Act (Ohio Rev. Code § 109.87) and Ohio Telephone Solicitation Act (Ohio Rev. Code § 4719)** |
| INTERNATIONAL TELEPHONE CORPORATION, a business that appears to be incorporated in Belize; | : <br> : <br> : | |
| FRED ACCUARDI, as an individual person and in his capacity as president of Telephone Management Corporation and in his capacity as owner and/or officer of International Telephone Corporation; | : <br> : <br> : <br> : <br> : | **3. Violation of the Ohio Consumer Sales Protection Act (Ohio Rev. Code § 1345)** <br><br> **4. Invasion of privacy by unreasonable intrusion** |
| F. ANTONE ACCUARDI, as an individual person and in his capacity as owner, officer, director, and/or counsel of Pacific Telecom Communications Group, Telephone Management Corporation, and International Telephone Corporation; | : <br> : <br> : <br> : <br> : <br> : | **5. Negligence** <br><br> **6. Nuisance** |
| QALL CORD PHILIPPINES LTD. CO., a business incorporated in the Philippines; | : <br> : | |
| ALL IN ONE SERVICE AIOS, LLC, a Florida business; | : <br> : <br> : | |
| EDWIN ADQUILEN VALBUENA JR., d/b/a VICIdial, a Philippine business owner, | : <br> : <br> : | |
|     Defendants. | : <br> : <br> : | |

<u>INTRODUCTION</u>

1.   International Telephone Corporation ("ITC") and Telephone Management Corporation ("TMC") are both run by Fred Accuardi and F. Antone Accuradi.  International Telephone Corporation is a shell company, organized in the Belize by F. Antone Accuardi, in order to conceal the identities of its officers and its clients.  Pacific Telecom Communications Group ("Pacific Telecom"), International Telephone Corporation ("ITC"), and Telephone Management Corporation are engaged in a joint enterprise, the purpose of which is to evade U.S. telemarketing laws and financially profit thereby.  Hereinafter, "TMC Group" is used to refer collectively to Pacific Telecom Communications Group, International Telephone Corporation, and Telephone Management Corporation.  The term "consumer" is used to refer to a recipient of a telemarketing call.

2.   Pacific Telecom Communications Group and Telephone Management Corporation permit their telephone numbers to be used by ITC and other foreign companies who use these telephone numbers to make illegal telemarketing calls that violate the Telephone Consumer Protection Act and Ohio Telephone Solicitation Act.  The calls also invade consumers' right to privacy by intrusion into the solitude of their homes.  The TMC Group knows or conscientiously avoids knowing that their telephone numbers are being used for illegal telemarketing.  These companies ignore obvious signs that their numbers are being used for illegal telemarketing, and these companies continue to permit their numbers to be used for illegal telemarketing after receiving numerous complaints of illegal telemarketing.

3.   The TMC Group directly profits from the illegal telemarketing calls through revenue they receive for caller ID name (CNAM) database queries. When the consumer's local telephone

2

company receives a call with one of these Defendants' telephone numbers as the caller ID number, the consumer's telephone company either

    a.   does a CNAM database query to determine the name that should be displayed on the consumer's caller ID device, or

    b.   does not send the caller name to the consumer's caller ID device.

These Defendants are paid by the consumer's local telephone company each time that the telephone company makes a query into these Defendants' CNAM databases.

4.   Furthermore, the TMC Group shares some of the revenue for CNAM database queries with the telemarketing companies. This revenue sharing scheme inherently encourages illegal telemarketing – *paying the telemarketers for their illegal calls*.  Because of this revenue-sharing scheme, the telemarketer profits from the call even when the consumer does not answer the telephone or when the consumer rejects the telemarketer's offer.

5.   The TMC Group puts the general public at great danger by permitting their telephone numbers to be used by foreign telemarketing companies.

    a.   The courts where these foreign companies reside may refuse to enforce a U.S. court judgment based on the Telephone Consumer Protection Act or Ohio Telephone Solicitation Act or may not cooperate in permitting discovery.  Hence, there is heightened danger that a foreign company will ignore U.S. telemarketing laws.

    b.   Furthermore, consumers who give the telemarketer personal information such as credit card numbers or agree to purchase something from the telemarketer have little or no legal recourse if they have a problem.  As described later, the telemarketer deliberately conceals its identity.  Even if the consumer learns the identity of the

3

telemarketer, obtaining and enforcing a judgment in a foreign court against the telemarketer may be impractical.  Furthermore, by displaying a U.S. telephone number on the consumers' caller ID device, the consumer is misled into believing that they are talking to a U.S. company who they could sue and enforce judgment against in U.S. courts.

6.   The risk of harm to the public described above was foreseeable and self-evident.  The TMC Group was negligent in providing the services and revenue-sharing plan described in this Complaint and failing to take precautions to reduce the likelihood that their services would be used for illegal telemarketing.

7.   The risk of harm was so foreseeable and self-evident that the TMC Group is not just negligent but also reckless and they inflicted the resulting harm willfully and knowingly.

8.   Qall Cord Philippines Ltd Co. ("Qall Cord") is registered with the Philippines Securities and Exchange Commission and makes illegal telemarketing calls to the United States.  Qall Cord uses the same pre-recorded messages as was used in the calls I received from TMC Group telephone numbers, but Qall Cord uses a different telephone number supplier.

<u>JURISDICTION AND VENUE</u>

9.   This Court has jurisdiction over the claims herein pursuant to 47 USC § 227(b)(3), 47 USC § 227(c)(5), and Ohio Rev. Code § 2305.01.  This venue is appropriate because all the telephone calls described in the following paragraphs were received in Clermont County, Ohio.

10.  The TMC Group regularly receives CNAM database query revenue from Ohio telephone companies.

11.  The TMC Group has been unjustly enriched through these revenues, which they acquired by knowingly assisting illegal telemarketing to Ohio telephone numbers.  Ohio consumers pay for this revenue through fees in their telephone bills.

12.  Between June 1 and August 24, 2012, the Federal Trade Commission received 13,019 complaints from Ohioans alleging violations of 47 USC § 227(c) by callers using Pacific Telecom telephone numbers.

13.  The TMC Group is, and has been, aware of numerous complaints by Ohioans that Pacific Telecom phone numbers are being used for illegal telemarketing.  The TMC Group knows that its clients frequently make illegal telemarketing calls to Ohio telephone numbers and the TMC Group knows that its activities directly harm Ohioans.

<u>FACTS</u>

14.  In July 2002, the Cincinnati Bell assigned the phone number (513) 947-1695 to my residential telephone line in Amelia, Ohio.  That phone number has been assigned to my residential phone line ever since.

15.  The phone number (513) 947-1695 is on the national Do Not Call registry (http://donotcall.gov) and has been since July 1, 2003.

16.  Defendants do not have an "established business relationship" with me as that term is defined in 47 USC § 227(a)(2) and 47 CFR § 64.1200(f)(4) and I have not given the Defendants express invitation or permission to call me.

17.  The outgoing message on my answering machine for my phone at (513) 947-1695 says

> This is Vincent Lucas.  This number is on the national Do Not Call registry.  If you have an established business relationship with me or you are calling about a non-business related matter, you may leave a message after the tone.

18. On August 9, 2012 at 4:05 p.m., I received the following message on my answering machine.

> ... account services and we're calling in reference to your current credit card account. There are no problems currently with your account. It is urgent however that you contact us concerning your eligibility for lowering your interest rate to as little as 6.9%. Your eligibility expires shortly so please consider this your final notice. Press the number 3 to discontinue further notices or press the number 1 on your phone now to speak with a live operator and lower your interest rates. Thank you. Have a great day.

The message was delivered to my residential phone line (513) 947-1695 using a pre-recorded voice. The message does not state the identity of the caller or the phone number from which the call was made. My caller ID showed that the message came from (407) 476-5680, but did not show the identity of the caller.

19. The telemarketer has called me at telephone number (513) 947-1695 numerous times using the same pre-recorded message but different phone numbers. The telemarketer called on 11/1/2012, 10/1/2012, 8/23/2012, 6/16/2012, 5/24/2012, 5/18/2012, 5/04/2012, 4/17/2012, 12/06/2011, 9/29/2011, 9/14/2011, 9/10/2011, and 7/22/2011. My caller ID has displayed the following as the caller's telephone number for various telephone calls made by the telemarketer: 646-417-9501, 417-800-2317, 253-382-9908, 253-382-9903, 503-457-1300, 503-902-8480, 407-429-9999, 503-902-8479, 305-304-9999, 206-496-0802, 407-480-9999, 406-219-2301, 206-312-9999. Prior to 7/22/2011, I also received numerous other telemarketing calls using the same pre-recorded message.

20. The same telemarketer also called me from 417-800-2317 on 10/12/2012 and from 417-800-2325 but did not leave a message.

21. The telemarketer called from 626-668-8224 on 1/26/2013 using a pre-recorded message with the same words as the message in ¶ 18, except "6.9%" was replaced with "2.9%".

22. On 9/7/2011, 9/9/2011, 11/20/2012, 11/28/2012, 12/6/2012, 12/8/2012, 12/12/2012, 12/27/2012, and 1/3/2013, I received the following message on my answering machine.

> This is your second and final notice to lower your credit card interest rate and payment. Press 1 now to find out the terms, conditions, and associated changes before the next billing cycle. Again, this is your final notice as it relates to the financial stimulus. So press 1 now to take advantage of this today.

The message was delivered to my residential phone line (513) 947-1695 using a pre-recorded voice. The message does not state the identity of the caller or the phone number from which the call was made. My caller ID showed that the messages came from 508-475-1352, 508-475-1394, 347-896-6046, 646-417-9501, 347-896-6018, 213-375-0020, 917-732-9002, 417-800-2333, and 417-800-2301 but did not show the identity of the caller.

23. During one of telephone calls described in ¶ 19, I pressed one to speak to a live representative. I asked the representative what the name and address of the business or organization is that was calling. The representative only identified the business as "card member services." When I pressed for more information regarding what the name of the business was, the representative said that the business was card member services for "Visa".

24. In truth, the telemarketer is not Visa U.S.A, Inc. and is not authorized by Visa U.S.A., Inc. to act on their behalf.

25. During another telephone call from the telemarketer, I pressed one to speak to a live representative and again asked the representative for the name and address of the business or organization that was calling. Again the representative only identified the business as "card member services."

26. The prerecorded message and statements by the telemarketer's live representatives are intentionally designed to mislead the consumer into believing that the consumer already has a credit account with the telemarketer (or company that the telemarketer is calling on behalf of). The term "card member services" implies services for someone who already a card member, i.e. someone who has a credit card with the telemarketer. The term "card member services" is used by several banks, such as Chase Bank, First National Credit Card, and U.S. Bank, as the name of the customer service department for their credit card holders. The prerecorded message says "there are no problems currently with your account," implying that the consumer already has a credit account with the telemarketer.

27. The telephone numbers 407-476-5680, 646-417-9501, 417-800-2317, 417-800-2325, 347-896-6046, 646-417-9501, 347-896-6018, 213-375-0020, 917-732-9002, 417-800-2333, and 417-800-2301 were assigned to Qall Cord Philippines Ltd. Co. on the dates of the calls. On information and belief, Qall Cord Philippines Ltd. Co. originated the calls from these telephone numbers.

28. Pacific Telecom Communications Group ("Pacific Telecom") operates a Competitive Local Exchange Carrier (CLEC) licensed in several states.

29. The telephone numbers 253-382-9908, 253-382-9903, 503-457-1300, 503-902-8480, 503-902-8479, 206-496-0802, and 406-219-2301 were assigned to Pacific Telecom on the dates of the calls.

30. In response to a subpoena, Pacific Telecom claims that it had assigned the telephone numbers 253-382-9908, 253-382-9903, 503-457-1300, 503-902-8480, 503-902-8479, and 206-496-0802 to International Telephone Corporation, 8 Marine Parade, Belize City, Belize,

8

contact@inttelephone.com and 406-219-2301 to Capital Solutions Group, S.A., Avenue Samuel Lewis Y Calle 58, Panama 3, Republic of Panama on the dates of the telephone calls.

31.  On information and belief, International Telephone Corporation is registered in Belize as an international business company.

32.  The telephone numbers 508-475-1352 and 508-475-1394 were assigned to Telephone Management Corporation, Inc. on the dates of the telephone calls.

33.  On Sept. 28, 2012, I contacted Gianno Accuardi, who is an officer of Telephone Management Corporation, Inc. ("TMC"),  by email to gianno@telephonemanagement.net, notified him of the telemarketing calls from TMC's telephone numbers, and said

> If you are not the telemarketer responsible for the calls, please tell me what is the name and address of the telemarketer, what services your company provides to the telemarketer, and why the telemarketer was using two of your phone numbers. If you do not respond within ten days, I will assume you are the telemarketer responsible for these calls and proceed accordingly.

TMC did not respond. I sent a second message on October 11 to gianno@telephonemanagement.net and jamie@telephonemanagement.net giving TMC another opportunity to respond, but they did not.

34.  TMC either originated the telemarketing calls that I received in which 508-475-1352 and 508-475-1394 appeared on my Caller ID device, or they provided substantial assistance and support to the telemarketer who originated those calls knowing that the telemarketer was engaged in acts or practices that violate the Telephone Consumer Protection Act and rules promulgated thereunder.

35.  The telephone number (206) 496-0802 was assigned to All In One Service AIOS, LLC by International Telephone Corporation on the date of the call using that number.

36. On information and belief, All In One Service AIOS, LLC originated the telemarketing call that I received on 9/29/2011 in which (206) 496-0802 appeared on my Caller ID device.

37. The telephone numbers 253-382-9908, 253-382-9903, 503-902-8480, and 503-902-8479 were assigned to Edwin Adquilen Valbuena Jr. ("Valbuena") by International Telephone Corporation on the dates of the calls using those numbers.

38. Valbuena is a Philippine business owner who does business with International Telephone Corporation under the name "VICIdial". Valbuena is listed on the http://vicidial.com internet site as a "Vicidial partner".

39. On information and belief, Valbuena originated the telemarketing calls that I received in which the telephone numbers 253-382-9908, 253-382-9903, 503-902-8480, and 503-902-8479 appeared on my Caller ID device.

40. On information and belief, each telemarketer originated at least two telephone calls within a twelve month period to (513) 947-1695.

41. Other individuals or entities, whose identities are not known at this time, may be involved in the wrongful actions that are the subject of this lawsuit. This Complaint will be amended when their identities are discovered.

42. I have suffered actual economic loss as a result of the actions of the Defendants described above. The Defendants' actions have wasted my time. If it were not for the actions of the Defendants, I could have used that time to earn money by working more hours at my occupation.

The TMC Group Joint Enterprise

43. Fred Accuardi is president of Telephone Management Corporation and also runs International Telephone Corporation. Under Accuardi's management, Telephone Management

10

Corporation has set up a website at http://telephonemanagement.net and International Telephone Corporation has set up websites at http://inttelephone.com, http://intltelephone.com, and http://revenue-reports.com.  Accuardi personally renewed the domain names TELEPHONEMANAGEMENT.NET, INTTELEPHONE.COM, INTLTELEPHONE.COM, and REVENUE-REPORTS.COM.  Fred Accuardi is also an officer of Pacific Telecom Communications Group.  His title as an officer of Pacific Telecom is "Director".

44.  Pacific Telecom Communications Group and International Telephone Corporation both use the telephone number (360) 328-8000 to receive messages directed to them.

45.  International Telephone Corporation also does business under the name "Pacific Telecom Communications Group".  International Telephone Corporation and Pacific Telecom Communications Group both use Incorp Services, Inc. as their registered agent in Nevada. However, International Telephone Corporation is not registered as a business with the Nevada Secretary of State.  I asked Incorp Services about this, and Incorp responded that International Telephone Corporation does business in Nevada under the name "Pacific Telecom Communications Group".

46.  F. Antone Accuardi, who is the son of Fred Accuardi, is legal counsel for Telephone Management Corporation, Pacific Telecom Communications Group, and International Telephone Corporation.

47.  On information and belief, Pacific Telecom Communications Group has provided thousands of telephone numbers to International Telephone Corporation.

<u>CAUSES OF ACTION</u>

## I. VIOLATION OF THE FEDERAL TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), OHIO TELEMARKETING ACT, AND OHIO TELEPHONE SOLICITATION ACT

### A. TELEMARKETING

48. The telemarketer willfully violated the Federal Telephone Consumer Protection Act and Ohio Telephone Solicitation Act by the actions described in ¶¶ 18-26. Namely,

- the telephone calls were made to a residential line using an artificial voice (47 USC § 227(b)(1)(B));

- the calls were made to a number listed on the national Do Not Call registry (47 USC § 227(c));

- the calls did not state the identity and telephone number or address of the entity making the call (47 USC § 227(d)(3)(A), Ohio Rev. Code § 4719.06);

- the calls were made by an entity that is not registered as a telemarketer in Ohio (Ohio Rev. Code 4719.02); and

- the telemarketer knowingly caused the caller identification system to transmitted false information during some of the calls (47 USC § 227(e)). The telemarketer transmits the false information as part of an effort to defraud, cause harm, and wrongfully obtain something of value by attempting to mislead the consumer into believing that the call is coming from a U.S. company with whom the consumer already has a line of credit.

49. The telemarketer also violated the Ohio Telemarketing Act at Ohio Rev. Code § 109.87(B)(1) by the actions described in ¶¶ 18-26.

## B. FALSE CALLER ID INFORMATION TRANSMITTED BY QALL CORD

50.  Qall Cord uses a Caller ID Name Management Service (CNAM-MS) that allows Qall Cord to customize the name displayed on consumers' caller ID devices.  The caller ID name that Qall Cord has put into the CNAM-MS system for (407) 476-5680 is "card services".  This violates 47 USC § 227(e) by causing false caller ID name information to be transmitted to consumers. "Card services" is not the name of the telemarketer, and furthermore misleads the consumer as described in ¶ 26.  Some consumers, such as the Plaintiff, saw "Orlando, FL" on their caller ID device instead of this name.  This misleads consumers into believing that the telephone call is coming from a company located in the United States.

51.  Qall Cord Philippines Ltd Co. violated 47 USC § 227(e) by transmitting false caller ID information by transmitting (407) 476-5680 as the caller ID number.  This caller ID number is false because the call does not originate from the entity that the telephone company has assigned that telephone number to, and the call is not routed through any of that entity's equipment. Furthermore, the consumer cannot call (407) 476-5680 during normal business hours to find out the identity of the telemarketer or speak to a live representative of the telemarketer.

## C. VICARIOUS AND/OR CONTRIBUTORY LIABILITY OF DEFENDANTS WHO ASSISTED OR FACILITATED TELEMARKETING

52.  As described in ¶ 3, the TMC Group receives revenue when outbound calls are made using their telephone numbers. Hence, these Defendants receive revenue each time that a call is made using their phone numbers as the caller ID number and the consumer's local telephone company looks up the caller ID name for that number.  If the local telephone company chooses not to look up the name, in lieu of the caller name the telephone company typically displays on the consumer's caller ID device the city and state associated with the telephone number.

13

53.  The TMC Group gives telemarketing companies permission to use their telephone numbers, knowing that the telemarketing companies will transmit that number to the caller ID service as the telephone number of the caller.

54.  The TMC Group provides a Caller Name Management Service (CNAM-MS) which allows their clients to customize the caller ID name displayed to consumers when their clients call consumers using the telephone numbers supplied by the TMC Group.  The service allows TMC Group's clients to specify any name that they wish to be displayed on the caller ID.

55.  The TMC Group has a revenue sharing agreement with their telemarketing clients in which the TMC Group pays their telemarketing clients a portion of the revenue that the TMC Group receives for CNAM database queries

56.  On August 27, 2012, I called 253-382-9908 and 253-382-9903.  The calls were answered by an IVR system which did not state the identity of the telemarketer, does not allow the caller to report a violation of the law, does not allow the caller to speak with a live representative, and which falsely claims that the caller's number is being added to a do-not-call list.  The IVR system said

> Please enter the number you wish to add to our do-not-call list.  [Pause]  The number was successfully added. Thank you.

However, I dialed *67 prior to making the calls so that my caller ID information was not transmitted and I did not enter a number when prompted.  Therefore, the IVR system could not have added my number to a do-not-call list.

57. The TMC Group knew that their telephone numbers were and are being used for telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c).

a. The North Dakota Attorney General's office notified Pacific Telecom on February 3, 2011, January 26, 2012, and May 18, 2012 that its clients are engaged in illegal telemarketing and warned Pacific Telecom that it was facilitating and assisting in illegal telemarketing.

b. A Google search for "Pacific Telecom Communications Group" on November 10, 2012 produced over 30 pages of internet links of complaints.  Each link goes to a page which typically contains complaints from dozens of consumers of illegal telemarketing.

c. Between June 1 and August 24, 2012, the FTC received 208,816 complaints of violations of 47 USC § 227(c) by callers using Pacific Telecom telephone numbers.

d. The Oregon Department of Justice has received fifty four complaints ranging from 1/5/2011 to 9/24/2012 regarding illegal telemarketing listing Pacific Telecom Communications Group, 12228 Venice Blvd. Ste. 559, Los Angeles, CA as the respondent.  https://data.oregon.gov/Public-Safety/Pacific-Telecom-Communications-Group-illegal-telem/8uje-p6nr

e. In *Cellco Partnership d/b/a Verizon Wireless and Onstar, LLC v. Dealers Warranty, LLC, et al*., NJ Dist. Ct. Case No. 3:09-CV-1814, Verizon Wireless alleged that Telephone Management Corporation knowingly facilitated telemarketers who made over 8 million illegal telemarketing calls to Verizon wireless subscribers.

f. In *State ex rel. Nixon v. Luvoo.com, et al.* (Missouri Circuit Ct. 2006), the Missouri Attorney General alleged that in just one month Telephone Management Corporation, in concert with the other defendants, "engaged in at least 140 violations of Missouri's

Telemarketing No-Call List Act by making or causing to be made telephone solicitations to the telephone lines of residential subscribers."

g.  The October 2005 version of Telephone Management Corporation's internet site said "If you are a Telemarketing Company or operate a Pre-Paid Telephone Card Platform or Fax and you are making more than 5,000,000 calls per month, TMC will show you how to be paid handsomely for many of those calls."

58. Furthermore, the TMC Group knows that many of these illegal telemarketing calls are directed at Ohioans and that those calls harm Ohioans.

59. Pacific Telecom, in response to an Ohio consumer's complaint of illegal telemarketing, made a statement to the Ohio Attorney General that Pacific Telecom is a CLEC "specializing in _inbound_ origination services for large scale commercial businesses.  As such, we do not make calls." (Emphasis added).  This representation is false and/or extremely misleading.  A substantial portion (if not all) of Pacific Telecom's business involves providing telephone numbers for _outbound_ calls.  Furthermore, even if Pacific Telecom does not itself make calls, it is part of the TMC Group joint enterprise which knowingly assists telemarketers who make illegal calls to Ohioans.

60.  The telemarketing telephone calls using TMC Group telephone numbers either

a.  are not routed through TMC Group equipment, in which case the caller ID number information transmitted to the consumer is false in violation of 47 USC § 227(e) and the TMC Group knowingly assisted and facilitated the violation of 47 USC § 227(e) by giving the telemarketing companies permission to use their telephone numbers, knowing that the telemarketing companies would use their numbers to transmit false caller ID information to the consumer; or

16

    b.  are routed through TMC Group equipment, in which case the TMC Group knowingly assists and facilitates the telemarketers in putting on U.S. phone lines telemarketing calls that violate 47 USC § 227(b) and (c); or

    c.  the TMC Group directly originates the telemarketing calls that violate 47 USC § 227(b) and (c)

61. The TMC Group knowingly assisted and facilitated their telemarketing clients in violating 47 USC § 227(b)(1)(B) and (c). The TMC Group permitted their telemarketing clients to use the TMC Group's telephone numbers after the TMC Group was aware of consumer complaints of illegal telemarketing. The TMC Group ignored other evidence that its telephone number was and is being used for telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c).

62. The TMC Group encouraged and financially rewarded their clients for the telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c) through its CNAM revenue-sharing program. TMC Group had the right and ability to terminate their clients' participation in the revenue-sharing program after learning that their clients were using their telephone numbers for illegal telemarketing, but TMC Group knowing chose not to.

63. The TMC Group financially benefit from the calls from its telephone numbers that violate 47 USC § 227(b)(1)(B) and (c), through CNAM lookup revenue. The TMC Group knows or conscientiously avoids knowing that this revenue is derived from telemarketing calls that violate 47 USC § 227(b)(1)(B) and (c).

64. TMC Group also had the right and ability to put conditions and restrictions on the use of its telephone numbers. The TMC Group could have put conditions or restrictions on the use of its telephone numbers that would have reduced the likelihood that the number would be used in

making telemarketing calls that violate 47 USC § 227(b)(1)(B) and 47 USC § 227(c), but knowingly chose not to.

65. The TMC Group knowingly materially assisted and facilitated the telemarketer in circumventing technology available to consumers for blocking unwanted telemarketing calls, thereby violating the consumer's right, provided by 47 USC § 227(c), not to be called. Various equipment and services are available to consumers that block telephone calls from specific telephone numbers. The consumer specifies which telephone numbers to block. However, the TMC Group, and other companies have supplied the telemarketer with thousands of telephone numbers. As a result, the technology for blocking specific telephone numbers is ineffective in blocking the telemarketer's unwanted calls. Furthermore, even if the consumer learned every number supplied to the telemarketer by the TMC Group and blocked every one of those numbers, the telemarketer can obtain a new set of telephone numbers and again send unwanted calls to the consumer. The telemarketer used a different telephone number almost every time that they called me.

66. International Telephone Corporation was created in order to conceal the identities of those responsible for performing or aiding illegal telemarketing activities; frustrate and evade legal discovery efforts; evade U.S. telemarketing laws and assist others in evading U.S. telemarketing laws

    a. None of the names of ITC's officers are listed on the company's website.

    b. Business records showing the names of ITC's owners or officers do not appear to be publicly assessable.

    c. Although Pacific Telecom and ITC have an intimate business relationship, Pacific Telecom, in response to a subpoena, claims that none of its documents and

18

electronically stored information contain the name of a single owner, officer, employee, or representative of ITC.

67. Pacific Telecom Communications Group, Telephone Management Corporation, and International Telephone Corporation are each vicariously and/or contributorily liable for the telemarketing calls sent to me using their telephone numbers.

### D. JOINT ENTERPRISE LIABILITY OR JOINT LIABILITY FOR ACTIONS DONE IN CONCERT UNDER A COMMON DESIGN

68. As alleged in ¶¶ 1, 43-47, Pacific Telecom Communications Group, Telephone Management Corporation, and International Telephone Corporation are engaged in a joint enterprise or a joint venture and therefore are liable for each other's actions.

69. Pacific Telecom Communications Group, Telephone Management Corporation, and International Telephone Corporation are acting in concert, under common management, and pursuant to a common design. All three companies are owned or managed by Fred Accuardi. These companies are acting in concert to implement a common business design in which they derive profit from providing CNAM-MS services to foreign telemarketers. (For example, under Accuardi's management, Pacific Telecom Communications Group provides telephone numbers to International Telephone Corporation and then International Telephone Corporation provides the telephone numbers to telemarketers.) As such, these companies are liable for each other's actions.

### VIOLATION OF THE OHIO CONSUMER SALES PROTECTION ACT

70. Under 15 USC § 6102(c), any violation of the Telemarketing Sales Rule (16 CFR §§ 310.1-310.9) is an unfair or deceptive act or practice.

19

71. The telephone calls described in ¶¶ 18-26 are deceptive, unfair, and unconscionable and violate Ohio Rev. Code § 1345.02(A).  Namely,

    a.   The calls are designed to deceive the consumer into believing that the consumer already has a credit account with the telemarketer or company that the telemarketer is calling on behalf of.  See ¶ 26.

    b.   The pre-recorded message does not disclose the fact that the purpose of the call is to effect a new sale (in violation of Ohio Admin. Code § 109:4-3-11, 16 CFR § 310.4(d)(2)) and does not disclose the nature of the goods or services (violating 16 CFR § 310.4(d)(3)).  The pre-recorded message instead leads the consumer to believe that the call is from an existing creditor, who might be offering to modify the terms of an existing line of credit.

    c.   The telephone calls do not disclose the identity of the seller in violation of 16 CFR § 310.4(d)(1).

    d.   The telephone calls were made using a pre-recorded voice in violation of 16 CFR § 310.4(b)(v).

    e.   The telephone calls were placed to a number on the U.S. Do-Not-Call registry in violation of 16 CFR § 310.4(b)(iii)(B) and the Defendants did not honor my do-not-call request, expressed in my answering machine's outgoing message (¶ 17).

INVASION OF PRIVACY

72.  The persistent, unwanted telephone calls made by the telemarketer as described in ¶¶ 18-26 invaded my right to privacy by unreasonable intrusion into the solitude and seclusion of my home.

20

## NEGLIGENCE

73. The telemarketer was negligent per se in violating the Federal Telephone Consumer Protection Act, Ohio Telephone Solicitation Act, and Ohio Telemarketing Act.

74. A reasonable individual would recognize the risk of providing the services and revenue-sharing plan that the TMC Group provided their telemarketing clients.

75. As described in ¶¶ 6 and 7, Pacific Telecom Communications Group, International Telephone Corporation, and Telephone Management Corporation were negligent in providing services and revenue-sharing plan to telemarketers and failing to take reasonable precautions to reduce the likelihood that their services would be used for illegal telemarketing.

76. The CNAM-MS revenue-sharing program provided by Pacific Telecom Communications Group, International Telephone Corporation, and Telephone Management Corporation causes repeated, unwanted, illegal telemarketing calls.  Because of the program, the telemarketer profits from the calls even when the consumer does not answer the telephone or when the consumer has rejected the telemarketer's offer and requested that the telemarketer not call again.  If it were not for this revenue-sharing program, the telemarketer would have no incentive to call the consumer again after the consumer rejects the telemarketer's offer.

77. The CNAM-MS service provided by Pacific Telecom Communications Group, International Telephone Corporation, and Telephone Management Corporation increases the character and extent of the injury caused by the illegal telemarketing calls.  For example, the CNAM-MS service allows the telemarketer to display a false name on consumers' caller ID devices.  Also, as described in ¶ 65, the CNAM-MS service gives the telemarketer numerous telephone numbers to call from, thereby allowing the telemarketer to circumvent technology available to consumers for blocking unwanted telemarketing calls.

NUISANCE

78. The actions of the Defendants described in ¶¶ 18-26 are a nuisance which disturbs the physical senses and interferes with my lawful enjoyment of my home.  This invasion of the lawful enjoyment of my home is intentional and unreasonable.

## PERSONAL LIABILITY OF STEVE HAMILTON, FRED ACCUARDI, AND F. ANTONE ACCUARDI

79. Pacific Telecom is incorporated in Nevada but its status as a corporation was not active during some or all of the calls made to me.  On 10/31/2012, the Nevada Secretary of State's records showed Pacific Telecom's corporate status as being in "default".

80. Steve Hamilton, in registering Pacific Telecom with the Nevada Secretary of State, claimed that his company is exempt from obtaining a Nevada business license because Pacific Telecom is a home-based business.  The home-based business exemption applies only to

> A person who operates a business from his or her home and whose net earnings from that business are not more than 66 2/3 percent of the average annual wage, as computed for the preceding calendar year pursuant to chapter 612 of NRS and rounded to the nearest hundred dollars.

Nevada Revised Statutes 76.020(2)(b).

81. In truth, Pacific Telecom is not a home-based business.  Pacific Telecom regularly does business from Oregon and from 12228 Venice Blvd, Ste. 559, Los Angeles, CA 90066.  Pacific Telecom is licensed as a CLEC in Washington and Montana, and was licensed in Oregon and North Dakota.  Also, Pacific Telecom's net earnings probably exceed 66 2/3% of the Nevada average annual wage.

82. Pacific Telecom has not obtained the licenses required for its business. Nevada Revised Statutes 76.100.

83. Pacific Telecom fails to follow the corporate formalities required for its business. For example, Pacific Telecom was twelve months delinquent in submitting its list of officers to the Nevada Secretary of State. Pacific Telecom's CLEC license was revoked last year in Oregon for failure to submit records required by law, and revoked in North Dakota for failure to comply with registration requirements.

84. On lists of officers previously submitted to the Nevada Secretary of State, Steve Hamilton was listed as the only officer of Pacific Telecom. He was listed as the company's President, Treasurer, Secretary, and sole Director. Pacific Telecom is an alter ego for Steve Hamilton.

85. On information and belief, Steve Hamilton actively participated in the tortious behavior of Pacific Telecom described in this Complaint.

86. For these reasons, Steve Hamilton is personally liable for Pacific Telecom's actions.

87. Fred Accuardi and F. Antone Accuardi created International Telephone Corporation in order to evade and help others to evade U.S. telemarketing laws. See ¶¶ 1, 66.

88. Fred Accuardi has commingled his personal finances with those of Telephone Management Corporation and International Telephone Corporation. For example, Fred Accuradi renewed the internet domain names TELEPHONEMANAGEMENT.NET, INTTELEPHONE.COM, INTLTELEPHONE.COM, and REVENUE-REPORTS.COM using the same American Express card and same GoDaddy.Com account that he used to purchase internet domain names that he uses to advance his personal political beliefs such as LETSSTOPTHEWAR.COM, MKADIFFERENCE.COM, SPEAKOUT99ER.COM, and PROGRESSIVEPOST.ORG. On that

GoDaddy.Com account, Fred Accuardi lists the name of the business as "mkadifference llc". Mkadifference LLC claims that it is a "privately funded political organization".

89. F. Antone Accuardi is actively involved in the management of International Telephone Corporation and Telephone Management Corporation. He personally approved many of the contracts and other legal documents of the corporation.

90. Telephone Management Corporation and International Telephone Corporation are closely held businesses controlled by Fred Accuardi and his family. Both companies are an alter ego for Fred Accuardi and his family.

91. Fred Accuardi and F. Antone Accuardi actively participated in the tortious behavior of Telephone Management Corporation and International Telephone Corporation described in this Complaint.

92. For these reasons, Fred Accuardi and F. Antone Accuardi are personally liable for the actions of Telephone Management Corporation and International Telephone Corporation.

93. The Nevada business records of Pacific Telecom were updated in the year 2013 to list Fred Accuardi as the director of Pacific Telecom. Fred Accuardi actively participated in the tortious behavior of Pacific Telecom described in this Complaint. As such, Fred Accuradi is personally liable for the actions of Pacific Telecom.

<u>CIRCUMSTANCES WHICH JUSTIFY TREBLE AND PUNITIVE DAMAGES</u>

94. The Defendants performed the actions described in the preceding paragraphs willfully and knowing that the actions violate the TCPA and Ohio law. The Defendants performed these actions with the purpose of deriving profit from causing tortious injury, namely invading my right to privacy, and the Defendants should have reasonably expected that their actions would

cause this injury. The Defendants performed these actions with willful, reckless disregard of my rights, and hence the actions demonstrate malice.

SUBSEQUENT CALLS

95.  Plaintiff continues to receive illegal telemarketing calls and asks the Court to also include any other illegal telemarketing calls involving the named Defendants that Plaintiff receives after February 8, 2013.


WHEREFORE, the Plaintiff asks that the Court grant the following relief:

1.  Award the Plaintiff $1500 for each violation of 47 USC § 227(b), $1500 for each call which violated 47 USC § 227 (c), and $200 for each violation of Ohio Rev. Code § 1345.02.  *See* 47 USC § 227(b)(3), § 227(c)(5),  Ohio Rev. Code § 1345.09(B), and *Charvat v. NMP, LLC*, 656 F. 3d 440, 448-452 (6th Cir 2011).  Each pre-recorded telemarketing call contains at least four distinct violations of Ohio Rev. Code § 1345.02.

    a.  To date, Qall Cord Philippines Ltd. Co. owes at least $41,400 in statutory damages.

    b.  To date, the TMC Group, Steve Hamilton, Fred Accuardi, and F. Antone Accuardi owe at least $34,200 in statutory damages.

    c.  To date, All In One Services AIOS, LLC, owes at least $3800 in statutory damages.

    d.  To date, Edwin Adquilen Valbuena Jr. owes at least $15,200 in statutory damages.

25

2.  Award the Plaintiff actual and punitive damages for the causes of action under Ohio tort law.

3.  Award the Plaintiff costs, attorney fees, and interest,

4.  Issue a permanent injunction forbidding International Telephone Corporation and Qall Cord Philippines Ltd. Co. from making calls to telephone numbers in the United States and forbidding all the Defendants from violating or helping others violate 47 USC § 227 and Ohio Rev. Code § 4719,

5.  Issue a permanent injunction forbidding Edwin Adquilen Valbuena Jr. and any company owned or operated by him from making calls to telephone numbers in the United States,

6.  Issue a permanent order requiring the Defendants to pay the Plaintiff $1500 each and every time in the future that they call the Plaintiff plus an additional $1500 each time that they call using an artificial or pre-recorded voice, or permanent injunction prohibiting the Defendants from making telephone calls to the Plaintiff, and

7.  Such further relief as may be appropriate.

Respectfully submitted,

s/ Vincent Lucas

Vincent Lucas
P.O. Box 272
Amelia, OH 45102
(513) 947-1695
vincentlucaslegal@gmail.com
Plaintiff