**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VINCENT LUCAS,                                                Case No. 1:12-cv-630

                Plaintiff,                                Spiegel, J.
                                                             Bowman, M.J.

     v.

TELEMARKETER CALLING FROM (407) 476-5670
AND OTHER TELEPHONE NUMBERS, et al.,

                Defendants.

## REPORT AND RECOMMENDATION

Plaintiff initiated this litigation *pro se* on August 20, 2012, asserting that Defendants violated federal and state law by engaging in illegal telemarketing practices. Pursuant to the practice of this Court, this *pro se* litigation has been referred to the undersigned magistrate judge for review and disposition, by order or by report and recommendation ("R&R"), of all dispositive and non-dispositive motions.  To date, Plaintiff has amended his complaint three times. (Docs. 2, 20, 59).

This R&R addresses the pending motion of six Defendants, originally added by Plaintiff's second amended complaint, to dismiss all claims filed against them in Plaintiff's third amended complaint.  (Doc. 70).  Plaintiff has filed a response to the motion, to which Defendants have filed a reply.  (Docs. 77, 80).

On February 20, 2014, Plaintiff moved for leave to file a "memorandum of additional authorities" – in essence, a surreply or supplement to his prior response in

opposition to Defendants' motion.[1]  (Doc. 86).  Despite the fact that the additional "memorandum" is procedurally improper, the undersigned has considered it in the interests of justice, primarily because Plaintiff appears *pro se*.  Consideration of the additional "authorities" does not alter the conclusion and recommendation that Defendants' motion to dismiss be granted in part.

## I.    Factual and Procedural Background

The background of this case has been set forth in prior R&Rs, but is repeated herein for the convenience of this Court, with references to Plaintiff's most recently amended complaint.  Plaintiff alleges that he received a number of telemarketing calls to his residential telephone number, notwithstanding the fact that Plaintiff has placed that number on the U.S. Do Not Call Registry.  (Third Amended Complaint, Doc. 59 at ¶¶13,19-22).  Plaintiff alleges that he has received calls containing a prerecorded message offering to lower his interest rate from Defendant Qall Cord Philippines Ltd Co., "Qall Cord," a foreign company incorporated in the Philippines.  (Doc. 59, ¶¶8, 27, 50-51).

After initiating suit in August 2012, and amending his complaint in November 2012, Plaintiff filed a motion seeking a preliminary injunction against three entity Defendants named in his first amended complaint. (Docs. 2, 3).  Only two of those Defendants were initially served and appeared of record:  Manchester Services, Inc., and Sub-Par Ventures, LLC - both identified as Missouri businesses.  The third, Qall

---

[1]Alternatively, Plaintiff's document could be construed as a motion to further amend his complaint, to the extent that he attempts to offer new allegations in support of his claims.

Cord, did not appear, and no service was attempted on a fourth "unknown" telemarketer.[2]

On January 23, 2013, Plaintiff filed a Stipulation of Dismissal, notifying the Court that the parties had resolved all claims between Plaintiff and Defendants Manchester Services, Inc. and Sub-Par Ventures LLC.  (Doc. 14).  On February 21, 2013, Plaintiff filed his second amended complaint.  The second amended complaint omitted claims against the two Defendants with whom Plaintiff had settled, retained Plaintiff's claims against Qall Cord and the unidentified telemarketer, and added claims against six new Defendants.  (Docs. 19, 20).  The six new Defendants included:  Pacific Telecom Communications Group, International Telephone Corporation, Telephone Management Corporation, F. Antone Accuardi, Fred Accuardi, and Steve Hamilton.

On March 11, 2013, Plaintiff moved for a preliminary injunction against the six new Defendants.  (Doc. 22).  Those Defendants (collectively referred to as the "Accuardi Defendants") did not respond directly to the Plaintiff's motion for a preliminary injunction, but instead filed a motion to dismiss all claims against them in the second amended complaint.  (Doc. 35).

On June 6, 2013, the undersigned recommended the entry of default judgment against foreign Defendant Qall Cord, but recommended denial of Plaintiff's motion for preliminary injunctive relief against the six Accuardi Defendants.  (Doc. 37).[3]  For additional background, portions of the prior analysis are repeated verbatim:

---

[2]The fourth Defendant was not named, and has been omitted from the third amended complaint.
[3]The undersigned recently discovered that a sister court declined to enter default judgment on very similar facts involving allegedly illegal telemarketing practices. *See Charvat v. DFS Services LLC*, 781 F.Supp.2d 588 (S.D. Ohio 2011)(citing "preferred practice" in Sixth Circuit)

> In his second amended complaint…, Plaintiff alleges that two of the telemarking calls originated from telephone numbers owned by Defendant Telephone Management Corporation ("TMC"), and that seven calls originated from telephone numbers owned by Defendant Pacific Telecom Communications Group ("PacTel"). Plaintiff alleges that through discovery, he has learned that PacTel assigned six telephone numbers to Defendant International Telephone Corporation ("ITC"), an entity allegedly located in Belize. …. The essence of Plaintiff's claims against all six Defendants is that they are engaged in the marketing and sale of telephone numbers to telemarketers who engage in illegal practices, despite Defendants' knowledge that their customers (the telemarketers) are engaged in illegal activity.
>
> *********
>
> Perhaps the singular most important fact in this case is what is *not* alleged by Plaintiff.  Notably, Plaintiff does not allege that any of the three entity Defendants, or [the] three individuals…are themselves engaged in telemarketing to Plaintiff's home.  Rather, the basis of Plaintiff's claims against all six Defendants rests on theories of vicarious and contributory liability, including the Defendants' allegedly "long history of aiding telemarketers" by permitting and encouraging the use of Defendants' services for illegal telemarketing purposes.  (Doc. 22 at 15).  Plaintiff alleges that the entity Defendants "knew that their telephone numbers were being used for telemarketing calls that violate 47 U.S.C. §227(b)(1)(B) and 227(c)."  (Doc. 20 at ¶50).  …Plaintiff has never alleged (and Defendants deny) that any of the Defendants have personally placed telemarketing calls to his home.  The statutes on which Plaintiff relies for preliminary injunctive relief authorize that relief against the persons engaged in telemarketing.  The statutes do not provide the same clear basis for relief against entities or persons who are alleged to be liable for "assisting and facilitating" illegal telemarketing activity. *See generally Baltimore-Washington Telephone Co.*, 584 F. Supp.2d 736 (D. Md., 2008)(holding that the TCPA does not encompass a cause of action for aiding and abetting).

(Doc. 37 at 5-7, emphasis original).

Based in part upon the quoted analysis and the "substantial legal issues" presented in the Accuardi Defendants' motion to dismiss, the undersigned recommended that Plaintiff's motion for preliminary injunctive relief against those six Defendants be denied.  (Doc. 37 at 7-8).  On August 27, 2013, the prior R&R, with one

small modification relating to the calculation of damages against Qall Cord, was adopted by the presiding district judge. (Doc. 51).

Plaintiff thereafter sought leave to file a third amended complaint; that unopposed motion was granted. In addition to reiterating claims against the Accuardi Defendants, Plaintiff's third amended complaint added new claims against two more defendants, one of whom presumably had previously been identified as the unknown telemarketer. Plaintiff recently obtained a Clerk's entry of default as to one of the new Defendants, All in One Service AOIS, LLC,[4] and has moved for service by email of his third amended complaint against the second newly added Defendant, Edwin Valbuena Jr., a resident of the Philippines.

In addition to filing his third amended complaint, Plaintiff moved for partial summary judgment against the six Accuardi Defendants. (Doc. 41). In an R&R filed on October 31, 2013 and adopted by the district judge on January 24, 2014, the undersigned recommended denial of Plaintiff's motion for partial summary judgment. (Docs. 58, 85). In the same R&R, the undersigned recommended that the Defendants' motion to dismiss Plaintiff's second amended complaint be denied as moot, but without prejudice to Defendants' right to file a motion to dismiss Plaintiff's then-newly-filed third amended complaint.

Following denial of their motion to dismiss Plaintiff's second amended complaint, the Accuardi Defendants exercised their prerogative to file a motion to dismiss Plaintiff's

---

[4]On March 7, 2014, Plaintiff moved for entry of default judgment in the amount of $3,800.00 against Defendant All in One Service AIOS, LLC. The undersigned will address that motion by separate R&R.

third amended complaint. (Doc. 70). The undersigned now recommends that Defendants' pending motion be granted in part.

Prior to turning to Defendants' current motion, it is useful to review the individual identities of the six Accuardi Defendants. Plaintiff alleges:

> International Telephone Corporation ("ITC") and Telephone Management Corporation ("TMC") are both run by Fred Accuardi and F. Antone Accuardi. International Telephone Corporation is a shell company, organized in the Belize by F. Antone Accuardi, in order to conceal the identities of its officers and its clients. Pacific Telecom Communications Group ("Pacific Telecom"), International Telephone Corporation ("ITC"), and Telephone Management Corporation are engaged in a joint enterprise, the purpose of which is to evade U.S. telemarketing laws and financially profit thereby. Hereinafter, "TMC Group" is used to refer collectively to Pacific Telecom Communications Group, International Telephone Corporation, and Telephone Management Corporation.

(Doc. 59, ¶1). Plaintiff's use of the collective "TMC Group" to refer to the three separate entities can at times be confusing, but the Court will use the same nomenclature, and will use "TMC alone" to denote the single corporate entity.

Plaintiff generally alleges that Pacific Telecom and TMC alone "permit their telephone numbers to be used by ITC and other foreign companies who use these telephone numbers to make illegal telemarketing calls" that violate state and federal statutes, as well as the "right to privacy." (*Id.* at ¶¶2-3). Plaintiff claims that the "TMC Group knows or conscientiously avoids knowing that their telephone numbers are being used for illegal telemarketing," motivated by the fact the TMC Group "directly profits from the illegal telemarketing calls through revenue they receive for caller ID name (CNAM) database queries." (*Id.*).

TMC Group allegedly provides clients with telephone numbers that calls will be made from, along with a Caller Name Management Service (CNAM-MS), which clients

6

use to change the name displayed on a recipient's caller ID. (Doc. 59, ¶¶52-54). The CNAM-MS portal allows clients to control the name displayed. (*Id.* at ¶54). Plaintiff alleges that the TMC Group is paid each time a teleservice provider "dips" or accesses the TMC Group's CNAM-MS database to make calls. (*Id.* at ¶¶3, 55). Plaintiff alleges that the TMC Group encourages illegal telemarketing through alleged revenue sharing. (*Id.* at ¶4). Plaintiff particularly objects to the Defendants' practice of "permitting their telephone numbers to be used by foreign telemarketing companies," which Plaintiff alleges puts the "general public at great danger" due the limited legal remedies available against foreign defendants. (*Id.* at ¶5).

Pacific Telecom operates a competitive local exchange carrier ("CLEC") licensed in several states; it is registered as a public utility with the Public Utility Commission of Ohio. Plaintiff alleges that at least seven of the telephone numbers from which calls were made were assigned to Pacific Telecom. (*Id.* at ¶28). Based upon information obtained through subpoena, Plaintiff alleges that Pacific Telecom assigned some of those telephone numbers to ITC in Belize, with other numbers assigned to TMC alone. (*Id.* at ¶¶30, 32). In turn, ITC allegedly assigned one number used for telemarketing to Defendant All In One Service AIOS, and assigned other numbers to Defendant Edwin Valbuena. (*Id.* at ¶¶35, 37).

Perhaps most importantly for purposes of the present motion, Plaintiff's third amended complaint newly alleges that "TMC [alone] either originated the telemarketing calls that I received in which 508-475-1352 and 508-475-1394 appeared on my Caller ID device, or they provided substantial assistance and support to the telemarketer who originated those calls knowing that the telemarketer was engaged in acts or practices

that violate the Telephone Consumer Protection Act and rules promulgated thereunder."
(*Id.* at ¶34).  This allegation marks a clear departure from the allegations of Plaintiff's
prior two complaints, which the Court previously noted did "not allege that any of the
three entity Defendants, or three individuals…are themselves engaged in telemarketing
to Plaintiff's home."  (Doc. 37 at 6).

Under the heading "The TMC Group Joint Enterprise," Plaintiff details alleged
connections among the six Defendants.  Plaintiff claims that individual Defendant Fred
Accuardi is president of TMC, runs ITC, and is an officer and director of Pacific
Telecom.  Plaintiff alleges that Fred Accuardi was instrumental in TMC alone's
establishment of a website at http://telephonemanagement.net, and ITC's establishment
of similar websites at http://inttelephone.com, http://intltelephone.com, and
http://revenue-reports.com.  Plaintiff alleges that Fred "Accuardi personally renewed the
domain names…."  (Doc. 59 at ¶43).  Plaintiff alleges that Steve Hamilton is President,
Treasurer, Secretary and sole Director, as well as the alter ego of Pacific Telecom.  (*Id.*
at ¶84). Finally, Plaintiff alleges that individual Defendant F. Antone Accuardi, the son of
Fred Accuardi, is a lawyer who represents all entities in the TMC Group. (*Id.* at ¶46).

Plaintiff also generally alleges that Pacific Telecom has assigned "thousands" of
numbers to ITC, and that the two companies are inextricably linked not only through the
Accuardis, but through shared use of a single telephone number (360) 328-8000 to
receive messages directed to them.  Plaintiff asserts that ITC also does business under
the name of Pacific Telecom, and that both entities use Incorp Services, Inc. as their
registered agent in Nevada.  (*Id.* at ¶¶44, 45, 47).  Although Plaintiff represents only
himself and this is not a class action, many of his allegations refer to the "general

public," a general "consumer," or to Ohio residents at large.  For example, Plaintiff

alleges: "Between June 1 and August 24, 2012, the Federal Trade Commission

received 13,019 complaints from Ohioans alleging violations of 47 USC § 227(c) by

callers using Pacific Telecom telephone numbers."  (*Id.* at ¶12).

## I.    Analysis

### A.    Standard of Review

Defendants' motion seeks dismissal pursuant to Rule 12(b)(6), for failure to state

a claim upon which relief can be granted.  Under the relevant standard, dismissal is

required when a complaint offers no more than "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements," in violation of the

*Iqbal/Twombly* plausibility standards.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff's

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

The Court must accept all well-pleaded factual allegations as true but need not "accept

as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555

(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  While a complaint does not

need to contain "detailed factual allegations," it must provide "more than an unadorned,

the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 555). *See also Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012).

    **B.**    **The Grounds for the Accuardi Defendants' Motion**

        **1.**    **Plaintiff's TCPA and related Ohio Claims (Counts 1 and 2)**

Plaintiff's first two claims cite the Federal Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227, the related Ohio Telephone Solicitation Act, and the Ohio Telemarketing Act. Plaintiff's first claim seeks to hold the collective TMC Group (defined as Pacific Telecom, TMC [alone] and ITC) as "vicariously and/or contributorily" liable, alleging that they "assisted and facilitated" violations of the TCPA. (*See* Doc. 59 at ¶¶61, 65, 67). The TCPA authorizes a private right of action for two common types of telemarketing violations: prerecorded calls in violation of §227(b), and live calls made in violation of the do-not-call provision of §227(c). The latter provision specifically authorizes suit by a person who has "received more than one telephone call within any 12-month period by or **on behalf** of the same entity…." 47 U.S.C. §227(c)(5) (emphasis added). Although the jurisdiction over private TCPA claims "has been the subject of much debate" in federal courts, the Sixth Circuit has sided in favor of the exercise of federal question jurisdiction, where there is no independent basis for jurisdiction under the diversity statute. *See Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011).

        **a.**    **Vicarious/Contributory Liability of Defendants Under Federal Law**

Defendants' primary basis for dismissal of Plaintiff's TCPA claims rests on Declaratory Ruling 13-54, 28 F.C.C.R. 6574, 2013 WL 1934349 (April 17, 2013), in which the Federal Communications Commission ("FCC") addressed the issue of vicarious and/or contributory liability under the TCPA within the framework of two

underlying cases. The cases involved plaintiffs who had filed suit against sellers EchoStar and the DISH Network, who either used independent contractors to place telemarketing calls to their customer lists, or who used authorized dealers to sell products. In both cases, the plaintiffs asserted vicarious liability against the sellers based upon calls by the third party agents/dealers, who the plaintiffs alleged were acting "on behalf of" the sellers. The plaintiffs sought to impose vicarious liability under both 47 U.S.C. §227(b) and §227(c) for the third-party telemarketer calls.

The FCC first pointed out that the TCPA makes it unlawful for any person to "initiate" any telephone call or telephone solicitation, but that neither the statute nor FCC rules define the term "initiate." FCC 13-54 at ¶26. The FCC flatly rejected an interpretation by the Attorneys General of four states (including Ohio), that urged an interpretation that any "involvement" by a seller in telemarketing calls by third parties would be equivalent to a telemarketer who "initiate[s]" a call. The FCC's interpretative comments on the definition of the term "initiate" resonate in the larger context of the case presented here:

> [The States'] reading is, in our view, too broad, for it would logically encompass a host of activities which have only a tenuous connection with the making of a telephone call, but which could be viewed as a 'but for' cause of such calls. Thus, for example, the mere fact that a company procures and sells a product does not mean that it initiates telephone calls that may be made by resellers retailing that product. Instead, the word "initiate" suggests a far more direct connection between a person or entity and the making of a call. We conclude that a person or entity "initiates" a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third party retailers, that merely have some role, however minor, in the causal chain that results in the making of a telephone call.

*Id.* at ¶26; *see also* ¶27 (further defining the telemarketer as the person that "*initiates*" a call, versus the seller "on whose behalf a [telemarketing] call or message *is initiated.*" (italics original).

On the other hand, the FCC agreed that, under both provisions of the TCPA, a seller may be held vicariously liable "on behalf of" telemarketers under traditional agency principles, including apparent authority and ratification. *Id.* at ¶28. The FCC reasoned that if it allowed "the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties [it] would leave consumers in many cases without an effective remedy for telemarketing intrusions." *Id.* at ¶37. Section 227(b)(3), which authorizes a private right of action for prerecorded calls, does not contain the identical "on behalf of" language that is contained in §227(c)(5). Nevertheless, the FCC determined that both statutory provisions should be interpreted in the same manner under the agency's existing rules and orders.

Defendants implicitly suggest that they do not meet the definition of a "seller" under the TCPA. However, it is unnecessary to reach that issue in light of a more persuasive and direct argument by Defendants. Specifically, Defendants assert that under FCC 13-54, they cannot be held vicariously liable because Plaintiff does not allege that Defendants had any form of agency relationship with the actual party or parties who placed the telemarketing calls. Similarly, Plaintiff has failed to plead a theory of apparent authority, or ratification of the telemarketers' allegedly illegal actions by Defendants. In fact, Plaintiff alleges the exact opposite – that Defendants deliberately turned a blind eye to the fact that the numbers that Defendants sold were being used by both domestic and foreign entities to place illegal telemarketing calls, that

Defendants knew or should have known of that practice, but ignored the illegal practice in order to further Defendants' own profits.  (*See, e.g.*, Doc. 59 at ¶2, alleging that Defendant TMC Group collectively "knows or consciously avoids knowing" about illegal telemarketing practices).

Defendants collectively argue that to impose liability under the facts alleged would be to "open Pandora's Box" and would be contrary to the agency principles established by FCC 13-54.  (Doc. 70 at 7).  Pacific Telecom adds that, as a public utility, it should not be held liable for the actions of a business using its services; otherwise, virtually every public utility could be held to the same over-broad potential liability to the extent that a business used its services for some illegal purpose. (*Id.*).

The undersigned agrees that the FCC's Declaratory Ruling clearly sets forth principles of vicarious liability that are incompatible with Plaintiff's theories of liability in this case.  For that reason, I recommend that Defendants' motion be granted, and that – with one exception - Plaintiff's TCPA claims be dismissed for failure to state a claim.

In his response, Plaintiff pulls from FCC 13-54 a handful of quotations to support his position. For example, in ¶32 of the Declaratory Ruling, the FCC states:  "[W]e leave open the possibility that we could interpret section 227(c) to provide a broader standard of vicarious liability for do-no-call violations…. Thus, it may well be that the Commission could ultimately decide that 'on behalf of' goes beyond agency principles."  But Plaintiff's reliance on this and like quotations cited in his opposing memorandum is misguided. The referenced quote addresses a partial dissent to the Declaratory Ruling, and explains only that *if* the FCC wishes to expand vicarious liability beyond agency principles, it may do so "after notice and comment rulemaking."  *Id.*  For similar reasons,

Plaintiff's reliance on ¶37 of the Declaratory Ruling, which expresses general policy reasons for allowing *some* vicarious liability for the actions of third-party telemarketers, cannot be extended in the way that Plaintiff seeks.

Plaintiff advances several policy reasons for the expansion of liability to Defendants here. He argues that the Defendants end up profiting from and encouraging illegal telemarketing, because they share revenue and incentivize the number of calls made, without regard to whether the telemarketer's calls comply with the TCPA. Plaintiff claims that Defendants have permitted use of their services by foreign telemarketers, and should be held vicariously liable because otherwise Defendants will profit from the "undeterred unlawful acts" of the foreign telemarketers.  Plaintiff urges this Court not to "set a precedent that neither damages nor injunctive relief can be obtained against a company under the TCPA for assisting illegal telemarketing <u>even if the company directly knows that its services are being used for illegal telemarketing</u>." (Doc. 77 at 7, emphasis original).  Plaintiff contends that to rule in Defendants' favor "would render the TCPA unenforceable in practice," because a telemarketer could escape liability simply by moving their automated call systems offshore to a foreign country that does not recognize the TCPA, and then enlisting a "facilitating company to give them access to the U.S. telephone system."  (Doc. 77 at 9).

All of Plaintiff's policy-related arguments ignore the reality that this Court is not a legislative body, and that both Congress and the FCC already have carefully defined the parameters of vicarious liability under the statute itself, previously promulgated rules, and most recently, FCC 13-54.  *See also generally Charvat v. Echostar Satellite*, LLC,

630 F.3d 459, 465-66 and 468 (6th Cir. 2010)(referring the issue of vicarious liability under the TCPA to the FCC, under its statutory authority to interpret the Act).

Plaintiff's remaining arguments equally fail to persuade.  Plaintiff asserts that Pacific Telecom "does not operate like any ordinary CLEC," but rather, is a public utility that "acts as a private telephone company for Fred Accuardi," who is both Director of Pacific Telecom and "runs" ITC.  (Doc. 77 at 10).  However, Plaintiff admits that he can cite no authority that directly supports his position, which clearly seeks a significant expansion of contributory and/or vicarious liability well beyond the limits set forth in FCC 13-54.  (*See* Doc. 77 at 8, "[t]his is a case of first impression in the Sixth [C]ircuit.").

Plaintiff alternatively argues that FCC 13-54 is distinguishable, because the Declaratory Ruling did not address "whether vicarious liability should apply to companies that knowingly assist or facilitate illegal telemarketing" as Plaintiff alleges in this case.  Rather than looking to the FCC's interpretive ruling of the TCPA, Plaintiff urges this Court instead to look to the Federal Trade Commission ("FTC"), which has promulgated a rule imposing liability for those involved in "assisting and facilitating" illegal telemarketing, through its Telemarketing Sales Rule ("TSR"). *See* 16 C.F.R. §310.3(b).  However, the referenced FTC rule was enacted through the regulatory authority of the Telemarketing and Consumer Fraud and Abuse Prevention Act, a separate statute from the TCPA.  *See* 15 U.S.C. §6101-6108.  Although a private person may file suit under that separate statute, several prerequisites to suit are required, including a notice requirement and $50,000 in actual damages that excludes punitive damages. *See generally* 15 U.S.C. §6104; *Azeltine v. Bank of America*, 2010 WL 6511710 (R&R filed Dec. 14, 2010), adopted at 2011 WL 1465462 (D. Ariz. April 18,

2011)(dismissing private right of action under 15 U.S.C. §6104 for violation of "assisting and facilitating" regulation because plaintiff did not allege actual damages in excess of $50,000). It is unlikely that Plaintiff could meet those prerequisites.[5] In any event, the statutory basis for the private right of action brought by Plaintiff is the TCPA, which has been interpreted in a manner contrary to Plaintiff's theory of vicarious liability by FCC 13.54.

While Plaintiff repeatedly contends that the basis for vicarious liability rests on the TCPA itself, a contention that the undersigned rejects, he also suggests that liability can rest on "the federal common law." (Doc. 77 at 11). Plaintiff draws an analogy to the reasoning used in *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), in which Napster was found liable for operating a file sharing service where many of the users shared copyrighted material. Like Napster, Plaintiff argues that the TMC Group "knew or had reason to know" of the illegal telemarketing activity, and "encouraged" that activity through the CNAM revenue-sharing program through which telemarketers shared in the revenues for making calls, regardless of whether those calls were legal. In *Napster*, the defendant was found liable on the basis that it had "the right and ability to supervise" and "to block infringers' access to a particular environment for any reason whatsoever," but instead "turn[ed] a blind eye to detectable acts of infringement for the sake of profit." *Id.* at 1023. So too, Plaintiff argues that the TMC Group could have terminated the various telemarketers' participation in the CNAM revenue-sharing

---

[5]Moreover, as Defendants are quick to point out, the FTC has no jurisdiction over common carriers such as a CLEC like Pacific Telecom. Plaintiff also has failed to allege the kind of "substantial assistance or support to any …telemarketer" that would constitute a violation of the FTC rule.

program once Defendants were put on notice that the telemarketers were engaged in illegal telemarketing.  (Doc. 77 at 9).

The undersigned does not agree that Plaintiff has stated a claim under a federal "common law" theory, whether construed with or outside of the statutory provisions of the TCPA.  Although an interesting argument, *Napster* is easily distinguished.  That case did not involve a broad type of common law "contributory liability," but instead reviewed a distinct claim of contributory copyright infringement.

Aside from the fact that it involved an entirely different statutory scheme (that has not been interpreted contrary to Plaintiff's theory), in *Napster*, the service provider was held to be vicariously liable for its user's activity based its "actual knowledge" of the infringement.  *Id.* at 1022.  The *Napster* court explained that "a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material. *…* To enjoin simply because a computer network allows for infringing use would, in our opinion, …potentially restrict activity unrelated to infringing use." *Id.* at 1021.  Comparatively, in this case Plaintiff seeks to hold Defendants liable precisely because the "structure of the system" theoretically allows telemarketers to engage in illegal activity.  Apart from ¶34, Plaintiff generally alleges not that Defendants directly engaged in telemarketing, but instead that Defendant TMC alone provides a CNAM-MS system that "allows" its clients control over the caller ID name displayed.

Only in paragraph 34 of his third amended complaint does Plaintiff allege an alternative theory involving TMC alone.  Specifically, Plaintiff alleges that "TMC [alone] **either** originated the telemarketing calls that I received in which 508-475-1352 and 508-

475-1394 appeared on my Caller ID device, **or** they provided substantial assistance and support to the telemarketer who originated those calls knowing that the telemarketer was engaged in acts or practices that violate the Telephone Consumer Protection Act and rules promulgated thereunder." (*Id.* at 34, emphasis added).

To the extent that Plaintiff is alleging that TMC alone actually *originated* telemarketing calls from two telephone numbers, Plaintiff is correct in arguing that he has adequately pleaded a TCPA violation against that single Defendant. This is not vicarious liability, but instead direct liability under the TCPA, because TMC alone is accused of initiating a call as a telemarketer itself. More specifically, the undersigned concludes that paragraphs 22, 32, and 34 of the third amended complaint, construed liberally, allege that TMC alone may have "originated" two calls received by Plaintiff between September 2011 and January 2013 in which Plaintiff received a pre-recorded message in violation of 47 U.S.C. §227(b).

### b. Aiding and Abetting Liability

To the extent that Plaintiff's allegations of TMC Group's role in "assisting and facilitating" are construed as a separate "aiding and abetting" claim, Plaintiff fails to state a claim under either Ohio or federal law. "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). Moreover, Congress has never created a general "aiding and abetting" cause of action in the civil context; such liability must instead be determined on "a statute-by-statute basis." *Id.* at 182; *see also*

*Baltimore-Washington Tel. Co. v. Hot Leads Co.*, 584 F. Supp.2d 736, 738 (D. Md. 2008) (declining to imply expanded liability under the TCPA for "aiding and abetting").

### c. Joint Enterprise Liability

As a final basis for liability, Plaintiff alleges that Defendants should be held jointly liable for the TCPA and related Ohio statutory violations because they were engaged in a "joint enterprise."   Defendants seek dismissal as a matter of law on grounds that Plaintiff has failed to plead the essential elements of joint enterprise liability.

In his response, Plaintiff clarifies that he is seeking joint enterprise liability only as to the three entity Defendants described as the TMC Group.  (Doc. 77 at 18).  Plaintiff argues that he has included sufficient allegations in the complaint to avoid dismissal of the joint enterprise theory, since he has alleged that Pacific Telecom supplies telephone numbers to ITC, and that ITC passes on those numbers to telemarketers.  Defendants admit that ITC supplied numbers to TMC alone.  Plaintiff has also included allegations concerning the corporate interrelationships.  (Doc. 59 at ¶¶43-45, 66, 69).

Plaintiff's response in opposition further suggests that the allegations in his complaint could be interpreted as stating a theory, distinct from joint enterprise liability, for liability for "persons acting in concert" under the Restatement (Second) of Torts §876(a).  Defendants protest that Plaintiff should not be permitted to further "amend" his complaint or argue for the inclusion of yet another new cause of action in response to their motion to dismiss.

The undersigned agrees that further amendment of this theory should not be permitted, and recommends dismissal of any "joint enterprise" claim asserted against the three entities of the TMC Group.   Pacific Telecom and ITC cannot be held

vicariously or contributorily liable for alleged TCPA violations, for the reasons previously expressed.

### 2.  Related Ohio Statutes and the Ohio Consumer Sales Practices Act

Although Plaintiff's first two causes of action briefly reference related Ohio statutes, the focus is on the federal TCPA.  To the extent that Plaintiff intended to include a claim against the six Accuardi Defendants based upon the complaint's references to O.R.C. §109.87 and O.R.C. §4719 in Count 2 of the caption of his complaint, detailed in paragraphs 48 and 49 of that pleading, those claims should be dismissed.  O.R.C. §109.87 is the enabling statute for the Ohio Attorney General to bring claims under the federal Telemarketing Sales Rule, but provides for no private right of action.  O.R.C. §4719.15 does provide for a civil action, but only by a "purchaser injured by a violation of a provision of sections 4719.01 to 4719.18…or a rule adopted under any provision of those sections," and only against "the telephone solicitor or salesperson who committed the violation." *Id.*  For the same reasons that Plaintiff fails to make a vicarious liability claim under the TCPA, his allegations fail to make out a claim against the six Accuardi Defendants under §4719.15.[6]

In the third cause of action listed in the caption of his third amended complaint, and as to which allegations begin on page 19 of that document, Plaintiff alleges that all "Defendants" are liable under Ohio's Consumer Sales Practices Act, ("CSPA") because the calls that Plaintiff has received are "deceptive, unfair, and unconscionable and violate Ohio Rev. Code §1345.02(A)."  (Doc. 59 at ¶71).  As the Accuardi Defendants

---

[6]Defendants further argue that under the express language of the statute, suit may be filed only in an Ohio "court of common pleas."  O.R.C. §4719(A).

point out, this Ohio CSPA claim does not include any specific allegations against them. On that basis, they seek dismissal for failure to state a claim. To the extent that Plaintiff intended to include them through his generic reference to all "Defendants," the Accuardi Defendants further contend that they are entitled to dismissal of this claim because they are not "suppliers" as defined under Ohio law, who are "engaged in the business of effecting or soliciting consumer transactions…." O.R.C. §1345.01(A).

In his tendered surreply, Plaintiff objects to the latter argument, suggesting that the issue of whether Defendants are "suppliers" under the CSPA is settled, either under a construed "law of the case" doctrine or a "judicial estoppel" theory. Plaintiff points out that Defendant's prior memorandum in opposition to his motion for summary judgment, the undersigned's prior R&R, and the Memorandum Opinion of the presiding district judge, all assumed without comment that Defendants were "suppliers" when Defendants attempted to settle Plaintiff's claims, in part, by invoking the "Supplier's Right to Cure" under the CSPA. Thus, not only is Defendants' current position that none of the six Defendants are "suppliers" within the meaning of the CSPA inconsistent with Defendants' own prior position in invoking the Right to Cure language, but it is arguably inconsistent with the prior decisions of this Court.

However, in light of the settlement context in which the issue was previously presented, and the lack of any direct analysis of the issue, the undersigned concludes that neither the doctrine of the law of the case nor judicial estoppel has application here.

> In light of the policies underpinning judicial estoppel, the rule can not be applied in a subsequent proceeding unless a party has successfully asserted an inconsistent position in a prior proceeding. *City of Kingsport v. Steel & Roof Structures, Inc.*, 500 F.2d at 620 (judicial estoppel applied only "where the party was successful in its initial reliance and tried to

> change positions in subsequent litigation"); *Konstantinidis v. Chen*, 626 F.2d at 939. *See also Wright, Miller & Cooper*, 18 Fed.Practice and Proc.Sec. 4477, p. 779. If the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted. *City of Kingsport*, 500 F.2d at 620; *Konstantinidis*, 626 F.2d at 939 ("a settlement neither requires nor implies any judicial endorsement of either parties claims or theories, and thus, a settlement does not provide the prior success necessary for judicial estoppel"). The requirement that the position be successfully asserted means that the party must have been successful in getting the first court to accept the position.[5] Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected; the perception that either the first or the second court was misled is not present. *Kingsport*, 500 F.2d at 620; *Konstantinidis v. Chen*, 626 F.2d at 939.

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982),

Here, the issue of whether the six Defendants could be considered "suppliers" under the CSPA has never before been directly presented or considered.  In reviewing Ohio case law on the issue, the undersigned concludes that the six Accuardi Defendants would not in fact be considered "suppliers" under Ohio law, at least for purposes of the telemarketing calls at issue.  *See, e.g., Charvat v. Farmers Ins. Columbus, Inc.*, 178 Ohio App.3d 118, 132-133, 897 N.E.2d 167 (2008)(holding that insurance company did not "effect" or solicit a call by a telemarketer, because any financial benefit that it may have obtained was "too far removed" from the actual solicitation to hold the insurer directly responsible).  If the six Accuardi Defendants could be considered "suppliers" of the telemarketing calls at issue here, then it is difficult to see how many other tangential businesses, who ostensibly benefit from providing other goods and services to the alleged telemarketers, would not also face liability, leading to absurd results.  For example, a manufacturer or seller of automated dialing equipment could be held liable, as could the seller of virtually any list of residential telephone

numbers, or the provider of any voice over internet service or even, for that matter, the internet service provider itself.

Of course, some of those results were explicitly considered and rejected by the Ohio legislature in the text of the CSPA itself. For example, a "publisher, broadcaster, printer or other person" who merely disseminates or reproduces material that someone else used to violate the CSPA, is not generally liable for the other's violation. O.R.C. §1345.12. In addition, as a public utility, Pacific Telecom is specifically excluded from the definition of "consumer transaction" under the CSPA. O.R.C. §1345.01(A). Transactions between attorneys and their clients (*i.e.*, F. Antone Accuardi) are also excluded from the definition of "consumer transactions.*" Id.; Burdge v. Kerasotes Showplace Theatres, L.L.C.,* 2006 WL 2535762 at *9 (Ohio Ct. App. 12th Dist. Sept. 5, 2006); *see also generally Ferron v. Zoomego, Inc.*, 2008 U.S. App. LEXIS 10341, 276 Fed. Appx. 473 (6th Cir. 2008)(text also available on Westlaw, affirming dismissal of claim for failure to adequately plead that each unsolicited email was a consumer transaction under the CSPA); *but contrast Ferron v. Metareward, Inc.*, 698 F. Supp.2d 992, 998-999 (S.D. Ohio 2010)(holding that plaintiff had sufficiently pleaded that unsolicited emails were consumer transactions, distinguishing *Zoomego*).

But even if a reviewing court would find that Defendants should be estopped from challenging their alleged role as "suppliers" under the CSPA based upon their prior position in this case, the undersigned alternatively concludes that Plaintiff has failed to state a CSPA claim against any of the Accuardi Defendants but for Defendant TMC alone. In his tendered surreply, Plaintiff argues that a violation of the FTC's Telemarketing Sales Rule that prohibits "assisting and facilitating" illegal telemarketing

practices, 16 C.F.R. §310.3, has already been established by several unpublished Ohio trial court decisions to constitute a "distinct and separate unfair and deceptive act in violation of the Ohio Consumer Sales Practices Act." Plaintiff urges this Court to adopt that extremely broad construction of the CSPA. *See, e.g., Burdge v. Satellite System Network, LLC*, Ohio Public Inspection File (PIF) #1002344 (Fairfield Mun. Ct. 2005); *see also State ex rel. DeWine v. Cimicato*, PIF #10003044, Franklin C.C.P. 2012; *State ex rel. DeWine v. Capital Payment Systems, LLC*, PIF 1003045, Franklin C.C.P. 2012.

Notwithstanding the existence of these few unpublished cases,[7] I find the reasoning of other case law to be more persuasive. First, in the case of *Charvat v. DFS Services, LLC,* another court in this district rejected a similar premise concerning the persuasive value (or lack thereof) of PIF trial court cases:

> According to Charvat, these unpublished opinions of Ohio's lower courts take on precedential value upon being placed in the OCSPA's "Public Inspection File" ("PIF") by Ohio's Attorney General. However, Charvat overstates the significance of a decision's placement in the PIF. Pursuant to § 1345.05 of the Ohio Revised Code, the Attorney General is directed to "[m]ake available for public inspection all ... judgments, including supporting opinions, by courts of this state ... determining that specific acts or practices violate section 1345.02, 1345.03, or 1345.03 of the Revised Code." Ohio Rev.Code § 1345.05(A)(3). The import of the Attorney General's placement of a decision in the PIF, which is not discretionary, is that statutory damages become available for deceptive acts or practices identified in the particular decisions. *See id.* § 1345.09(B).
>
> ….This Court is persuaded that the law in Ohio is that use of an unregistered, fictitious name, absent some allegation or showing that the use of the name is deceptive or intended to deceive, does not violate the OCSPA. Here, Charvat has made no allegation that the use of the term "Discover Card" constituted a deceptive act or practice. Accordingly, Charvat's fifth count is dismissed as to Americall.

---

[7]As Defendants point out in their response in opposition to Plaintiff's motion for leave to file the surreply, the trial court cases cited by Plaintiff also are distinguishable and/or unpersuasive for a variety of reasons. (*See generally* Doc. 88 at 8-9).

*Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 595-96 (S.D. Ohio 2011).  As in *Chavrat*, I do not find the placement of a few trial court cases in the PIF to be dispositive or even persuasive on the issue of whether an alleged violation of the TSR constitutes an automatic violation of Ohio's CSPA.

Instead, I conclude that the CSPA claims are entirely derivative of Plaintiff's primary TSPA claim.  *See, e.g., Taylor v. XRG, Inc.*, 2007 WL 1816142 at ¶¶36-37 (Ohio Ct. App. 10th Dist, June 21, 2007)(affirming summary judgment to a common carrier on a CSPA claim on grounds that judgment to the defendant was proper under the federal TCPA, reasoning that the plaintiff's stated CSPA claim was entirely "derivative of his claim under the TCPA.").  Thus, even if all six Accuardi Defendants are deemed to be "suppliers" based upon their prior litigation position, I would recommend dismissal of all Ohio CSPA claims as derivative of the TSPA claims against five of the six Accuardi Defendants.  The lone exception to the recommended dismissal would be the CSPA claim against Defendant TMC alone, based upon my prior conclusion that Plaintiff's TCPA claim against TMC alone survives.

Adding to this alternative rationale, I note that in a slightly different context, in *Ferron v. Echostar Satellite, LLC*, 410 Fed. Appx. 903, 908 (6th Cir., 2010), the Sixth Circuit rejected the plaintiff's argument that a business that merely stored advertisements that were alleged to violate the CSPA could itself be held liable for their dissemination by others, on grounds that the storage business had a "personal" financial interest because it was "paid a small fee each time a solicited customer" responded to the advertisements.  The Sixth Circuit pointed out that the argument was

"not only novel, but …[lacking] any basis in the text of the OCSPA or this or any other court's jurisprudence." *Id.* at 910.  The same can be said of Plaintiff's rationale for holding the six Accuardi Defendants vicariously liable under the CSPA in this case.

To reiterate, the undersigned recommends the dismissal of the Ohio CSPA claim against all six Accuardi Defendants based upon: (1) Plaintiff's failure to include any specific factual allegations against those Defendants relating to that claim; and (2) the undersigned's conclusion that those Defendants are not "suppliers," and are not estopped from raising that defense, in the context of this case.  To the extent that a reviewing court may disagree, the undersigned alternatively recommends dismissal of the Ohio CSPA claims against five of the six Accuardi Defendants, excepting the derivative claim against Defendant TMC alone.

### 3. Negligence Claim

In addition to his federal and state statutory claims, Plaintiff attempts to state a distinct "negligence" claim against the Accuardi Defendants.  (Doc. 59 at ¶¶75-77).  Plaintiff alleges that the three entities referred to as the TMC Group "were negligent in providing services and revenue-sharing plan to telemarketers and failing to take reasonable precautions to reduce the likelihood that their services would be used for illegal telemarketing." (*Id.* at ¶75).  Plaintiff further alleges that the revenue sharing program encourages illegal telemarketing, and that the services provided by the TMC Group increase illegal activity by allowing telemarketers "to display a false name on consumers' caller ID devices" and by providing telemarketers "numerous telephone numbers to call from, thereby allowing the telemarketer to circumvent technology available to consumers for blocking unwanted telemarketing calls."  (*Id.* at ¶¶76-77).

Plaintiff's "negligence" claim should be dismissed.  With the possible exception of TMC alone (as discussed above in relation to ¶34 of the third amended complaint), Defendants owed no clear legal duty under the TCPA.  In fact, Plaintiff's complaint alleges that Defendants "were negligent in providing services and revenue-sharing plan to *telemarketers*" rather than to Plaintiff. (*Id.* at ¶75, emphasis added).  The undersigned agrees with Defendants that Plaintiff fails to state a claim against them based on his failure to allege any facts that any of the six Defendants breached a duty owed to *Plaintiff*, and/or that such beach was the proximate cause of his injuries.

Plaintiff argues that his claim should survive, because the elements (duty, foreseeable plaintiff, breach, and proximate cause of damages) all can be inferred from more general allegations.  For example, he contends that the TSR, which forbids "assisting and facilitating" illegal telemarketing, was adopted into Ohio law through O.R.C. §109.87(B)(1). (*See also* Doc. 59 at ¶¶2, 61, alleging that Defendants violated "assisting and facilitating" rule embodied in §310.3 and injured Plaintiff's right to seclusion in his home.).  Therefore, Plaintiff suggests that "assisting or facilitating" illegal telemarketing in violation of the TSR constitutes not just negligence, but negligence per se.  He argues that the duty is owed to him as a member of all "foreseeable" plaintiffs - American citizens with residential telephone numbers - that Congress intended to protect through the TCPA.

Contrary to Plaintiff's argument, I do not find a theory of "negligence per se" to be supported by Ohio or federal law.  O.R.C. §109.87 does not authorize a private right of action for violations of §310.3, and the undersigned has previously explained why Defendants are not subject to vicarious and/or contributory liability under the TCPA,

absent any agency relationship with the telemarketers.  In addition, the Ohio Supreme Court has held generally that "the violation of an administrative rule does not constitute negligence per se," and the undersigned does not find Plaintiff's attempt to distinguish the violation of an FTC regulation from the violation of an Ohio administrative rule to be persuasive. *See Chambers v. St. Mary's School*, 82 Ohio St. 3d 563, 568 (1998).  While the *Chambers* court also held that the violation of an administrative rule still "may be admissible as evidence of negligence," the undersigned does not view Plaintiff's allegations here as sufficient to state even a generic negligence claim, in the absence of more specific factual allegations of a duty owed by each of the six Accuardi Defendants to Plaintiff.

As a variation on his negligence theory, Plaintiff argues that Defendants' conduct also violates a general duty under Ohio law not to use one's property in a manner that "injures the rights of others."  Ohio Jurisprudence 3d (2013), Negligence §15.  Plaintiff contends that Defendants' "property" is their telephone numbers, the CNAM-MS system, and the revenue generated to Defendants, and that Plaintiff has personally been injured by Defendants to the extent that the telemarketing calls invade "the peace and quiet of my home."  (Doc. 77 at 12).  Plaintiff argues that because he is within the class of persons (citizens with residential telephone numbers) that the TCPA and related Ohio laws are designed to protect, he is a foreseeable plaintiff.   On this point, Plaintiff also cites *Pavlides v. Niles Gun Show, Inc.*, 93 Ohio App.3d 46, 637 N.E.2d 404 (Ohio Ct. App. 5th Dist. 1994).  There, an appellate court overturned a trial court's grant of summary judgment to a gun show promoter, holding that a reasonable jury could conclude that the defendant "owed the general public…the duty of preventing

28

unsupervised minors' entrance into a gun show where unsecured firearms are displayed," in light of the plaintiffs' allegations that the defendant knew that firearms had been stolen from prior gun shows at the same location, and understood the risks of allowing unaccompanied minors into such shows.

Plaintiff contends that he has alleged proximate cause by alleging that the CNAM-MS program provided by the TMC Group "causes repeated, unwanted, illegal telemarking calls," and that the same program "increases the character and extent of the injury caused by the illegal telemarketing calls."  (Doc. 59 at ¶¶76-77).  Plaintiff maintains that Defendants should not be able to escape liability by arguing that the telemarketing calls still would have occurred, because Plaintiff has alleged that the Defendants' conduct "*increases* the number of illegal telemarketing calls" and amounts to assisting the telemarketers in evading technology that blocks unwanted calls.  (Doc. 77 at 14, emphasis added).  Plaintiff argues that the Defendants should be held liable because they failed to take "reasonable precautions to reduce the likelihood that their services would be used for illegal telemarketing."  (Doc. 59 at 75).

Contrary to Plaintiff's arguments, the undersigned does not find that the elements of negligence are properly inferred from the complaint.  Plaintiff's allegations are too lacking in factual content, and the relationship too attenuated in the undersigned's view, to state a negligence claim against all six Defendants.  *Accord Adler v. Vision Lab Telecommunications, Inc.*, 393 F. Supp.2d 35, 40-41 (D.C. 2005)(dismissing negligence claim that would arise only from TCPA and not from any duty recognized in the common law); *see also generally Luis v. Zang*, Civil Case Nos. 1:12-cv-629, 2013 WL 811816 (R&R filed March 5, 2013, recommending dismissal of all claims filed by *pro se* plaintiff

against manufacturer of software allegedly used to violate the Federal Wiretap Act and related state statutes; plaintiff did not allege that defendant had personal knowledge of intended illegal use of its product, or that manufacturer had agreement with person alleged to have directly violated Act).

### 4.   Nuisance and Invasion of Privacy Claims

In two separate paragraphs, Plaintiff appears to allege claims for both "invasion of privacy" and for "nuisance."  The entirety of the "invasion of privacy" claim states: "The persistent, unwanted telephone calls made by the telemarketer as described in ¶¶ 18-26 invaded my right to privacy by unreasonable intrusion into the solitude and seclusion of my home." (Doc. 59 at 72).  The entirety of the "nuisance" claim states: "The actions of the Defendants described in ¶¶18-26 are a nuisance which disturbs the physical senses and interferes with my lawful enjoyment of my home. This invasion of the lawful enjoyment of my home is intentional and unreasonable."  (Doc. 59 at ¶78).

It is not clear that the Accuardi Defendants are intended to be included in either claim, since the allegations of the referenced paragraphs only refer to a "telemarketer." In his response in opposition to Defendants' motion to dismiss, Plaintiff suggests that his claims for both "invasion of privacy" and for the alleged violation of the Ohio Consumer Sales Practices Act "can be extended" to the six Accuardi Defendants "because their negligence was a proximate cause for the telemarketing calls which violated the TCPA and OCSPA and which unreasonably intruded upon my right to privacy." (Doc. 77 at 15).  However, Plaintiff fails to cite any authority, and as discussed above, the undersigned concludes that the underlying negligence claim should be dismissed.  To the extent that Plaintiff's complaint could be construed to allege either

"invasion of privacy" or "nuisance" claims against the Accuardi Defendants, the undersigned agrees that those claims (along with the OCSPA claim previously discussed) also should be dismissed. No controlling Ohio law supports such claims, even if Plaintiff had more directly alleged actions by the six Accuardi Defendants that invaded his privacy.

Even considering paragraph 34 insofar as Plaintiff contends that TMC alone may have initiated (or "originated") pre-recorded calls, the allegations of paragraph 22 indicate that those calls did not number more than two over a sixteen month period. As a matter of law, that number would not constitute an invasion of privacy or a nuisance. *See also, e.g. Charvat v. DFS Services, LLC*, 891 F. Supp.2d 588 (2011)(dismissing claim that 67 telemarketing calls could amount to an invasion of privacy under Ohio law); *contrast Charvrat v. NMP, LLC*, 656 F.3d at 453 (holding that receipt of thirty calls after do-no-call request "could outrage or be highly offensive to a reasonable person," declining to dismiss invasion-of-privacy claim as a matter of law).

### 5. Personal Liability Claims

The three individual Defendants (the two Accuardis and Hamilton) argue that all claims against them are derivative of the claims against the TMC Group entities, and therefore should be dismissed for the same reasons. With one exception that relates to the allegation in paragraph 34 that TMC alone initiated a call in violation of the TCPA, I agree that Plaintiff's allegations fail to state a claim against any of the three individuals.

Defendants argue that dismissal is appropriate based partly upon the general principle that a corporation is a separate legal entity from its shareholders. In keeping with that principle, an officer may be held personally liable under the TCPA only if "he

had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp.2d 892, 898 (W.D. Tex. 2001). They reason that, at most, the complaint alleges that the three individual Defendants were "tangentially involved" in the TCPA violations.

Defendants further contend that although the third amended complaint alleges broadly that each individual was "actively involved in management" or "participated in tortious behavior," (Doc. 59 at ¶¶89, 91, 93), those allegations are conclusory and lacking in factual support. For example, Plaintiff alleges that F. Antone Accuardi served as legal counsel for the TMC Group, but fails to explain how he had any "direct, personal participation" in the alleged statutory violations, as opposed to the standard work of counsel in "approv[ing] many of the contracts and other legal documents." (Doc. 59 at ¶89). The undersigned agrees that Plaintiff's allegations against F. Antone Accuardi appear insufficient to state a claim against him personally for the TCPA violation allegedly committed by TMC alone. (See Doc. 59, ¶34).

Similarly, Plaintiff includes no allegations as to how Defendant Steve Hamilton was personally involved with day-to-day operations, or how he may have exercised control or managerial authority. Plaintiff notes that he alleged that Hamilton is listed as the sole officer for Pacific Telecom, and argues that as a "home-based business" under Nevada law, Hamilton must have personal knowledge of the fact that Pacific Telecom supplies numbers to some telemarketing customers for outbound calls. But for the same reasons that the undersigned has concluded that Pacific Telecom is entitled to dismissal

of all claims filed against it, so too is Hamilton entitled to dismissal of the Plaintiff's entirely derivative claims against him.

Nevertheless, a different result is obtained as to defendant Fred Accuardi, particularly when considering Plaintiff's claim that TMC alone may have "originated the telemarketing calls that I received." (Doc. 59 at ¶34). Plaintiff alleges that Fred Accuardi "has commingled his personal finances with those of Telephone Management Corporation," and that both TMC alone and ITC are "closely held businesses controlled by Fred Accuardi and his family," and are "an alter ego for Fred Accuardi and his family." (Doc. 59 at ¶¶88, 90). Despite the somewhat conclusory nature of these allegations of personal involvement in TMC's alleged telemarketing activities, the undersigned finds the allegations to be (barely) sufficient to state a theory of derivative personal liability against Defendant Fred Accuardi based upon Plaintiff's alleged TCPA claim against Defendant TMC alone.

### 6.  Claim for Injunctive Relief

Plaintiff argues that even if this Court dismisses all claims for monetary damages, the Court should permit his claim for injunctive relief to proceed, because that claim is expressly authorized by statute, citing 47 U.S.C. §227(b)(3) and (c)(5), as well as O.R.C. §1345.09. Moreover, Plaintiff argues that the TCPA and Ohio statutes do not bar injunctive relief under the facts presented. Based upon the above analysis, the undersigned recommends that Plaintiff's claims for injunctive relief be dismissed against ITC and Pacific Telecom, F. Antone Accuardi and Defendant Hamilton. Only Plaintiff's claims for injunctive relief against Defendant TMC alone and Defendant Fred Accuardi

should be permitted to proceed, to the extent that such relief may be authorized, together with monetary damages, for the TPCA violation(s) that he has alleged.

### III. Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT:**

1.     Defendants' motion to dismiss (Doc. 70) be **GRANTED IN PART and DENIED IN PART**;

2.  All claims against Defendants F. Antone Accuardi, Steve Hamilton, International Telephone Corporation, and Pacific Telecom Communications Group should be dismissed for failure to state a claim;

3.  All claims against Defendant Telephone Management Corporation and Defendant Fred Accuardi likewise should be dismissed, with the exception of Plaintiff's TCPA claims against both Defendants (Count 1) for both monetary damages and injunctive relief;

4.     Consistent with the recommendations contained above, the dismissal of Plaintiff's Ohio CSPA claims against all Defendants is recommended based upon the failure to include sufficient factual allegations against any Defendant for purposes of the CSPA claim, and because no Defendant falls within the definition of a "supplier" under the CSPA.  In the event that a reviewing court would disagree with that analysis and/or conclude that Defendants are estopped from denying that they are suppliers, the undersigned alternatively recommends that the CSPA claim proceed against Defendant Telephone Management Corporation alone.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VINCENT LUCAS,                                          Case No. 1:12-cv-630

            Plaintiff,                              Spiegel, J.
                                                       Bowman, M.J.

       v.

TELEMARKETER CALLING FROM (407) 476-5670
AND OTHER TELEPHONE NUMBERS, et al.,

           Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).