```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION
```

```
VINCENT LUCAS,                    :      No. 1:12-cv-00630
                                  :
      Plaintiff,                  :
                                  :
                                  :
      v.                          :      OPINION AND ORDER
                                  :
                                  :
TELEMARKETER CALLING FROM         :
(407) 476-5680 AND OTHER          :
TELEPHONE NUMBERS, et al.,        :
                                  :
      Defendants.                 :
```

This matter is before the Court on Plaintiff's Motion to Stay Defendants' Motion to Dismiss (doc. 115), Defendants F. Antone Accuardi, Fred Accuardi, Steve Hamilton, International Telephone Corporation, Pacific Telecom Communications Group, and Telephone Management Corporation, Inc. (hereinafter "Accuardi Defendants") memorandum in opposition (doc. 117) and Plaintiff's reply (doc. 118). For the reasons that follow, Plaintiff's motion is GRANTED.

   **I.   Background**

   It is essential to understand who the current Defendants are in this litigation and their alleged relationship to one another. The Accuardi Defendants consist of three corporate entities and three individuals. Plaintiff describes

1

International Telephone Company ("ITC") as a "shell company" organized in the country of Belize that does business in the United States under the name Pacific Telecom Communications Group (Third Amended Complaint ("TAC"), doc. 59 ¶¶ 1, 45). Pacific Telecom Communications Group ("PacTel") is a "competitive local exchange carrier" ("CLEC") that is registered with The Public Utilities Commission of Ohio and currently licensed in other states, including Montana and Washington (TAC, doc. 59 ¶¶ 28, 81; doc. 70 at 3). As a CLEC, PacTel serves as an alternative to the providers that were incumbent as of the date of the enactment of the Telecommunications Act of 1996, once known as the "Baby Bells." See Ohio Admin. Code 4901:1-7-01(C). In other words, PacTel competes with other "local" telephone companies for a consumer's residential landline subscription. Telephone Management Corporation, Inc. ("TMC") supplies telephone numbers to its various telemarketer clients from which they make solicitation calls, and, as part of the package, provides to them a "Caller ID Name Management Service" ("CNAM-MS").[1] Telemarketers are required to display a telephone number and name under the Federal Trade Commission's

---

[1] TMC's CNAM-MS portal allows its clients to specify any name they wish to be displayed on the caller ID feature to which a call recipient may have opted to subscribe through his or her provider.

2

Telephone Sales Rule, see 16 C.F.R. § 310.4(a)(8)[2]; subscription to a CNAM-MS such as TMC is apparently one method to achieve compliance. Plaintiff alleges that PacTel has assigned "thousands of telephone numbers" within its control to ITC (see, e.g., TAC, doc. 59 ¶¶ 2, 19, 30, 47, 69). In turn, ITC has "reassigned" them to (that is, permitted them to be used by) telemarketing companies such as Capital Solutions Group, S.A. (organized in Panama), All In One Service AIOS, LLC (a named Defendant)[3] and Edwin Adquilen Valbuena Jr., a Philippine business owner doing business with ITC as VICIdial (also a named Defendant)[4] (TAC, doc. 59 ¶¶ 19, 30, 35, 37-38).[5]

---

[2]One example of when a telemarketer commits an "abusive telemarketing act or practice"—and thus a Rule violation—occurs when there is a:

> Fail[ure] to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours.

16 C.F.R. § 310.4(a)(8) (emphasis added).

[3]Plaintiff's Motion for Default Judgment against All In One Service AIOS, LLC (doc. 87) is currently pending before the Magistrate Judge (see doc. 91 at 5 n.4).

[4]An Entry of Default against Edwin Adquilen Valbuena Jr. was entered by the Clerk on May 15, 2014 (doc. 108). To date,

3

Each time a provider "queries" a CNAM-MS database to retrieve caller ID information so that it can be displayed on a residential landline as required, it pays a business such as TMC a "dip" fee (TAC, doc. 59 ¶¶ 2-3, 10, 52; doc. 70 at 3). TMC then shares a portion of that fee with the client that made the telemarketing call (TAC, doc. 59 at 55). Dip fees are financed by the revenue collected from consumers via payment of their monthly residential telephone bills (TAC, doc. 59 ¶ 11).

We turn now to the identity, and ostensible connection between, the individual Defendants. Fred Accuardi is alleged to run ITC and be a director of PacTel and president of TMC (TAC, doc. 59 ¶¶ 43, 93). According to Plaintiff, he has commingled his personal finances with those of ITC and TMC (TAC, doc. 59 ¶88). Mr. Accuardi's son, F. Antone Accuardi, is legal counsel to all three entities (TAC, doc. 59 ¶ 46). Steve Hamilton is listed as the only officer of PacTel, serving as its president, secretary, treasurer and sole director (TAC, doc. 59 ¶ 84).

---

Plaintiff has not filed a Motion for Default Judgment against this Defendant.

[5] The Defendant against which default judgment has been rendered, Qall Cord Philippines Ltd. Co. (see doc. 52), was not supplied telephone numbers by PacTel, ITC or TMC. (TAC, doc. 59 ¶ 8.) Qall Cord was alleged to have placed ten calls to Plaintiff's residential line leaving two different pre-recorded messages on his answering machine (TAC, doc. 59 ¶¶ 18-19, 22, 27), as well as two additional calls in which no message was left (TAC, doc. 59 ¶¶ 20, 27).

4

Plaintiff claims that the conduct of all Defendants, including the Accuardi Defendants, constituted violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as well as the Ohio Telemarketing Act, the Ohio Telephone Solicitation Act, and the Ohio Consumer Sales Protection Act ("OCSPA"). He also sues under the common law tort theories of invasion of privacy, negligence and nuisance, and in this regard, maintains that individual Defendants Fred Accuardi, F. Antone Accuardi and Steve Hamilton are personally liable for the corporate actions of their alter egos, namely ITC and TMC in the case of the Messrs. Accuardi, and PacTel in the case of Mr. Hamilton.

The Accuardi Defendants filed a motion to dismiss all claims against them (see doc. 70). After briefing (see docs. 77, 80, 86), Magistrate Judge Stephanie K. Bowman issued a Report and Recommendation on March 20, 2014 (doc. 91). Relevant to the issue at hand are those portions of her report—that we now condense—with regard to Plaintiff's claims under two provisions of the TCPA. The first makes it unlawful for a person to "<u>initiate</u> any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[] . . . ." 47 U.S.C. § 227(b)(1)(B) (emphasis added). Under the second, by virtue of subsequent regulations,

5

telemarketers also are prohibited from making live calls to residential telephone numbers placed on the national do-not-call registry (see 47 C.F.R. § 64.1200(c)(2)), and any person who has "received more than one telephone call within any 12-month period by or on behalf of the same entity" may, in this circuit, bring suit in the district court under the auspices of federal-question jurisdiction. See 42 U.S.C. § 227(c)(5) (emphasis added); Charvat v. NMP, LLC, 656 F.3d 440, 446 (6th Cir. 2011) (citing Charvat v. EchoStar Satellite, LLC, 630 F.3d 459, 465 (6th Cir. 2010)). Plaintiff urges the Court to hold the corporate entities "vicariously and/or contributorily" liable on the theory that they "assisted and facilitated" the third-party telemarketers who "initiate[ed]" the improper calls to his landline. (See TAC, doc. 59 at ¶¶ 61, 65, 67.) The Accuardi Defendants seek dismissal on the basis of In re Dish Network, LLC, 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013) ("FCC 13-54"), a Declaratory Ruling that addressed whether sellers could be held liable for calls made by third-party telemarketers. Although the term "initiate" is not defined in the statute itself or in the agency's rules, the Federal Communications Commission ("FCC") rejected an interpretation that would have equated mere involvement with "initiat[ion.]" Id. ¶ 26. To this end, it noted "a clear distinction" between a call made by a seller itself and one made by a telemarketer on that seller's

6

behalf. That said, however, the FCC recognized that a seller and a telemarketer are sometimes one in the same, and that, in certain instances, a seller can exert so much control over a telemarketer as to make any distinction dissolve. Id. ¶ 27. But the FCC agreed that inclusion of the phrase "on behalf of" (appearing—but not defined—in Section 227(c)(5)) allowed for a seller to be held vicariously liable under traditional agency tenets, including "not only formal agency, but also principles of apparent authority and ratification." Id. ¶ 28.[6]

Against this backdrop, the Accuardi Defendants posit that they cannot be held vicariously liable because Plaintiff has not alleged a formal agency relationship between them and the telemarketers or pled a theory of either apparent authority or ratification. To the contrary, they highlight Plaintiff's premise that they turned a "blind eye" of sorts by consciously avoiding knowledge that the telephone numbers they assign are being used for illegal telemarketing (see TAC, doc. 59 ¶ 2). The Magistrate Judge agrees that FCC 13-54 establishes a standard of vicarious liability "incompatible" with Plaintiff's theory of his case (doc. 91 at 13). She rejected Plaintiff's reliance on what might appropriately be termed dicta, including

---

[6] Even though that same language does not appear in the provision authorizing a private right of action for prerecorded calls (see 47 U.S.C. § 227(b)(3)), the FCC indicated that both provisions should, in the absence of notice and comment rulemaking, be interpreted in like manner. FCC 13-54 ¶ 32.

7

but not limited to the FCC's remark that "it may well be that the Commission could ultimately decide that 'on behalf of' liability goes beyond agency principles[]" (id. (quoting FCC 13-54 at ¶ 32)). She also rejected his policy arguments, among them that a failure to expand liability to the Accuardi Defendants, and those like them, will serve only to encourage illegal telemarketing through a scheme of shared revenue, with said revenue increasing with every call made (id. at 14)). Accordingly, she has recommended that the Accuardi Defendants' motion to dismiss for failure to state a claim on a theory of vicarious liability be granted. However, the Magistrate Judge reads paragraph 34 (in conjunction with paragraphs 22 and 32) of the Third Amended Complaint to be an allegation of direct liability against TMC itself as the originator of two calls (from 508-475-1352 and 508-475-1394) received by Plaintiff. In this purported circumstance, TMC "initiated" and hence stands in the shoes of a telemarketer, thus exposing it to liability for the prerecorded message left on Plaintiff's answering machine under Section 227(b)(1)(B). Therefore, the Magistrate Judge recommends that this particular TCPA claim against TMC (and Defendant Fred Accuardi) remain (doc. 91 at 18, 33, 34). Defendants Fred Accuardi and TMC and Plaintiff have filed objections to the Report and Recommendation (see docs. 96 and 97, respectively). Further, Plaintiff has filed a memorandum in

8

opposition to Defendants Fred Accuardi and TMC's objection (doc. 102), to which they have replied (doc. 103).[7]

While the March 20, 2014 Report and Recommendation was pending before this Court, specifically on June 18, 2014, Plaintiff filed a notice with the Clerk advising that he had filed with the FCC a "Petition for Expedited Declaratory Ruling" asking the Commission to hold that "a person is vicariously or contributorily liable if that person provides substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates 47 U.S.C. § 227(b) or (c)[]" (see docs. 114 & 114-1 at i). He concomitantly filed the instant motion to stay (doc. 115), which is ripe for this Court's consideration. Thus we proceed.

**II. Discussion**

The instant motion asks not only for a stay, but also for a referral to the FCC—under the primary jurisdiction doctrine—of the question presented in Plaintiff's Petition. See Charvat v. EchoStar Satellite, LLC, 630 F.3d 459 (6th Cir. 2010). Such a referral is indicated when a ruling by the agency will advance

---

[7] In his Motion to Stay, Plaintiff advises that the objection filed by Defendants Fred Accuardi and TMC soon will be rendered moot because they have produced credible evidence that "someone other than TMC" originated the two calls described in paragraph 34 of the Third Amended Complaint (doc. 115 at 2). It appears, then, that he intends to abandon this allegation.

9

regulatory uniformity, or when the issue either falls within the agency's discretion or would benefit from technical or policy considerations within the agency's expertise. Id. at 466 (citations and quotations omitted). We agree—on all three counts—that this is such a case. The theory upon which Plaintiff proceeds appears to be one of first impression and wide-reaching consequence. In essence, he is asking this Court to read Sections 227(b) and (c) as if the language appearing within 16 C.F.R. § 310.03(b)[8] is implicit. We believe that the FCC, the principal agency dedicated to policing the telecommunications industry, is in the best position to opine first on this topic.

---

[8] **§ 310.3 Deceptive telemarketing acts or practices**.

. . . .

(b) Assisting and facilitating. It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 [**Abusive telemarketing acts or practices**.] of this Rule.

. . . .

16 C.F.R. § 310.3 (emphasis added). The Court recognizes that this rule was promulgated by the Federal Trade Commission, not the FCC, under the regulatory authority of the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101–6108, not the TCPA. However, there is a certain interplay and overlap between these statutes and the protection they are designed to effect.

10

Defendants' arguments to the contrary are unavailing. To state that the Commission already has ruled on this issue in FCC 13-54 is simply inaccurate. Plaintiff does not allege that the Accuardi Defendants are sellers. Nor do they present themselves as such. Rather, Plaintiff alleges that—like sellers—the Accuardi Defendants benefit financially from telemarketing calls, both legal <u>and</u> illegal, through the "dip" fees they collect. He further alleges that this financial benefit is not happenstance, but instead the product of an intentional abuse of the statutory scheme in place to protect consumers. Only through voluminous calling, he avers, will either party turn a substantial profit.

This issue plainly does not require the technical expertise of the Commission, but it very obviously presents a policy consideration of major proportion. Moreover, if the Sixth Circuit, the only circuit court of appeals by which we are bound, concluded—in <u>EchoStar</u>—that a referral was appropriate concerning the vicarious liability of sellers, it follows that it would make the same choice with regard to CNAM-MS providers and CLECs. We make no predictions whether, as Defendants intimate, the Commission will be more "sympathetic" to Plaintiff (<u>see</u> doc. 117 at 7-8). However, in advance of this Court ruling[9]

---

[9] The Accuardi Defendants are premature in stating that Plaintiff has been "unsuccessful" at the trial court level. Magistrate

11

on Defendants' motion to dismiss, we think it proper to "appeal" to the Commission's expertise so as to inform our opinion, but not bind our decision, on this question.

### III. Conclusion

For the reasons set forth above, the Court hereby **REFERS** the question presented in Plaintiff Vincent Lucas' Petition filed June 18, 2014 to the Federal Communications Commission for a Declaratory Ruling. Accordingly, Plaintiff's Motion to Stay Defendants' Motion to Dismiss (doc. 115) is hereby **GRANTED** and we will continue to **HOLD IN ABEYANCE** the March 20, 2014 Report and Recommendation of Magistrate Judge Stephanie K. Bowman (see doc. 116) concerning the Motion to Dismiss filed by Defendants F. Antone Accuardi, Fred Accuardi, Steve Hamilton, International Telephone Corporation, Pacific Telecom Communications Group, and Telephone Management Corporation, Inc. (doc. 70). The Court notes that the FCC's Consumer and Government Affairs Bureau already has released a Public Notice seeking comments on the Lucas Petition, having established August 8, 2014 as the deadline for comments and August 25, 2014 for reply comments. **THE COURT URGES THE FCC TO ACT PROMPTLY UPON THE CONCLUSION OF THE COMMENT PERIOD, AS THIS ISSUE HAS WIDESPREAD IMPLICATIONS.**

---

Judge Bowman has issued a thoughtful and detailed report in which she recommends that we grant the bulk of Defendants' motion to dismiss. This Court, however, has yet to accept, reject or modify her recommendation.

12

Finally, Plaintiff and the Accuardi Defendants are **ORDERED** to file with the Clerk a joint report describing the status of the Lucas Petition before the FCC on or before **January 5, 2015**, **and every one hundred twenty (120) days thereafter,** until a ruling is released.

    SO ORDERED.


Dated: August 5, 2014    s/S. Arthur Spiegel_____
                                        S. Arthur Spiegel
                                        United States Senior District Judge