IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VINCENT LUCAS, | : | Case No. 1:12CV630-SAS-SKB |
| Plaintiff, | : | Spiegel, J. |
| | : | Bowman, M.J. |
| | : | |
| v. | : | **DEFENDANTS, FRED ACCUARDI,** |
| PACIFIC TELECOM COMMUNICATIONS | : | **PACIFIC TELECOM COMM.** |
| GROUP, et al., | : | **CORP. AND TELEPHONE MGNT.** |
| Defendants. | : | **CORP.'S, REPLY TO PLAINTIFF'S** |
| | : | **MOTION FOR SANCTIONS** |

Defendants Fred Accuardi, Pacific Telecom Communications Corporation, and Telephone Management Corporation (hereinafter collectively "Defendants") move this court to deny every claim in Plaintiff's Motion for Sanctions.

## A. SUMMARY OF FACTS

Plaintiff's current claims against Defendants, if proven completely, are worth $7,600[1]. Defendants, at the outset of litigation, offered him $5,000 to settle the matter in its entirety[2]. Plaintiff refused this settlement offer. A $2,600 difference has resulted in Defendants incurring tens of thousands of dollars in legal fees to defend the matter.

Plaintiff's recent Motion for Sanctions[3] ("MFS") is an example of his vexatious litigation and the main reason Defendants have incurred thousands of dollars in legal bills arising from this matter. Plaintiff's MFS lacks merit and is a desperate attempt for money in excess of the $7,600 in damages he stands to win against Defendants.

---

[1] In Plaintiff's Third Amended Complaint he claims each call he received is two separate violations of the TCPA, valued at $1,500 per violation. Additionally, each call is four separate violations of the Ohio Consumer Sales Practices Act, valued at $200 per violation.
[2] *See* Notice of Right to Cure, Document No. 31.
[3] Document No. 122.

1

Plaintiff, in his MFS, argues (1) Defendants violated the July 11, 2013 Discovery Order, (2) Defendants purposely deleted information related to specific calls, and (3) Defendant Pacific Telecommunications Corporation ("PacTel") made a false subpoena response prior to litigation. All of Plaintiff's arguments lack merit.

Defendant Telephone Management Corporation ("TMC") is the successor to TM Caller ID ("TMCID"). TMCID was an Automatic Number Identifier ("ANI") sublessor. TMCID would lease ANI's from another provider and then sublease the ANI's in large numerical blocks to telemarketers[4]. TMCID's business model did not subject the company to any state or federal record retention requirements. However, TMCID would retain records for two years or until its ANI lease expired, whichever occurred first. If the ANI lease expired, the data associated therewith was destroyed[5].

Prior to being a party to this litigation, PacTel received a subpoena from Plaintiff[6]. The subpoena requested: "(1) The name of the individual, business or organization to which the telephone number was assigned on the dates shown in the table." The next question in Plaintiff's subpoena request states "for any entity specified in (1), the following information, <u>to the extent that your records contain this information</u>: […] (g) the names of all of the entity's owners, officers, employees or representatives that you know of." (Emphasis added). PacTel responded that some of the numbers were assigned to ITC[7]. However, PacTel did not have any documents responsive to question 2(g).

On May 28th, 2013, Plaintiff served his first set of discovery requests on Defendants Telephone Management Company ("TMC"), International Telecommunications Company

---

[4] *See* Nelson Affidavit, attached hereto as Exhibit A.
[5] *Id.*
[6] Exhibit O, attached to Plaintiff's MFS.
[7] Exhibit P, attached to Plaintiff's MFS.

("ITC") and Fred Accuradi ("Fred")[8]. In each of the discovery requests, Plaintiff asked the Defendants to identify the caller of specific Automatic Number Identifications ("ANI"), including the caller using (508)475-1352 and (508)-475-1394 (collectively "508 numbers"). All of the ANIs Plaintiff requested additional information in discovery were numbers he allegedly received illegal telemarketing calls from.

TMC, ITC, and Fred Accuardi responded to the discovery requests on June 27, 2013. In their responses the parties identified all of the ANI users at the relevant time, except the 508 numbers. Fred Accuardi's discovery response stated "Defendant has no record verifying what entity was assigned ANI's 508-475-1394 or 508-475-1352. A company, named Bayring, may have assigned these two ANI numbers to Fred Accuardi affiliated company. Defendant does not have contact information for Bayring[9]."

TMC, ITC, and Fred's discovery responses contained objections, but none of the objections related to producing the identity of the 508 Numbers. However, the objections resulted in a discovery telephone conference with Plaintiff, Defendants' counsel and Magistrate Bowman. As a result, Magistrate Bowman ordered the three Defendants "to amend and update responses to the Requests for Production of Documents Number 1-3 by July 31, 2013."

Defendants complied and provided supplemental discovery on July 12, 2013[10]. Fred's supplemental discovery stated again that "Defendant has no record verifying what entity was assigned ANI's 508-475-1394 or 508-475-1352." However, the response also clarifies that "These ANI's <u>may have been</u> assigned to the now defunct TM Caller ID, but all record of their assignment has been returned to the company which <u>may have</u> assigned the ANI." (Emphasis

---

[8] Exhibits B, C, and D, attached hereto.
[9] Exhibit E, attached hereto.
[10] *See* Fred Supplemental Response, attached hereto as Exhibit F.

3

added). Subsequently, Plaintiff amended his Complaint to include the names of the ANI users on October 31, 2013 to no longer name "Doe" Defendants[11].

On April 8, 2014, Defendants alerted Plaintiff to the fact that the 508 numbers may have been assigned to Sales Technology on the date he received a telephone call[12]. Plaintiff was provided an affidavit to this effect on or around June 12, 2014[13]. Plaintiff waited until August 19, 2014 to mention anything about the delay to Defendants, and he did so by filing this Motion for Sanctions, not by communicating with Defendants' counsel.

### B. LAW AND ARGUMENT

Most disputes regarding discovery are usually governed by Fed. R. Civ. Pro. 37. The rule specifically governs when a party fails to obey a discovery order. If a party fails to provide information or supplement its discovery, the party can be prohibited from using the information as evidence in the litigation "unless the failure was substantially justified or is harmless.[14]" The courts also have the authority to issue other monetary and non-monetary sanctions. The party the motion for sanctions is against "bears the burden of proving substantial justification or that the violation was harmless[15]." When the court is evaluating whether the violation is harmless, it should consider the importance of the information, the reason for the failure to disclose earlier and the prejudice to the party if the information is allowed[16]. Based on these considerations, all of Plaintiff's requests for sanctions should be denied.

---

[11] Third Amended Complaint, Document No. 59.
[12] Exhibit I, attached hereto.
[13] Nelson Affidavit, attached hereto as Exhibit J.
[14] Fed. R. Civ. 27 (C)(1).
[15] *Laukus v. Rio Brands, Inc.,* 2011 U.S. Dist. LEXIS 51001 (N.D. OH, 2011), *citing Roberts v. Galena of Va., Inc.*, 325 F. 3d 776 (6th Cir. 2002).
[16] *Id.*

4

    *I. Defendants Produced the Identity of the 508 Caller Pursuant to The Federal Rules of Civil Procedure.*

        *A. Defendants did not violate Magistrate Bowman's July 31, 2013 Discovery Order.*

In his MFS, Plaintiff claims that Defendants violated a Court Order and the Federal Rules of Civil Procedure because Defendants did not produce who the 508 numbers were assigned to in its initial discovery response or its supplemental discovery response. Magistrate Bowman's Order to supplement discovery by July 31, 2013 was directed at the discovery Defendants did not product due to an objection. Since the Defendants did not object to producing the 508 numbers user, the Order Plaintiff references in his Motion for Sanctions are unrelated[17].

Absent a Court Order, TMC must still comply with the Federal Rules of Civil Procedure. Plaintiff fails to read the discovery rules in their entirety. Fed. R. Civ. Pro. 26(e) requires parties to "supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." At the time TMC originally responded to discovery, TMC was unaware of what party, if any, the 508 numbers were assigned to with the information in its custody or control. Defendants' responses reflect this.

Once Plaintiff served discovery, TMC contacted the company that controls TMCID's server to gain access to TMCID's e-mails and other documents circa September, 2011. Once TMC had access to its server for September, 2011 it began searching its e-mails to ascertain the 508 company's identity. The search terms used by Defendant TMC in June and July of 2013 did not show any emails related to the 508 numbers[18]. In April, 2014, TMC tried using a new search

---

[17] MFS, Document No. 122 at 1
[18] *See* Exhibit A.

term which unearthed who the 508 numbers were likely assigned to[19]. Within a reasonable amount of time, Plaintiff was notified[20]. The delay in identifying the 508 numbers caller therefore was justified. Had Defendants been attempting to intentionally withhold responsive information, they would not have continued to search and ultimately notify Plaintiff. Producing the identity of who the 508 numbers may have been assigned to does not violate Magistrate Bowman's Order on July 31, 2013. Magistrate Bowman's order related to objections TMC, ITC and Fred had made in their original response to discovery and the three Defendants did not object to producing the identity of the 508 numbers' user.

> *B. Defendants did not cause any harm to Plaintiff by producing the identity of the 508 numbers in April 2014 as opposed to July, 2013.*

Plaintiff has not been damaged by the delay in production of discovery. Plaintiff's Complaints name "Doe" Defendants calling from specific telephone numbers[21]. Fed. R. Civ. P. 4(m) allows Plaintiff 120 days after the Complaint is filed to serve the Defendants or "if the plaintiff shows good cause for the failure [to serve defendant in 120 days], the court must extend the timer for service for an appropriate period." By naming unknown Defendants within the statute of limitations, Plaintiff preserved his claims against that party and had 120 days from the date of filing the complaint to serve Sales Technology. This would have required Plaintiff to serve the "Doe" Defendants by June 8, 2013[22], 120 days after filing his Second Amended Complaint. However, Defendants were not required to produce discovery until June 27th, 2013. Even if Defendants had included the identity of the 508 callers in their original discovery response, Plaintiff would have been outside the 120 time frame to serve the "Doe" defendants.

---

[19] *Id.*
[20] Exhibit I, attached hereto.
[21] In Plaintiff's Second Amended Complaint (Document No. 18) he still identifies the unknown Defendants as "telemarketers calling from (407)476-5680."
[22] Technically naming the "Doe" Defendants in the Third Amended Complaint falls outside the 120 day window for service of process. However, Defendants do not object to such service.

The Defendants were not required to respond to the initial discovery requests until 20 day after the time period to serve the Doe defendants had passed.

Moreover, Plaintiff's claim for damages is not ripe. Plaintiff claims that the statute of limitations has run out on any claims against Sales Technology. Yet, no claim has been brought against Sales Technology. No one, at this point in time, is arguing a statute of limitations defense. Plaintiff's argument is purely hypothetical. Without actually bringing a claim against Sales Technology and Sales Technology raising a statute of limitations defense, Plaintiff's argument is not ripe.

Plaintiff also makes a quick comment in his Motion that Defendants did not move to dismiss direct liability claims in its Second Motion to Dismiss. Defendants are unclear how that is relevant to producing information related to the 508 numbers. Regardless, Defendants are not obligated to move to dismiss every claim; a motion to dismiss can relate to one claim or all claims.

Defendant has not violated any court orders and Plaintiff has not been harmed. He can still move this Court for additional time to serve Sales Technology. He would likely have to prove good cause for not serving Sales Technology within a 120 days, and not reasonably receiving discovery until after the 120 days may be good cause. More importantly, Plaintiff cannot claim he has been harmed before he even attempts to bring a claim against Sales Technology. Without Plaintiff exhausting his resources, he cannot claim to be irreparably harmed.

## II. Defendants Did Not Cause Spoliation of Evidence.

### A. Requiring Defendants to Retain Records Indefinitely, under threat of litigation, creates an undue burden on Defendants.

Plaintiff waited 18 months after the alleged telephone calls to name TMC, ITC, PacTel, Fred, Antone Accuardi and Steve Hamilton as Defendants in this lawsuit. Yet Plaintiff claims that Defendants "should have known that the evidence may be relevant to future litigation[23]." Plaintiff theory is utterly flawed.

Plaintiff cites to *Zubulake v. USVA Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y 2003) to support his argument that TMC had a duty to retain all documents relevant to the 508 numbers. This case relates to a violation of Equal Employment Opportunity Act. The court stated the employer had a duty to preserve evidence once the employee filed a complaint with the Equal Employment Opportunity Commission. The court stated there may have been a duty to preserve documents earlier when the party "should have known the evidence was relevant to future litigation." The court found the duty to preserve may have been before the EEOC claim was filed because "almost everyone associated with Zubulake [employee] recognized the possibility that she might sue." Thus, the employer "should have known" litigation was forthcoming. In support of this, the employee presented evidence of the employer sending "attorney-client privileged" emails containing information about the employees firing distributed to a large number of other employees.

This case is not analogous to *Zubulake*, and Plaintiff makes no attempt to draw any such analogy. Plaintiff has not produced any evidence like that contemplated in *Zubulake*. Plaintiff did not inform TMC he would bring a claim. Though an employee of TMCID did process requests for do not call violations, doing so are not tantamount to being on notice of impending

---

[23] Motion for Sanctions Doc. No. 122 at 4, citing *John B. v. Goetz*, 531 F. 3d 388, 359 (6th Cir. 2008).

litigation[24]. Plaintiff has not pointed to any evidence that anyone at TMC recognized the possibility that Plaintiff may sue. Without any evidence that TMC was on notice that Plaintiff would sue, there is no duty to retain records.

Further, Defendants' businesses are not specifically regulated by a federal or state record retention requirement. Notwithstanding the lack of regulation, Plaintiff argues that Defendant TMC should keep all business records indefinitely because it may be evidence in future litigation. This places an undue burden on Defendants and all business to retain unnecessary documentation for fear of frivolous litigation sometime in the indefinite future. Just as Plaintiff argues that it is burdensome for him to quickly bring a claim against Defendant, it is even more burdensome to require Defendants to keep *all* records indefinitely under the threat of possible litigation. Defendant TMC had a set record retention policy that it followed; the data Plaintiff has requested was destroyed in compliance with TMC's record retention policy.

Plaintiff also cites *Stevenson v. Union Pac. R.R.,* 354 F.3d 739 in an effort to bolster his claim that TMC had a duty to preserve its documents. He also misinterprets the case. In *Stevenson*, the court specifically stated that "there is no showing here that Union Pacific knew that litigation was imminent when prior to any litigation, it destroyed track maintenance records from up to two years prior to the accident pursuant to its document retention policy[25]." The court found that there was no bad faith in destroying records relevant to litigation, even when such records have been used in prior litigation. This is akin to TMC. It was never put on notice of any potential litigation until it was served with this lawsuit. Like in *Stevenson*, Defendants cannot be expected to retain such documents indefinitely.

---

[24] Exhibit J.
[25] *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 749 (8th. Cir. 2004).

Plaintiff makes an argument that the documents he seeks were "destroyed just 21 days after" he received the first call[26]. However, Plaintiff does not cite to any evidence of when the documents were destroyed. This claim lacks evidentiary support and should be denied. If Plaintiff was so concerned about spoliation, he would have initiated this lawsuit against Defendants sooner than 18 months after he alleged received the telephone calls from the 508 numbers.[27] His spoliation argument is merely raised to further damage Defendants by way of increased attorney's fees.

Like in *Stevenson,* TMC did not know or have any reason to know of impending litigation when it followed its record retention policy and destroyed documents. Without some knowledge of impending litigation, TMC did not have any obligation to preserve data. Plaintiff's argument that TMC should have retained all data regarding do not call complaints indefinitely has no basis in law and is unduly burdensome on TMC. TMC should not be subject to sanctions for following its record retention policy.

> B. *Even If Plaintiff Can Prove Defendants Caused Spoliation, Plaintiff Has Not Suffered Any Damage From Any Alleged Spoliation of Evidence.*

Plaintiff's claim for damages resulting from spoliation of the evidence is speculative, at best. Plaintiff claims that "a lot of my time and this Court's time <u>will probably be wasted</u> by the spoliation <u>if</u> Sales Technology disputes whether they made the telephone calls, when the issue would not be disputed if TMC had not destroyed its database record[28]." As stated, before, Sales Technology is not even party to the lawsuit and has not been served with discovery. Plaintiff fails to recognize that he may be able to obtain information regarding the 508 calls directly from

---

[26] MFS at 7.
[27] Plaintiff also waited four months from the date PacTel responded to his subpoena request to name PacTel, TMC, ITC, Fred Accuradi, Antone Accuardi and Steve Hamilton as Defendants in this litigation.
[28] MFS at p. 8 (emphasis added).

Sales Technology or even Sales Technology's telephone provider. Plaintiff's failure to exhaust all possible avenues of information is not cause to issue sanctions against Defendants.

Plaintiff also argues that he will waste this Court's time by relying upon the "inferential evidence" Defendants produced regarding the 508 numbers[29]. Again, Plaintiff's argument is not yet ripe – it is purely hypothetical. Plaintiff has not actually brought a claim against Sales Technology. Nor has Plaintiff issued a subpoena for Sales Technology's records. Plaintiff, in bringing this Motion, is attempting to recover damages without putting in the effort to prove his case. By doing so, Plaintiff is wasting the Court's time. Plaintiff has failed to even *attempt* to use additional possible resources. Defendants should not be sanctioned because Plaintiff is too apathetic to continue pursuing this litigation, discovery, and subpoenas against new parties or non-parties.

Moreover, Plaintiff's potential damages arising out of the 508 numbers, currently against Defendants, is less than the settlement offer Defendants extended to Plaintiff at the outset of litigation. Plaintiff currently has a claim of two telephone calls allegedly made by Defendant TMC [30] in violation of the TCPA and Ohio CSPA. As alleged by Plaintiff, he is entitled to $3,000 per call under the TCPA and $800 per violation of the Ohio CSPA, equaling $3,800 per call or $7,600 for both calls from the 508 numbers[31]. Defendants originally offered Plaintiff $5,000 to settle this matter in its entirety[32]. Since this original offer, the amount the Defendants could be liable for has significantly decreased, while their attorney's fees have significantly increased.

---

[29] *Id.*
[30] Plaintiff's Third Amended Complaint alleges Defendant TMC originated the calls from the 508 numbers. While documents has been provided to Plaintiff to the contrary, Plaintiff has not modified his Complaint to include the new caller's identity.
[31] In Plaintiff's Third Amended Complaint he claims each call he received is two separate violations of the TCPA, valued at $1,500 per violation. Additionally, each call is four separate violations of the Ohio Consumer Sales Practices Act, valued at $200 per violation.
[32] Notice of Right to Cure, Document No. 31.

### III. PacTel Truthfully Responded to the Subpoena Request.

Plaintiff claims Defendant PacTel falsely responded to a subpoena prior to this litigation. The evidence Plaintiff relies on to make this argument is speculative, at best. Plaintiff states that PacTel, when issued a subpoena, did not provide information regarding the owners, officers, employees or representatives of Defendant ITC. To show that PacTel knew who the officers of ITC were, Plaintiff cites to another case where PacTel "admitted in its Answer […] that [Fred] Accuardi is CEO of Pacific Telecom and he and his wife own 75% of the shares of Pacific Telecom, and Accuardi is the beneficial owner of ITC. Since Accuardi is majority owner of both Pacific Telecom and ITC, Pacific Telecom's claim that its records and ESI contain not a single name of any owner, officer, employee or representative of ITC is completely implausible[33]."

Contrary to Plaintiff's argument, this is completely plausible. A Corporation, in order to retain its status as a corporation, must maintain separate corporate documents. Affiliated companies (those with shared ownership) are not required to keep documents of other affiliated company's corporate structure. When corporations co-mingle their records, the corporation opens itself to piercing of the corporate veil. PacTel, at the time it responded to the subpoena, did not have any documents showing who were the owners, officers, employees or representatives of ITC[34]. Plaintiff has not shown or alleged any actual evidence to the contrary – rather he has again speculated. Defendant PacTel should not be subject to sanctions due to Plaintiff's speculation.

Plaintiff claims that "[b]ecause Pacific Telecom did not produce the records requested in Par(2)(g) [of the subpoena], I had to expend substantial efforts to find out who operates ITC[35]." However, this statement is absurd. All Plaintiff did was issue a subpoena on GoDaddy.com.

---

[33] MFS at 9-10. Citing Answer filed in *Astrahan v. Pacific Telecom Communications Group.*, C.D. Cal. No. SACV 12-02184 JST, filed Feb. 6 2013.
[34] *See* Accuardi Affidavit, attached hereto as Exhibit K.
[35] MFS at 9.

This likely did not cause Plaintiff to exert "substantial efforts." This is especially true given the fact Plaintiff appears well seasoned in litigation, issuing subpoenas and discovery requests.

Plaintiff could have directly subpoenaed ITC. Plaintiff's subpoena request could also have asked for *information*, not documentation. Plaintiff's subpoena request specifically requested "the following information, to the extent that your records contain this information." This limited PacTel to respond with documents of which it had none; Defendant PacTel truthfully answered Plaintiff's subpoena as it was narrowly written.

### *IV. Defendants Discovery Responses Were Provided in Good Faith.*

TMC followed the Fed. Rules of Civil Procedure regarding discovery. As soon as TMC discovered relevant information, it provided the information to Plaintiff. Moreover, TMC continued efforts to search for relevant information responsive to discovery shoes its good faith effort to provide Plaintiff with every iota of relevant information.

Further, TMC retained its records pursuant to its record retention policy[36]. Defendant was unaware of any impending litigation which would require it to keep the documents longer than its record retention policy required. Any destruction of documents was done in a good faith effort by TMC to comply with its record retention policy.

### *V. Defendants Have Not Wasted This Court's Time.*

Defendants TMC, ITC, PacTel, Fred, F. Antone Accuardi and Steve Hamilton have not wasted this Court's time. The Defendants have discharged every duty imposed upon it under the Federal Rules of Civil Procedure. Defendants have produced all discovery in their control that was responsive to Plaintiff's discovery requests or pre-litigation subpoenas. Defendants should not be sanctioned due to Plaintiff's inability to request data from the appropriate party or properly phrase his requests.

---

[36] Exhibit A.

In Plaintiff's argument that Defendants are wasting this Court's time, he states that "[i]f the Defendants would have complied with Discovery, Valbuena, AIOS, and Sales Technology would have been added as defendants in the First or Second Amended Complaint." Defendants are confused by this argument. Defendants were not named as defendants until the Second Amended Complaint. Discovery cannot be issued to parties that are not named in the litigation. Therefore there is no way for Defendants to even comply with discovery prior to the Second Amended Complaint.

However, Plaintiff has wasted this Court's time by bringing this motion. As outline above, Plaintiff's allegations are utterly baseless. Plaintiff asserts that he is harmed, but the harm has yet to occur. More importantly, Plaintiff's motion is brought in bad faith, in an attempt to recover more than the $7,600 in potential damages against Defendants. As stated previously, Defendants at the outset of litigation offered Plaintiff $5,000 to settle the matter. However, he continues to file motion after motion in an effort to recover an additional $2,600. The court has likely put more than $2,600 in adjudicating this dispute. Thus, it is Plaintiff that is wasting this Court's time.

### VI. Plaintiff Has Not Suffered Any Harm.

As previously discuss, Plaintiff still arguably has the ability to bring a claim against Sales Technology for violations of the TCPA. Defendants have provided Plaintiff with all the contact information it has for Sales Technology, which Plaintiff can use for service of process. However, Plaintiff has not even attempted to serve a subpoena, let alone the Complaint, on Sales Technology. Without attempting to bring a claim against Sales Technology, Plaintiff has not suffered harm. Plaintiff is pontificating that he *might* be harmed *if* he brings a claim and fails. But, he has yet to bring a claim. Without bringing a claim against Sales Technology there is no

harm, and Plaintiff's argument is not yet ripe. Defendants should not be subject to sanctions for what *might* happen to Plaintiff.

### *VII. None Of Plaintiff's Cases Cited For Sanctions Directly Apply to This Case.*

Plaintiff spent nine pages citing how and why sanctions are appropriate. However, none of the cases Plaintiff relies upon directly apply to this case. The cases are distinguishable by the fact that the party never complied with a court order[37]; the party did not respond to interrogatories for 17, the court issued several warning and the party made several promises to comply but did not[38]; the party took steps to increase internal costs so it could not pay a judgment against it, yet made sure to pay every other creditor but the movant[39]; the party admitted to the court he willfully withheld information[40]; the party filed a number of meritless motions or pleadings[41]; the party violated multiple discovery orders[42];  the court did not actually decide whether to award sanctions[43]; the party destroyed documents after the employee brought an internal Equal Employment Opportunity claim coupled with a handwritten note to destroy the documents[44]; the party repeatedly failed to produce its expert witness to the other side for deposition[45]; counsel repeatedly failed to respond to the other party[46]; and the party attempted to re-litigate points of law decided against them and destroyed discoverable documents after litigation commenced[47].

---

[37] *Roadway Express, Inc. v. Piper*, 447 US 752 (1980).
[38] *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 US 639 (1976).
[39] *Electrical Workers Pension v. Gary's Elec.,* 340 F. 3d 373 (6th. Cir. 2003).
[40] *Chambers v. Nasco, Inc*., 501 U.S. 32 (1991).
[41] *Id*.; *General Environmental Science Corporation v. Horsfall*, 141 F.R.D. 443 (N.D. Ohio 1992); and *Stalley ex rel. U.S. v. Mountain States Health,* 644 F.3d 349 (6th Cir. 2011).
[42] *Youn v. Track, Inc.,* 324 F.3d 409 (6th. Cir. 2003); *US v. Conces*, 507 F. 3d 1028 (6th Cir. 2007); and *Manhattan Industries v. Sweater Bee by Banff, Ltd.*, 885 F. 2d 1 (2nd Cir. 1989).
[43] *Adkins v. Wolever*, 554 F. 3d 650 (6th Cir. 2009) and *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365 (Fed. Cir. 2002).
[44] *Capellupo v. FMC Corporation*, 126 F.R.D. 545 (D. Minn. 1989).
[45] *Taylor v. Medtronics, Inc.*, 861 F.2d 980 (6th Cir. 1988).
[46] *Harmon v. CSX Transportation, Inc.*, 110 F.3d (6th Cir. 1997).
[47] *General Environmental Science Corporation v. Horsfall*, 141 F.R.D. 443 (N.D. Ohio 1992).

Even using the facts as Plaintiff alleged in his MFS the cases he sites are distinguished. Plaintiff only claims Defendants violated a singular court order, destroyed evidence before litigation commenced, and responded falsely to a subpoena[48]. In all the cases Plaintiff cited that have similar alleged misconduct, the case either involved violating multiple court orders or destroying evidence after some sort of formal complaint has been brought against the party. Neither has occurred here.

TMC supplemented its discovery as required by the Federal Rules of Civil Procedure. TMC did not violate a court order as the July 31, 2013 Court Order did not apply to the 508 numbers. The Order applied to TMC's objections to discovery and TMC did not object to providing information related to the 508 numbers. TMC was not on notice that litigation may be forthcoming so it destroyed data pursuant to its record retention policy. This conduct does not violate any order, law or rule and is not ground for sanctions.

## C. CONCLUSION

Plaintiff's Motion for Sanctions only proves Defendants complied with the Federal Rules of Civil Procedure and supplemented their discovery as soon as new information was uncovered. Moreover, Plaintiff failed to prove, or even raise, any iota of harm that resulted in Defendants supplementing discovery, pursuant to the Rules. Given the complete lack of merit in Plaintiff's Motion, Defendants ask that the Court deny every claim in Plaintiff's Motion.

(signature to follow)

---

[48] In Plaintiff's sanctions section, he does not reference any case that issues sanctions for a false response to a subpoena.

Respectfully submitted,

*/s/ Helen Mac Murray*
Helen Mac Murray     (0038782)
Allison L. Harrison     (0086324)
Attorney for Defendants
Mac Murray, Petersen & Shuster, LLP
6530 West Campus Oval, Suite 210
New Albany, Ohio 43054
Telephone: (614) 939-9955
E-mail: hmacmurray@mpslawyers.com
E-mail: aharrison@mpslawyers.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served upon Plaintiff via the Court's electronic filing system on the 12th day of September, 2014.

By:  */s/ Helen Mac Murray*
Helen Mac Murray     (0038782)
Attorney at Law