IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| VINCENT LUCAS, : | Case No. 1:12CV630-TSB-SKB |
|     Plaintiff, : | Black, J. |
| : | Bowman, M.J. |
| v. : |  |
| : | **PLAINTIFF'S OBJECTIONS TO THE** |
| PACIFIC TELECOM COMMUNICATIONS : | **REPORT AND RECOMMENDATION** |
| GROUP, et al., : | **(DOC. 179) AND MEMORANDUM** |
|     Defendants. : | **ORDER (DOC. 178) OF THE** |
| : | **MAGISTRATE JUDGE** |
| : |  |

Objections to the Report and Recommendation (R&R)

1. The R&R should have recommended that Fred Accuardi be held in contempt of court for committing perjury by submitting an affidavit that he knew to be false.

2. The R&R should have recommended that Pacific Telecom Communications Group be held in contempt of court for its false subpoena response.

3. The R&R should have recommended that the Defendants be held in contempt of court for knowingly making other false statements to this Court, including, but not limited to

    a. "PacTel, at the time it responded to the subpoena, did not have any documents showing who were the owners, officers, employees or representatives of ITC." Defs.' Mem. Opp'n to Sanctions (Doc. 126) at 12.

    b. "It is entirely possible that '@inttelephone' could be a domain name of any other company, d/b/a, or group who abbreviate its name as 'inttelephone.'… The e-mails could have been written by Fred Accurdai [*sic*] on behalf of a different company. … PTCG does not now, nor did it at the time the subpoena was issued, have any documents responsive to the owners, officers or representatives of ITC. The e-mails from fred@inttelephone.com were not, to PTCG's knowledge, sent on behalf of ITC." Defs.' Surreply (Doc. 132) at 3-4.

    c. "The email that Plaintiff referenced was sent from Mr. Accuardi as manager of *ITC, LLC* [(a company incorporated in Wyoming)], not ITC (Belize). Therefore, the documents were

not responsive to Plaintiff's subpoena request, and PacTel's response was not false or incomplete. No documents truly exist related to ITC (Belize)—the company which was the subject of PacTel's subpoena response." Defs.' Objection to Mem. Order (Doc. 145) at 3-4.

      d. In furtherance of the false statement above, the Defendants deliberately misrepresented the name of a Wyoming company by calling it "International Telephone Company, LLC" in Doc. 145 at 3, when in truth, its name is "International Telephone, LLC".

4. The R&R should have recommended that the Defendants be held in contempt of court for failing to correct their false statements after I brought to their attention the falseness of their statements.

5. The R&R erred in failing to make findings of fact regarding whether the statements by Defendants described in Objections #1 to #3 were in fact false.

6. The R&R should have recommended entry of default judgment, or other dispositive sanctions, as a result of the Defendants' acts of contempt of court.

Objections to the Memorandum Order

7. The Memorandum Order clearly erred in not finding that the Defendants knowingly made false statements to this Court as described in #1 to #3 above. The Memorandum Order clearly erred in not imposing any sanctions against the Defendants for these false statements, and for the Defendants' refusal to correct their false statements.

"Defendants" refer to each of the six defendants represented by Helen Mac Murray in Docs. 132, 145, and 176.

        Respectfully submitted,

        s/ Vincent Lucas

        Vincent Lucas
        P.O. Box 272
        Amelia, OH 45102
        (513) 947-1695
        vincentlucaslegal@gmail.com
        Plaintiff

## Memorandum In Support

I. Standard of review

The Magistrate Judge correctly found that she had no authority to make a ruling on the motion for contempt or motion for dispositive sanctions. R&R at 1. Therefore, the District Judge must review <u>de novo</u> the R&R's recommendations regarding contempt and dispositive sanctions. Rule 72(b). "We note that Congress specifically withheld from magistrate judges jurisdiction over contempt proceedings. See 28 U.S.C. § 636(e)." *Bennett v. General Caster Service*, 976 F. 2d 995, 976 n.7 (6th Cir. 1992). The District Judge must decide <u>de novo</u> whether contempt occurred and what sanctions should be imposed for that contempt. He must also decide <u>de novo</u> whether dispositive sanctions should be imposed for any sanctionable, but non-contemptous acts. Only after making those determinations can the more deferential "clearly erroneous or contrary to the law" standard by applied to the Magistrate Judge's order regarding non-dispositive sanctions.

II. Summary of the Defendant companies

All of the Defendant companies are controlled by Fred Accuardi.

| Company | Fred Accuardi's role |
|---|---|
| Pacific Telecom Communications Group (PTCG) | <ul><li>CEO[1]</li><li>Fred Accuardi and his wife own 75% of the shares of PTCG[2]</li></ul> |
| International Telephone Corporation (ITC) | <ul><li>Beneficial owner[3]</li><li>Principal shareholder[4]</li><li>General manager[5]</li></ul> |
| Telephone Management Corporation d/b/a TM Caller ID[6] | <ul><li>Sole owner[7]</li><li>President[8]</li></ul> |

Telemarketers entered contracts with either ITC or TM Caller ID to use telephone numbers supplied by the Accuardi companies.[9] The telemarketers got paid "dip revenue" by the Telephone Mgmt. Corp. for using those telephone numbers.[10] PTCG supplied the telephone numbers to ITC or TM Caller ID, and those numbers were then leased to the telemarketers. PTCG is a Competitive Local Exchange Carrier.[11] A CLEC provides "telephone exchange service … for the purpose of originating or terminating telephone toll service ..." Ohio Admin. Code 4901:1-7-01(C),(J).

---

[1] Exhibit A ¶ 3
[2] Answer in *Astrahan v. Pacific Telecom Communications Group*, C.D. Cal. No. SACV 12-02184 JST (Doc. 122-18) ¶¶ 5,9
[3] *Id.*
[4] Accuardi Aff. in *Accuardi v. Frederick* (Doc. 147-9) ¶ 9.
[5] *Id.*; Exhibit A ¶ 3; Exhibit B at 3; contract between Echostar Systems and ITC (Doc. 147-7) at 6.
[6] TM Caller ID was a wholly-owned subsidiary of Telephone Management Corporation. TM Caller ID is no longer in operation
[7] Accuardi Aff. in *Accuardi v. Frederick* ¶ 12
[8] Exhibit A ¶ 3
[9] In each contract between the telemarketers and the Accuardi companies produced in discovery in this case, the Accuardi company was either ITC or TM Caller ID.
[10] "TMC is paid each time a teleservice provider "dips" or accesses its CNAM-MS database to pull caller ID information and push it onto the call recipient. [Third Am Compl.] at ¶¶ 3 & 55. TMC's clients are provided a portion of the "dip" fee for each telephone call it makes. *Id*. The revenue is paid by the teleservices provider each time it "dips." *Id*."" Defs.' Mot. Dismiss (Doc. 70) at 3.
[11] Defs.' Mot. Dismiss (Doc. 70) at 3

ITC is incorporated in Belize. In order to hide the identity of their telemarketer clients, the Accuardi companies kept secret the fact that ITC is owned and operated by Accuardi in the U.S.A. Pacific Telecom would tell investigators[12] that the telephone numbers were assigned to ITC, and that ITC is located in Belize, and that they do not know who owns or operates ITC. The purpose was to make it appear that the information about identity of the telemarketers is in a Belize business, outside of the subpoena power of the U.S. courts. A U.S. court has no power to enforce a subpoena in Belize, and so, it would appear to investigators that the telemarketers' identities cannot be discovered.

III. The R&R and Memorandum Order ignored false statements made to the Court by the Defendants

The R&R and Mem. Order made no findings of fact relevant to Objections #1 (Accuardi false affidavit), #3 (Defs.' other false statements), and #4 (failure to correct false statements). Regarding the allegation that PTCG's subpoena response was false (Objection #2), the only thing resembling a finding of fact is the statement "It is still not entirely clear what responsive 'documents' existed in 2012 in PacTel's possession." Mem. Order at 13. As shown below, the R&R ignored the relevant evidence.

---

[12] Reportedly, PTCG told this not just to me but also to law enforcement and investigators in other civil litigation. See Complaint in *FTC v. Carribean Cruise Line*, SD Fla. No. 0:15-cv-60423, *available at* https://www.ftc.gov/system/files/documents/cases/150303caribbeancruiselinecmpt.pdf, ¶¶ 16, 92, 110-112 ("In numerous instances, the TMC Enterprise refused to identify its clients in response to law enforcement subpoenas and civil investigative demands requiring the production of such information." ¶ 110); Hernando County Sheriff's Office Report (Doc. 122-19) at 11-12, noting that PTCG identified the ITC as the user of the telephone numbers (instead of the actual end user) and that PTCG, Hamilton, and Accuardi "appeared very evasive"; https://telemarketerspam.wordpress.com/2012/10/08/pacific-telecoms-robo-call-revenue-sharing-scheme-revealed/

A. Accuardi's false affidavit

Accuardi's affidavit is Exhibit A. I directly raised the false statements in the affidavit in Pl.'s Reply Mem. Supp. (1st) Mot. Sanctions (Doc. 128) at 1-4 and Pl.'s (2nd) Mot. Sanctions (Doc. 175) but the R&R and Memorandum Order do not even <u>mention</u> the affidavit.

The Affidavit ¶ 6 says "In October, 2012 Pacific Telecom Communications Group did not have any documents identifying who owned or operated the International Telephone Corporation." That is false. Accuardi's statement is directly contradicted by Exhibit B (Doc. 147-6), which is a contract between PTCG and ITC. The contract is dated September 15, 2011. It was produced by PTCG as discovery in litigation between Michael Wood and PTCG. The pages are numbered at the bottom right corner "PTCG00284" to "PTCG00287", with "PTCG" indicating that it is a document in the possession of PTCG. Page 3 of the contract was signed by Fred Accuardi as General Manager of ITC. This document clearly shows that Accuardi operates ITC. Accuardi certainly must have known about the existence of this contract when he signed his affidavit. Therefore, Accuardi knowingly made a material false statement in his affidavit.

Accuardi's affidavit is further contradicted by Accuardi's emails (Doc. 128-1) at 14-23. These emails are also documents in the possession of PTCG that show that Accuardi managed ITC. These emails were also produced by PTCG as discovery in the Wood litigation. Exhibit C is a copy of a few of those emails with highlighting added. The e-mails are from Fred Accuardi, in his capacity as Manager of International Telephone Corporation (ITC), to Steve Hamilton, in his capacity as an officer of Pacific Telecom. Exhibit C at 1 says

        **From:** Fred Accuardi <f.a@inttelephone.com>
   **Reply-To:** f.a@inttelephone.com
**Organization:** International Telephone Corporation
          **To:** Steve Hamilton <Steve@pacifictelecommunications.com>

6

This shows that the emails were sent to Steve Hamilton's Pacific Telecom e-mail account from Accuardi's ITC email account and shows that the organization on whose behalf Accuardi sent the email was "International Telephone Corporation". Numerous emails are signed

```
Fred Accuardi
Manager
```

indicating that Accuardi is manager of ITC. The emails are dated January 19, 2012 through May 2, 2012. In Exhibit D (Doc. 147-3), Accuardi <u>admits</u> that he sent these emails from his ITC email account and <u>admits</u> that these emails were in the possession, custody, or control of PTCG at the time when it responded to my subpoena. Accuardi certainly must have known at the time he signed his affidavit that he sent emails such as these, and therefore he knew that his affidavit is false.

B. PTCG's false subpoena response

The Accuardi's Aff. ¶ 4 says that Accuardi provided the PTCG's subpoena response.

Part (2)(g) of my subpoena (Doc. 122-15) required Pacific Telecom to produce any records in its possession, custody, or control (which includes electronically stored information (ESI)) which identify ITC's "owners, officers, employees or representatives". Pacific Telecom did not produce any such records regarding ITC. After Pacific Telecom sent its subpoena response, I sent them a follow up message specifically asking about written <u>legal agreements</u> that would be responsive to the subpoena. Exhibit E (Doc. 122-16) at 1-2.

> Lucas: Thank you for your reply. However, your response is incomplete. Part (2)(g) of the subpoena requires you to identify of all of the owners, officers, employees and representatives of International Telephone Corporation that you have record of. You have identified none. Given your close business relationship

7

> with ITC, surely you must know the names of some of its owners, officers, employees or representatives.
>
> PacTel: There are no responsive documents for your request with regard to Part(2)(g). I would suggest you contact the subscriber directly for that information.
>
> Lucas: So, are you saying that your company has entered an agreement with International Telephone Corporation allowing them to use several of your telephone numbers, but your company doesn't know the name of a single person at International Telephone Corporation? Who from ITC signs the legal agreements between your company and ITC? What name appears on the legal agreements as the person authorized to enter into the agreement on behalf of ITC?
>
> PacTel: [no response]

Exhibit B (the contract between PTCG and ITC) is exactly the type of document that I was referring to.

The evidence shows that the following documents were in the possession, custody, or control of PTCG and match the criteria of the affidavit because they identify Accuardi as a representative of ITC:  Exhibit B (the contract) and Exhibit C (the emails).  PTCG could have produced either of these documents in response to my subpoena.  In all likelihood, PTCG also had other electronically stored information containing the names of representatives of ITC, such as an email address book.  In lieu of producing the contract, the emails, and so forth, PTCG could have simply given me a list identifying the contact people at ITC.

In reality, PTCG had access to all of ITC's records.  Fred Accuardi controls PTCG and ITC, is majority owner of both companies, and personally provided PTCG's subpoena response. When Accuardi provided the subpoena response, he had access to all of ITC's records.  Rule 45 requires production of all documents in the possession, custody, or <u>control</u> of the respondent, and ITC's records were within the control of PTCG.  PTCG could access those records any time it wished.

8

C.  The Defendants' other false statements to this Court

The Defendants told one lie after another, each lie getting more far-fetched, in order to justify PTCG's false subpoena response.

1. "PacTel, at the time it responded to the subpoena, did not have any documents showing who were the owners, officers, employees or representatives of ITC"  Defs.' Mem. Opp'n to Sanctions (Doc. 126) at 12.

This is clearly contradicted by Exhibits B and C.

2. "It is entirely possible that '@inttelephone' could be a domain name of any other company, d/b/a, or group who abbreviate its name as 'inttelephone.'… The e-mails could have been written by Fred Accurdai [*sic*] on behalf of a different company. … PTCG does not now, nor did it at the time the subpoena was issued, have any documents responsive to the owners, officers or representatives of ITC. The e-mails from fred@inttelephone.com were not, to PTCG's knowledge, sent on behalf of ITC." Defs.' Surreply (Doc. 132) at 3-4.

When confronted with the emails, the Defendants continued to lie.  The **Organization** field in the emails, Exhibit C, clearly shows that the emails were sent on behalf of ITC.  In Exhibit D, Accuardi admits that the emails were sent from an ITC email account.[13]  To believe that PTCG did not know that the emails were sent on behalf of ITC, one would have to believe that Accuardi has a split personality psychosis in which his personality that acts as CEO of PTCG is completely ignorant of what his personality that acts as Manager of ITC knows.

3. "PTCG does not now, nor did it at the time the subpoena was issued, have any documents responsive to the owners, officers or representatives of ITC."  Defs.' Surreply (Doc. 132) at 3-4.

This is proven false by Exhibits B and C.  When confronted with the emails, the Defendants repeated their previous lie rather than correcting their error.

4. "Plaintiff has pointed to emails which *appear* to have been sent by Fred Accuardi in his capacity as Manager of ITC. However, what Plaintiff has failed to recognize is that ITC in Belize is a different corporation than International Telephone Corporation, LLC, a Wyoming company.

---

[13] The Defendants' Surreply refers to "fred@inttelephone.com".  This is likely a typo.  The email account in question is "f.a@inttelephone.com".  None of my documents refer to "fred@inttelephone.com".

The email that Plaintiff referenced was sent from Mr. Accuardi as manager of *ITC, LLC*, not ITC (Belize). Therefore, the documents were not responsive to Plaintiff's subpoena request, and PacTel's response was not false or incomplete. No documents truly exist related to ITC (Belize)—the company which was the subject of PacTel's subpoena response". Doc. 145 at 3-4 (footnote omitted).

After being forced to answer my requests for admission, the Defendants attempted to reconcile the emails (Ex. C) and their admissions (Ex. D) by claiming that the emails were sent on behalf of a similarly-named company incorporated in Wyoming. Once again, the evidence proves that this is a lie. The name of the Wyoming business is "International Telephone, LLC". "Corporation" does not appear in the name. Exhibit F (Doc. 147-4) at 1. LLC stands for "Limited Liability Company". *Id.* The Wyoming business is not a corporation. The business records on the Wyoming Secretary of State's website (https://wyobiz.wy.gov/business/filingsearch.aspx) show that International Telephone, LLC never underwent a name change and was never organized as a corporation. So, "International Telephone Corporation" is the name of the Belize business, while "International Telephone, LLC" is the name of the Wyoming business (emphasis added).

The evidence does not match the Defendants' new lie. So, in order to try to make it fit, the Defendants deliberately misrepresent the name of Wyoming business in Doc. 145, calling it "International Telephone Corporation, LLC", hoping that nobody would notice that they inserted "Corporation" into the name. This is not just a lie but an insult to the Court's intelligence and shows utter contempt for this Court. "International Telephone Corporation, LLC" doesn't even make any sense. A business cannot be both a corporation and a limited liability company. In fact, under Wyoming law, it is unlawful for an LLC to call itself by a name that implies that it is organized as a corporation. Wyoming Statutes 17-29-108: "In addition, the limited liability company name may not … [c]ontain a word or phrase which indicates or implies that it is

10

organized under the Wyoming Business Corporation Act, the Wyoming Statutory Close Corporation Supplement or the Nonprofit Corporation Act." The Defendants' argument that "International Telephone Corporation" refers to the Wyoming LLC contradicts the statute in two ways: the name of an LLC must contain "LLC" or similar phrase and must not contain the word "Corporation".

IV. The Defendants refused to correct their false statements

I repeatedly urged the Defendants to correct their false statements. See Docs. 133, 147-10, Doc. 175 at 3.[14] The Defendants refused. In each subsequent document, the Defendants continued to insist that their previous false statements were completely true and added more false statements to justify their previous false statements.

V. The behavior cited in Objections #1 - #4 are acts of contempt. Default judgment is the only appropriate sanction

The discovery process relies on the truthfulness of parties regarding the production of documents.

If the Defendants are willing to lie about the existence of documents which <u>merely identify the representatives</u> of a business — and submit a perjurious affidavit to back up their false discovery response, they are certainly willing to lie about every other discovery matter. Certainly they will lie about the existence of documents that might demonstrate that the

---

[14] The 2nd Mot. Sanctions was served on the Defendants 21 days before it was filed.

11

Defendants "knew or consciously avoided knowing" how their clients were using their services to violate the TCPA.  The Defendants' refusal to comply with discovery rules deprives me of the right to discovery needed to prove my case.  I cannot be expected to prepare for trial under these circumstances!  The Defendants have shown that they are unwilling to follow this Court's orders and do what they are required to do under the Rules of Civil Procedure in defending themselves.  The <u>only</u> appropriate sanction under these circumstances is a default judgment on all claims against the Defendants (plus a referral of the perjury charges to the Department of Justice).

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. …. But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. … [I]t might well be that <u>these</u> respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts. … [D]ismissal was appropriate in this case by reason of respondents' "flagrant bad faith" and their counsel's "callous disregard" of their responsibilities.

*National Hockey League v. Metropolitan Hockey Club, Inc*., 427 U.S. 639, 642-643 (1976) (per curiam).  *Accord, e.g., Harmon v. CSX Transportation, Inc*., 110 F. 3d 364 (6th Cir. 1997).

The requested relief is small in comparison to the maximum penalty for perjury: 5 years jail and $250,000 fine for an individual, $500,000 fine for an organization. 18 U.S.C. §§ 1621, 3559(a)(4), 3571(b)(3).

VI. The Memorandum Order was clearly erroneous

The contempt allegations and motion for dispositive sanctions must be reviewed de novo. However, even under the "clearly erroneous or contrary to law" standard -- applicable only to the non-dispositive sanctions -- the Memorandum Order is wrong. The Order's failure to find that the Defendants made the false statements, as alleged in Objections #1 - #3, is clearly erroneous. To the extent that the Order denied sanctions, that denial was premised on the clearly erroneous failure to make those factual findings. The Memorandum Order at 8 says "Plaintiff asserts that Fred Accuardi <u>and/or the 'Defendants' generally</u> committed perjury in their response." (emphasis added). This shows that the Magistrate Judge did not understand which statements I alleged to be "perjury". I alleged only that Accuardi's affidavit is perjury. See (2nd) Mot. Sanctions (Doc. 175) at 2, and Pl.'s Reply Mem. Supp. (1st) Mot. Sanctions (Doc. 128) at 2-4. The Defendants' other false statements – although acts of contempt – are not under oath and therefore are not perjury.

The Memorandum Order's failure to sanction PTCG is directly contradicted by the Magistrate Judge's previous Memorandum Order (Doc. 138 at 17-18) which said "The undersigned further concludes that PacTel should be sanctioned for its incomplete prior response to Plaintiff's subpoena." Which finding, if any, should deference be given to? The one that says PTCG should be sanctioned or the one that says the opposite. Based on the overwhelming evidence, the Magistrate Judge's previous conclusion that PTCG <u>should</u> be sanctioned was the correct one.

The failure to impose any sanction for the false affidavit and Defendants' other repeated lies regarding the subpoena response is an abuse of discretion and clearly erroneous[15] in light of

---

[15] The "clearly erroneous" standard is certainly not more deferential than the "abuse of discretion" standard under which an appellate court would review a decision regarding non-dispositive sanctions.

*National Hockey League v. Metropolitan Hockey Club, Inc*., 427 U.S. 639 (1976). The Memorandum Order sends the message to the Defendants – as well as "other parties to other lawsuits", 427 U.S. at 643 – that they might as well lie at will, because the court will impose no penalty even if they are caught in a lie. The Memorandum Order was correct in imposing a penalty for Defendants' failure to pay a previous sanction and repetition of frivolous arguments that were already soundly rejected by the Court. However, the deliberate lies to the Court are a more serious offense. Failure to pay sanctions and frivolous arguments can readily be detected by the Court, but lies to the Court might not ever be detected. "Perjured testimony 'is at war with justice' because it can cause a court to render a 'judgment not resting on truth.' Perjury undermines the function and province of the law and threatens the integrity of judgments that are the basis of the legal system." *U.S. v. Alvarez,* 567 U.S. ___, 132 S.Ct. 2537, 2546 (2012) (citations omitted). "Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative. * * * [O]ur cases have consistently—indeed without exception—allowed sanctions for false statements or perjury * * *" *U.S. v. Mandujano*, 425 U.S. 564, 576-7 (1976) (plurality opinion). Accuardi's Affidavit might not have ever been conclusively proven to be a lie if it were not for the Wood litigation.

<u>Conclusion</u>

The Court should sustain my objections, find the Defendants in contempt of court, and enter default judgment against them.

                                                                                   Respectfully submitted,
                                                                                   Vincent Lucas

CERTIFICATE OF SERVICE

    I certify that on Sept. 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Helen Mac Murray, who is counsel for defendants Telephone Management Corporation, International Telephone Corporation, Pacific Telecom Communications Group, Fred Accuardi, F. Antone Accuardi, and Steve Hamilton.

                                            s/ Vincent Lucas