UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VINCENT LUCAS, | : | Case No. 1:12-cv-630 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | Magistrate Judge Stephanie K. Bowman |
| vs. | : | |
| | : | |
| TELEMARKETER CALLING FROM | : | |
| (407) 476-5680 AND OTHER | : | |
| TELEPHONE NUMBERS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**DECISION AND ENTRY LIFTING STAY AND
ADOPTING THE REPORT AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE (Doc. 91)**

This case, which has been stayed since August 5, 2014 (Doc. 120), is currently before the Court regarding the United States magistrate judge's report and recommendation (Doc. 91) evaluating Defendants' motion to dismiss (Doc. 70).

## I. BACKGROUND

This case has a long and complex procedural history which is essential to evaluating the issues presently before the Court. The following excerpt from the Court's previous Order holding in abeyance the magistrate judge's report and recommendation outlines the proceedings to that point:

> It is essential to understand who the current Defendants are in this litigation and their alleged relationship to one another. The Accuardi Defendants consist of three corporate entities and three individuals. Plaintiff describes International Telephone Company ("ITC") as a "shell company" organized in the country of Belize that does business in the United States under the name Pacific Telecom Communications Group

1

(Third Amended Complaint ("TAC"), Doc. 59 ¶¶ 1, 45). Pacific Telecom Communications Group ("PacTel") is a "competitive local exchange carrier" ("CLEC") that is registered with The Public Utilities Commission of Ohio and currently licensed in other states, including Montana and Washington (TAC, Doc. 59 ¶¶ 28, 81; Doc. 70 at 3). As a CLEC, PacTel serves as an alternative to the providers that were incumbent as of the date of the enactment of the Telecommunications Act of 1996, once known as the "Baby Bells." See Ohio Admin. Code 4901:1-7-01(C). In other words, PacTel competes with other "local" telephone companies for a consumer's residential landline subscription. Telephone Management Corporation, Inc. ("TMC") supplies telephone numbers to its various telemarketer clients from which they make solicitation calls, and, as part of the package, provides to them a "Caller ID Name Management Service" ("CNAM-MS").[1] Telemarketers are required to display a telephone number and name under the Federal Trade Commission's Telephone Sales Rule, see 16 C.F.R. § 310.4(a)(8)[2]; subscription to a CNAM-MS such as TMC is apparently one method to achieve compliance. Plaintiff alleges that PacTel has assigned "thousands of telephone numbers" within its control to ITC (see, e.g., TAC, Doc. 59 ¶¶ 2, 19, 30, 47, 69). In turn, ITC has "reassigned" them to (that is, permitted them to be used by) telemarketing companies such as Capital Solutions Group, S.A. (organized in Panama), All In One Service AIOS, LLC (a named Defendant) and Edwin Adquilen Valbuena Jr., a Philippine business owner doing business with ITC as VICIdial (also a named Defendant) (TAC, Doc. 59 ¶¶ 19, 30, 35, 37-38).[3]

---

[1] TMC's CNAM-MS portal allows its clients to specify any name they wish to be displayed on the caller ID feature to which a call recipient may have opted to subscribe through his or her provider.

[2] One example of when a telemarketer commits an "abusive telemarketing act or practice"—and thus a Rule violation—occurs when there is a: Fail[ure] to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours. 16 C.F.R. § 310.4(a)(8) (emphasis added).

[3] The Defendant against which default judgment has been rendered, Qall Cord Philippines Ltd. Co. (see doc. 52), was not supplied telephone numbers by PacTel, ITC or TMC. (TAC, doc. 59 ¶ 8.) Qall Cord was alleged to have placed ten calls to Plaintiff's residential line leaving two different pre-recorded messages on his answering machine (TAC, Doc. 59 ¶¶ 18-19, 22, 27), as well as two additional calls in which no message was left (TAC, Doc. 59 ¶¶ 20, 27).

Each time a provider "queries" a CNAM-MS database to retrieve caller ID information so that it can be displayed on a residential landline as required, it pays a business such as TMC a "dip" fee (TAC, Doc. 59 ¶¶ 2-3, 10, 52; Doc. 70 at 3). TMC then shares a portion of that fee with the client that made the telemarketing call (TAC, Doc. 59 at 55). Dip fees are financed by the revenue collected from consumers via payment of their monthly residential telephone bills (TAC, Doc. 59 ¶ 11).

We turn now to the identity, and ostensible connection between, the individual Defendants. Fred Accuardi is alleged to run ITC and be a director of PacTel and president of TMC (TAC, Doc. 59 ¶¶ 43, 93). According to Plaintiff, he has commingled his personal finances with those of ITC and TMC (TAC, Doc. 59 ¶88). Mr. Accuardi's son, F. Antone Accuardi, is legal counsel to all three entities (TAC, Doc. 59 ¶ 46). Steve Hamilton is listed as the only officer of PacTel, serving as its president, secretary, treasurer and sole director (TAC, Doc. 59 ¶ 84).

Plaintiff claims that the conduct of all Defendants, including the Accuardi Defendants, constituted violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as well as the Ohio Telemarketing Act, the Ohio Telephone Solicitation Act, and the Ohio Consumer Sales Protection Act ("OCSPA"). He also sues under the common law tort theories of invasion of privacy, negligence and nuisance, and in this regard, maintains that individual Defendants Fred Accuardi, F. Antone Accuardi and Steve Hamilton are personally liable for the corporate actions of their alter egos, namely ITC and TMC in the case of the Messrs. Accuardi, and PacTel in the case of Mr. Hamilton.

The Accuardi Defendants filed a motion to dismiss all claims against them (*see* Doc. 70). After briefing (*see* Docs. 77, 80, 86), Magistrate Judge Stephanie K. Bowman issued a Report and Recommendation on March 20, 2014 (Doc. 91). Relevant to the issue at hand are those portions of her report—that we now condense—with regard to Plaintiff's claims under two provisions of the TCPA. The first makes it unlawful for a person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[] . . . ." 47 U.S.C. § 227(b)(1)(B) (emphasis added). Under the second, by virtue of subsequent regulations, telemarketers also are prohibited from making live calls to residential telephone numbers placed on the national do-not-call registry (see 47 C.F.R. § 64.1200(c)(2)), and any person who has "received more than one telephone call within any 12-month period by or on behalf of the same entity" may, in this circuit, bring suit in the district court under the auspices of federal question jurisdiction. See 42 U.S.C. § 227(c)(5) (emphasis added); *Charvat v. NMP, LLC*, 656

F.3d 440, 446 (6th Cir. 2011) (citing *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 465 (6th Cir. 2010)). Plaintiff urges the Court to hold the corporate entities "vicariously and/or contributorily" liable on the theory that they "assisted and facilitated" the third-party telemarketers who "initiate[ed]" the improper calls to his landline. (See TAC, Doc. 59 at ¶¶ 61, 65, 67.) The Accuardi Defendants seek dismissal on the basis of *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 2013 WL 1934349 (May 9, 2013) ("FCC 13-54"), a Declaratory Ruling that addressed whether sellers could be held liable for calls made by third-party telemarketers. Although the term "initiate" is not defined in the statute itself or in the agency's rules, the Federal Communications Commission ("FCC") rejected an interpretation that would have equated mere involvement with "initiat[ion.]" *Id.* ¶ 26. To this end, it noted "a clear distinction" between a call made by a seller itself and one made by a telemarketer on that seller's behalf. That said, however, the FCC recognized that a seller and a telemarketer are sometimes one in the same, and that, in certain instances, a seller can exert so much control over a telemarketer as to make any distinction dissolve. *Id.* ¶ 27. But the FCC agreed that inclusion of the phrase "on behalf of" (appearing—but not defined—in Section 227(c)(5)) allowed for a seller to be held vicariously liable under traditional agency tenets, including "not only formal agency, but also principles of apparent authority and ratification." *Id.* ¶ 28.[4]

Against this backdrop, the Accuardi Defendants posit that they cannot be held vicariously liable because Plaintiff has not alleged a formal agency relationship between them and the telemarketers or pled a theory of either apparent authority or ratification. To the contrary, they highlight Plaintiff's premise that they turned a "blind eye" of sorts by consciously avoiding knowledge that the telephone numbers they assign are being used for illegal telemarketing (*see* TAC, Doc. 59 ¶ 2). The Magistrate Judge agrees that FCC 13-54 establishes a standard of vicarious liability "incompatible" with Plaintiff's theory of his case (Doc. 91 at 13). She rejected Plaintiff's reliance on what might appropriately be termed dicta, including but not limited to the FCC's remark that "it may well be that the Commission could ultimately decide that 'on behalf of' liability goes beyond agency principles[]" (*Id.* (quoting FCC 13- 54 at ¶ 32)). She also rejected his policy arguments, among them that a failure to expand liability to the Accuardi Defendants, and those like them, will serve only to encourage illegal telemarketing through a scheme of shared revenue, with

---

[4] Even though that same language does not appear in the provision authorizing a private right of action for prerecorded calls (*see* 47 U.S.C. § 227(b)(3)), the FCC indicated that both provisions should, in the absence of notice and comment rulemaking, be interpreted in like manner. FCC 13-54 ¶ 32.

said revenue increasing with every call made (id. at 14)). Accordingly, she has recommended that the Accuardi Defendants' motion to dismiss for failure to state a claim on a theory of vicarious liability be granted. However, the Magistrate Judge reads paragraph 34 (in conjunction with paragraphs 22 and 32) of the Third Amended Complaint to be an allegation of direct liability against TMC itself as the originator of two calls (from 508-475-1352 and 508-475-1394) received by Plaintiff. In this purported circumstance, TMC "initiated" and hence stands in the shoes of a telemarketer, thus exposing it to liability for the prerecorded message left on Plaintiff's answering machine under Section 227(b)(1)(B). Therefore, the Magistrate Judge recommends that this particular TCPA claim against TMC (and Defendant Fred Accuardi) remain (Doc. 91 at 18, 33, 34). Defendants Fred Accuardi and TMC and Plaintiff have filed objections to the Report and Recommendation (*see* Docs. 96 and 97, respectively). Further, Plaintiff has filed a memorandum in opposition to Defendants Fred Accuardi and TMC's objection (Doc. 102), to which they have replied (Doc. 103).[5]

While the March 20, 2014 Report and Recommendation was pending before this Court, specifically on June 18, 2014, Plaintiff filed a notice with the Clerk advising that he had filed with the FCC a "Petition for Expedited Declaratory Ruling" asking the Commission to hold that "a person is vicariously or contributorily liable if that person provides substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates 47 U.S.C. § 227(b) or (c)[]" (*see* Docs. 114 & 114-1 at i). He concomitantly filed the instant motion to stay (Doc. 115)[.]

(Doc 120, at 1–9)[6].

On August 5, 2014, the Court granted Plaintiff's motion to stay and ordered that the magistrate judge's report and recommendations be held in abeyance pending the resolution of Plaintiff's petition to the FCC. (Doc. 120). The Court found that the

---

[5] In his Motion to Stay, Plaintiff advises that the objection filed by Defendants Fred Accuardi and TMC soon will be rendered moot because they have produced credible evidence that "someone other than TMC" originated the two calls described in paragraph 34 of the Third Amended Complaint (doc. 115 at 2). It appears, then, that he intends to abandon this allegation.

[6] Some footnotes were deleted, as they contained only outdated information about this case's procedural history.

question posed by Plaintiff's petition, while not requiring the technical expertise of the FCC, was an issue of both first impression and wide-reaching consequence. (*Id.* at 11). Accordingly, the Court determined that referral to the FCC under the primary jurisdiction doctrine was appropriate. (*Id.* at 9–10 (citing *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010))).

## II. ANALYSIS

### A. The stay in this case is lifted

Nearly three years have passed since Plaintiff filed his petition with the FCC. (*see* Doc. 114). The FCC made a request for public comments on the petition in July of 2014; since then, there has been no concrete action with regards to the petition. Plaintiff's most recent status report, filed April 26, 2017, indicates that the petition is still on the FCC's list of pending petitions and that there is no indication of when a ruling could be forthcoming. (Doc. 194).

The Court no longer feels that waiting indefinitely for the FCC's ruling on the petition is appropriate. After nearly three years with no end in sight, "the Court's obligation to provide a just, speedy, and efficient determination of this case weighs against the possible benefits of awaiting an FCC decision on the identified petitions." *Abrantes v. Northland Group, Inc.*, 2015 WL 1738255, at *3 (N.D. Cal. Apr. 13, 2015).

This is particularly true considering the Court's earlier determination that resolution of the question posed in Plaintiff's petition does not require the FCC's technical expertise. While this is a matter of first impression and wide-reaching consequence, and therefore an FCC ruling that would clarify the issue nationwide would

6

be beneficial, that ruling is nowhere in sight, and this Court is well equipped to engage in the statutory interpretation required to give the parties an answer to the question posed as applied to this case.

Defendant argues that the Court "cannot" adopt the report and recommendations due to the pending FCC petition, citing *Charvat*. The Court does not read *Charvat* to require that any issue that could be referred to the FCC under the doctrine of primary jurisdiction must invariably be deferred to the FCC without regard to timely disposition of the underlying case. The Sixth Circuit Court of Appeals in *Charvat* identified several factors to be considered by courts deciding whether to refer a matter based on primary jurisdiction: "A review of the case law shows that courts have considered referring matters to agencies for a variety of reasons: (1) to advance regulatory uniformity; (2) to answer a 'question ... within the agency's discretion'; and (3) to benefit from 'technical or policy considerations within the agency's ... expertise[.]'" *Charvat*, 630 F.3d at 466 (internal citations omitted). These factors all weighed in favor of referring Petitioner's question to the FCC in June 2014. However, the court in *Charvat* goes on to state that "[T]he outstanding feature of the doctrine [of primary jurisdiction] is . . . its flexibility permitting . . . courts to make a workable allocation of business between themselves and the agencies." *Id.* (quoting *Civil Aeronautics Bd. v. Modern Air Transp., Inc.,* 179 F.2d 622, 625 (2d Cir.1950)). It is hardly "workable" for the Court to accept Plaintiff's

premise that the Court is required to allow this case to languish in eternity should the FCC fail to ever rule on his petition.[7]

Other district courts have arrived at a similar conclusion and opted to rule on matters despite petitions filed by a party in their cases pending before the FCC. *See, e.g.*, *Shenah v. Wells Fargo Bank N.A.*, 56 F. Supp. 3d 1206 (N.D. Ala. 2014); *Abrantes v. Northland Group, Inc.*, 2915 WL 1738255 (N.D. Cali. Apr. 13, 2015); *Robinson v. Midland Funding, LLC*, 2011 WL 1434919 (S.D. Cali. Apr. 13, 2011). The Court considers this to be the best course of action here. While the Court acknowledges that ruling on an issue currently pending before the FCC could create a situation in which the FCC's ultimate decisions on the issues raised by the petition is contrary to the Court's decision, should that circumstance arise "the court will address whether that ruling has retroactive application and what level of deference is due." *Shenah*, 56 F. Supp. 3d at 1210 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Heimmermann v. First Union Mort. Corp.,* 305 F.3d 1257, 1260 (11th Cir.2002).

In summation, it was appropriate under *Charvat* for the Court to hold this case in abeyance in June 2014 to allow the FCC to rule on Plaintiff's petition. However, after

---

[7] The Court also notes that the circumstances surrounding the Sixth Circuit's decision in *Charvat* gave the circuit court much greater reason to believe that an answer to the relevant FCC petition was forthcoming than the Court has in this case. Prior to the issuance of the *Charvat* decision, the FCC had filed an amicus brief with the Sixth Circuit opining on some of the issues in that case and specifically requesting to the court that the matter be referred to the FCC under primary jurisdiction for a quick resolution. *Charvat*, 630 F.3d at 460. The FCC has shown no such interest in the relevant petition in this case. Other than making a request for public comment at the time the petition was filed, there is no indication that the FCC has considered Plaintiff's petition at all.

three years and no response, it is now appropriate for the Court to resume this case and adjudicate the motions currently pending.

### B. The magistrate judge's report and recommendation is adopted

As the stay on this case has now been lifted, this case is before the Court pursuant to the Order of General Reference in the United States District Court for the Southern District of Ohio Western Division to United States Magistrate Judge Stephanie K. Bowman. Pursuant to such reference, the Magistrate Judge reviewed the pleadings filed with this Court, and, on March 20, 2014, submitted a Report and Recommendations ("R&R"). (Doc. 91). Defendants Fred Accuardi and TMC filed objections to the R&R on April 7, 2014. (Doc. 96)[8]. Plaintiff also filed an objection to the R&R on April 7, 2014. (Doc. 97)[9].

---

[8] Defendants' objections are not well taken. Mr. Accuardi and TMC object to the R&R's recommendation that Plaintiff's TCPA claims for monetary and injunctive relief against them survive the motion to dismiss. The objections argue that Plaintiff's third amended complaint failed to state a claim for relief and failed to put the specific defendants on notice of the claims against them. The R&R adequately addressed this argument. Given the minimal pleading standards required to survive a motion to dismiss under Rule 12(b)(6), and the fact that Plaintiff is pro se, the Court agrees with the magistrate judge that a lenient review of the complaint for purposes of a motion to dismiss is appropriate.

[9] Plaintiff's objections are not well taken. In the absence of an FCC ruling on the issue presented in Plaintiff's petition, the Court agrees with the magistrate judge's conclusion that FCC Declaratory Ruling 13-54, while not directly addressing a situation in which an entity is alleged to provides substantial assistance or support to any seller or telemarketer while knowing or consciously avoiding knowing that the seller or telemarketer is violating the TCPA, "sets forth principles of vicarious liability that are incompatible with Plaintiff's theories of liability in this case." (Doc. 91, at 13). Defendant's arguments regarding his common law claims separate from the TCPA were adequately addressed in the R&R, and the Court fully adopts the magistrate judge's well-reasoned analysis.

Since the case was stayed, Petitioner raised a new argument with respect to Defendants' pending motion to dismiss that the Court feel should be addressed. Petitioner's recent response to the Court's Order to show cause regarding why this case should not be resumed cited a recent case

As required by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter. Upon consideration of the foregoing, the Court does determine that such R&R should be and is hereby **ADOPTED** in its entirety.

### III.  CONCLUSION

Accordingly, for the reasons stated above:

1) This stay previously imposed on this case (*see* Doc. 120) is **LIFTED**;

2) Defendants' motion to dismiss (Doc. 70) is **GRANTED IN PART and DENIED IN PART**;

3) All claims against Defendants F. Antone Accuardi, Steve Hamilton, International Telephone Corporation, and Pacific Telecom Communications Group are **DISMISSED** for failure to state a claim;

4) All claims against Defendant Telephone Management Corporation and Defendant Fred Accuardi are **DISMISSED**, with the exception of Plaintiff's TCPA claims against both Defendants (Count 1) for both monetary damages and injunctive relief.

**IT IS SO ORDERED.**

Date:  6/5/17

Timothy S. Black
United States District Judge

---

from the Northern District of Illinois in which the court held that a case could be brought against defendants in a similar position to the virtual telephone number provider defendants in this case on a theory of direct liability. *Spiegel v. EngageTel*, No. 1:15-cv-01809 (N.D. Ill. Sept. 29, 2016) (available at https://scholar.google.com/scholar_case?case=11943389373109735322). That court held that it was "premature to rule [at the motion to dismiss stage of] the litigation that the Defendants can under no circumstances be found to be so intimately involved in the placing of the phone calls to [the plaintiff] as to be deemed an initiator[.]" *Id*. The Court disagrees with this assessment as applied to the Defendants in this case. FCC 13-54 includes a discussion of what constitutes "initiating" a violating phone call that indicates a required involvement far more intimate than any conduct Plaintiff alleges of the virtual telephone number provider defendants in this case. (*See* Doc. 91, at 11–12).