# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: May 29, 2019

Mr. Vincent Lucas
P.O. Box 272
Amelia, OH 45102

       Re:  Case No. 18-3633, *Vincent Lucas v. Telemarketer Calling From, et al*
             Originating Case No. : 1:12-cv-00630

Dear Mr. Lucas,

    The Court issued the enclosed Order today in this case.

                       Sincerely yours,

                       s/Robin Baker
                       Case Management Specialist
                       Direct Dial No. 513-564-7014

cc:  Mr. Richard W. Nagel

Enclosure

Mandate to issue

<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

No. 18-3633

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| VINCENT LUCAS, | ) | |
| | ) | ┌─────────────────────┐ |
| Plaintiff-Appellant, | ) | **FILED** |
| | ) | May 29, 2019 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | └─────────────────────┘ |
| TELEMARKETER CALLING FROM (407) 476- | ) | |
| 5680 AND OTHER TELEPHONE NUMBERS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PACIFIC TELECOM COMMUNICATIONS | ) | |
| GROUP, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before:  GUY, GILMAN, and DONALD, Circuit Judges.

┌────────────────────────────┐
│ **FILED** │
│ May 29, 2019 │
│ DEBORAH S. HUNT, Clerk │
└────────────────────────────┘

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

O R D E R

Before:  GUY, GILMAN, and DONALD, Circuit Judges.

Vincent Lucas, a pro se Ohio resident, appeals a district court judgment dismissing his complaint based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; the Ohio Telemarketing Act ("OTA"), Ohio Revised Code § 109.87; the Ohio Telephone Solicitation Act ("OTSA"), Ohio Revised Code § 4719; the Ohio Consumer Sales Protection Act ("OCSPA"), Ohio Revised Code § 1345; and the Ohio state-law torts of invasion of privacy, negligence, and nuisance.  This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed.  *See* Fed. R. App. P. 34(a).

No. 18-3633

- 2 -

  This case was litigated over a nearly six-year period, including a two-and-a-half year stay during which the case was referred to the Federal Communications Commission ("FCC").  The extensive procedural history begins in 2012, when Lucas filed a lawsuit against several telemarketing companies.  Lucas claimed that the defendants had placed telemarketing calls to his residential telephone number, some of which contained prerecorded messages, despite the fact that he had placed his number on the federal "do-not-call" registry.  Following the resolution of claims against several defendants who are not involved in this appeal and the filing of Lucas's third amended complaint, the lawsuit proceeded against:  Telephone Management Corporation ("TMC"), Pacific Telecom Communications Group ("PacTel"), International Telephone Corporation ("ITC"), TMC President Fred Accuardi, PacTel CEO Steve Hamilton, and F. Antone Accuardi, who is the lawyer for the three corporate defendants.[1]  Lucas claimed that the defendants had violated federal and state law and should be held vicariously, contributorily, or jointly liable for the illegal telemarketing calls placed to his home because the defendants provided substantial assistance to telemarketers while knowing that those telemarketers were engaged in practices that violate the TCPA and Ohio law.  Lucas sought monetary and injunctive relief.

  Lucas alleged that the TMC group:  (1) sold telephone numbers to its telemarketer clients; and (2) provided the telemarketers with Caller Name Management Service ("CNAM"), which allowed them to specify any name they chose to be displayed on a consumer's caller ID device.  (As noted below, the latter practice is sometimes referred to as "number spoofing.")  He also alleged that the TMC group received payments from local telephone companies each time a telephone company accessed the CNAM to determine which number to display on a consumer's caller ID device, and that the TMC group shares this revenue with its telemarketer clients.  He argued that this revenue sharing encouraged telemarketers to make an increased number of illegal calls because the telemarketers are paid for making the calls even if the consumer does not answer the call or take advantage of the service or product being offered.  Finally, Lucas alleged that:

---

[1] The corporate defendants identified as TMC, PacTel, and ITC are also referred to collectively as "the TMC group."

No. 18-3633
- 3 -

(1) "TMC either originated the telemarketing calls that [he] received [from] . . . 508-475-1352 and 508-475-1394 . . . , or [TMC] provided substantial assistance and support to the telemarketer who originated those calls knowing that the telemarketer was engaged in acts or practices that violate [the TCPA]"; and (2) TMC and ITC operate as "alter egos" for defendant Fred Accuardi because he has "commingled his personal finances with those of [TMC]" and TMC and ITC are controlled by Fred Accuardi and his family.

Prior to the filing of Lucas's third amended complaint, the defendants sought to settle "the matter in its entirety," including both the state- and federal-law claims, by making a $5,000 "cure offer" pursuant to the OCSPA. Although Lucas offered to "accept," he clarified that any settlement of his state-law claims would *not* constitute a settlement of his federal-law claims. Subsequently, Lucas moved for partial summary judgment with respect to his state-law claims based on the defendants' "cure offer." A magistrate judge recommended that the district court deny Lucas's motion. The district court adopted the magistrate judge's recommendation, concluding in relevant part that the defendants' inclusion of a "global settlement offer" within the "cure offer" rendered the proposed settlement unenforceable under the OCSPA.

Thereafter, the defendants moved to dismiss the claims asserted in Lucas's third amended complaint, arguing that Lucas had failed to allege facts establishing that they could be held vicariously liable for the telephone calls initiated by its telemarketer clients. Lucas responded.

On March 20, 2014, the magistrate judge recommended partially granting the defendants' motion with respect to Lucas's TCPA claims, reasoning that Lucas had failed to present any persuasive authority establishing that the defendants could be held vicariously liable under the Act. The magistrate judge relied on an FCC declaratory ruling that clarified the parameters of vicarious liability under the TCPA and determined that only persons or entities that "'initiate[d]' a telephone call" could be held directly liable under the TCPA. *See In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583, ¶ 26 (2013).[2] Therefore, the magistrate judge recommended dismissing Lucas's

_____

[2] The FCC noted that a "seller" may be held vicariously liable for calls placed by third-party telemarketers under traditional agency principles, including apparent authority and ratification. *Id*. at ¶ 28.

TCPA claims, reasoning that the defendants could not be liable for calls that they did not "initiate," and that Lucas had failed to sufficiently allege facts establishing "vicarious liability" because he did not claim that the defendants had any form of agency relationship with the telemarketers who actually initiated the telemarketing calls to his residence. However, because Lucas *did* allege that TMC (and Fred Accuardi by extension) had initiated two telemarketing calls from the "508" area-code numbers, the magistrate judge recommended that those claims be permitted to proceed. The magistrate judge also recommended rejecting Lucas's arguments that the TMC group could be held liable for "aiding and abetting" illegal telemarketing calls under Ohio or federal law. In addition, the magistrate judge concluded that Lucas had failed to sufficiently allege that the TMC group could be held liable based on a "joint enterprise" theory of liability.

The magistrate judge recommended dismissing Lucas's remaining claims because: (1) Lucas failed to state a claim under the Ohio statutes in that (a) the OTA does not provide for a private right of action, (b) the OTSA permits a "purchaser" to seek relief only against a "telephone solicitor or salesperson who committed [a] violation" under that Act, and (c) the defendants are not "suppliers" against whom a claim may be pursued under the OCSPA and, alternatively, the OCSPA claims were subject to dismissal as derivative of Lucas's meritless TCPA claims; (2) Lucas failed to state a negligence claim because he did not allege that the defendants breached any duty owed to him under federal or state law; (3) Lucas failed to state claims for nuisance and invasion of privacy; and (4) Lucas failed to state claims against F. Antone Accuardi and Steve Hamilton because he did not sufficiently allege that they were personally involved in the illegal telemarketing calls.

Subsequently, Lucas filed a notice advising the district court that he had petitioned the FCC for an expedited declaratory ruling on whether "a person is vicariously or contributorily liable if that person provides substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates [the TCPA]." He requested that the court stay its ruling on the defendants' motion to dismiss and refer the case to the FCC under the "primary jurisdiction doctrine" set forth in *Charvat v. EchoStar Satellite*, *LLC*, 630 F.3d 459 (6th Cir. 2010) ("*Charvat I*"). On August 5,

2014, District Judge Spiegel granted Lucas's motion, concluding that Lucas's arguments concerning whether the defendants could be held vicariously liable under the TCPA presented a question of first impression, and that each of the *Charvat I* factors warranted referral of his case to the FCC.

Despite the stay, the magistrate judge conducted a telephone conference with the parties and directed them to continue with discovery concerning the identity of the "true caller" from the "508" area-code numbers. Thereafter, Lucas filed a motion seeking to hold TMC, PacTel, and Fred Accuardi in contempt of court and seeking $11,579 in sanctions, pursuant to Federal Rule of Civil Procedure 37(b) and the court's "inherent power," arguing that: (1) TMC and Accuardi had destroyed evidence and/or failed to timely complete discovery identifying Sale Technology as the "true caller" associated with the "508" area-code numbers; and (2) PacTel and Accuardi had failed to respond fully to a subpoena requiring them to provide records identifying the persons or entities to whom certain numbers had been assigned and the officers/owners of those entities. The magistrate judge recommended that the district court order Accuardi and TMC to each pay Lucas $500 for failing to respond adequately to Lucas's discovery requests, but recommended denying default judgment. She also recommended holding Lucas's request for sanctions against PacTel and Accuardi in abeyance. The district court rejected the parties' objections, adopted the magistrate judge's report, and imposed the recommended sanctions.

Thereafter, Lucas filed a motion for a ruling on his request for sanctions against PacTel and Accuardi and a new motion seeking to impose additional sanctions against PacTel and Accuardi and to hold them in contempt for allegedly submitting false statements in defense of PacTel's subpoena response. The magistrate judge recommended denying Lucas's request for sanctions against PacTel and increasing the sanctions against TMC and Accuardi to $1,000 each. The district court overruled Lucas's objections and adopted the recommendations.

On June 5, 2017, District Judge Black lifted the stay and adopted the magistrate judge's March 20, 2014 recommendation to partially grant the defendants' motion to dismiss Lucas's claims. Specifically, the district court dismissed: (1) all claims against F. Antone Accuardi, Steve Hamilton, ITC, and PacTel; and (2) the claims against TMC and Fred Accuardi, with the exception

No. 18-3633
- 6 -

of Lucas's TCPA claims against those two defendants for monetary and injunctive relief with respect to the two calls from the "508" area-code numbers.

On July 12, 2017, Lucas moved to file a fourth amended complaint seeking, in part, to: (1) incorporate direct-liability principles that he alleged had been set forth in *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015), and *In re Dialing Services, LLC*, 32 FCC Rcd. 6192 (2017); (2) add a civil conspiracy claim; and (3) bolster his allegations that the Accuardis and Hamilton were personally involved in the alleged violations. The magistrate judge issued a report recommending that the district court deny the motion to amend. The district court overruled Lucas's objections and denied the motion to amend based on "undue delay" and prejudice to the defendants.

In April 2018, the magistrate judge convened a telephonic status conference, during which Lucas conceded that, in light of the court's prior rulings and of the evidence that Sale Technology had initiated the two calls from the "508" area-code numbers, no triable issues remained in the case. Lucas urged the court to enter judgment in favor of the defendants on those remaining claims so that he could pursue an appeal. The magistrate judge construed Lucas's oral motion as a request to dismiss the case pursuant to Federal Rule of Civil Procedure 41 and recommended partially granting the defendants' motion to dismiss, for the reasons set forth in the March 20, 2014 report and recommendation, and dismissing the remaining claims against Fred Accuardi and TMC because they did not initiate the calls from the "508" area-code numbers. No parties objected, and the district court adopted the magistrate judge's recommendation and dismissed the case with prejudice.

On appeal, Lucas argues that the district court erred when it: (1) lifted the stay holding the case in abeyance pending a declaratory ruling from the FCC; (2) dismissed his TCPA claims; (3) dismissed his non-TCPA claims; (4) denied him leave to file a fourth amended complaint; and (5) imposed inadequate sanctions for the defendants' violation of the court's discovery orders and failed to impose sanctions against Fred Accuardi and PacTel for failing to respond fully to a subpoena and for submitting a perjurious affidavit. Lucas moves for oral argument, requests that this court elaborate on the procedures that should be followed when a district court intends to

No. 18-3633

- 7 -

"undo its referral to the FCC's primary jurisdiction," requests that the court determine the status of his FCC petition, and moves for an expedited ruling on his appeal.

**Abeyance Pending FCC Referral**

The district court did not err when it lifted the stay holding the case in abeyance pending an FCC declaratory ruling and granted the defendants' two-and-a-half-year-old motion to dismiss. District courts have federal-question jurisdiction over claims brought pursuant to the TCPA. *See* 28 U.S.C. § 1331; *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011) ("*Charvat II*"); *Charvat I*, 630 F.3d at 465. However, pursuant to the "primary jurisdiction" doctrine, a court may refer a TCPA case to the FCC "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [that] administrative body[.]" *Charvat I*, 630 F.3d at 466 (third alteration in original) (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 63-64 (1956)). "[C]ourts have considered referring matters to agencies for a variety of reasons: (1) to advance regulatory uniformity; (2) "to answer a question . . . within the agency's discretion, and (3) "to benefit from 'technical or policy considerations within the agency's . . . expertise.'" *Id.* (ellipses in original) (internal citations and quotation marks omitted). Lucas argues that the district court erred when it lifted the stay and ruled on the defendants' motion to dismiss because this court has held that issues of first impression concerning vicarious liability under the TCPA should be referred to the FCC under the primary-jurisdiction doctrine; Judge Spiegel had already determined that Lucas's arguments presented a question of first impression and that each of the *Charvat I* factors warranted referral of his case to the FCC; the nearly three-year waiting period for an FCC ruling on his petition is not uncommon (Lucas notes that the FCC took more than two years to issue its ruling in *Charvat I*); and Judge Black failed to contact the FCC to determine the status of Lucas's petition.

Lucas has not established that the district court erred when it lifted the stay. Contrary to Lucas's argument, *Charvat I* does not stand for the proposition that issues of first impression *must* be referred to the FCC. Rather, the case identified factors to be considered when determining whether a referral is warranted and permits "courts to make a workable allocation of business between themselves and the [FCC]." *Id.* (quoting *Civil Aeronautics Bd. v. Modern Air Transp.,*

No. 18-3633
- 8 -

*Inc.*, 179 F.2d 622, 625 (2d Cir. 1950)). Furthermore, as the district court correctly determined, nothing in *Charvat I* requires referral to the FCC "without regard to timely disposition of [an] underlying case." Judge Black noted that Judge Spiegel acknowledged that Lucas's arguments concerning vicarious liability did *not* require the *technical expertise* of the FCC and concluded that the court was capable of engaging in the necessary statutory interpretation to determine whether Lucas's theory of liability applied in the context of the TCPA regulatory scheme. In addition, there was no need to contact the FCC to determine the status of Lucas's petition before lifting the stay because Lucas had provided an April 26, 2017 status report, which indicated that the petition was still pending, and there was no indication of when a ruling could be forthcoming. Finally, although the district court acknowledged that a ruling on Lucas's case "could create a situation in which the FCC's ultimate decisions on the issues raised [in Lucas's] petition [are] contrary to the Court's decision," the court noted that it could address the retroactive application of any FCC declaratory ruling after any such ruling was issued. Under these circumstances, Lucas has not established that the district court erred by lifting the stay, and despite Lucas's request, there is no cause for this court to provide further guidance on when a district court may lift such a stay.

**Dismissal of TCPA Claims**

1.      We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). **TCPA Liability based on Vicarious and Contributory Liability**

The TCPA prohibits a person from: (1) "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party"; or (2) making live calls to residential telephone numbers that have been placed on the national do-not-call registry. *See* 47 U.S.C. § 227(b)(1)(B). (c) (as implemented in 47 C.F.R. § 64.1200(c)(2)); *IMHOFF Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627,

635 (6th Cir. 2015); *Charvat II*, 656 F.3d at 446-48. In *Dish Network*, the FCC clarified that a "telemarketer" is "the person or entity that initiates a [telemarketing] call," i.e., "takes the steps necessary to physically place a telephone call, and generally does not include persons or entities . . . that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." 28 FCC Rcd. at 6583, ¶ 26, 27.; *see also IMHOFF*, 792 F.3d at 635. However, the FCC concluded that inclusion of the phrase "on behalf of" in § 227(c)(5), which creates a private right of action to challenge multiple live calls, allowed for a "seller" to be held vicariously liable under traditional agency tenets, including "not only formal agency, but also principles of apparent authority and ratification." *Dish Network*, 28 FCC Rcd. at 6584, ¶ 28. Furthermore, as the district court noted, although the "on-behalf-of" language does not appear in § 227(b)(3), the pre-recorded-message subsection, the FCC indicated that both provisions should be interpreted in like manner under federal common-law principles. *Id.* at 6582, ¶ 24; 6585-86, ¶¶ 31-32.

The district court properly concluded that Lucas failed to state a vicarious-liability claim under the TCPA. Lucas reasserts his arguments that the defendants are liable under the TCPA for knowingly assisting telemarketers in the making of illegal telemarketing calls and financially rewarding those telemarketers by sharing with them revenue that is derived from local telephone providers' use of the defendants' CNAM services. He argues that the district court and magistrate judge misconstrued the holding in *Dish Network* when they concluded that no one other than the actual caller can be held liable under the TCPA, even where the defendant "knows that its services are being used for illegal telemarketing." He also maintains that *Dish Network* is not dispositive of his claims because that case did not address the issue of whether a defendant can be held vicariously liable for willfully facilitating and financially rewarding TCPA violations. Lucas contends that vicarious and contributory liability should be applied to the TCPA, even though "vicarious" liability is not expressly included in the TCPA, because vicarious liability has been found to exist in other contexts within the framework of many federal statutes and laws that do not explicitly include vicarious liability in the language of the Act. He also argues that the district court erred by not considering: (1) the FCC's subsequent rulings in *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991* and *In re Dialing Services, LLC*,

No. 18-3633
- 10 -

which he contends adopted his theory that defendants who knowingly assist TCPA violations can be held directly liable under the Act; and (2) the defendants are liable because they engaged in a civil conspiracy with their telemarketer clients to violate the TCPA and OCSPA.

Despite Lucas's arguments, he failed to state a claim under the TCPA. First, although Lucas originally alleged that TMC and Fred Accuardi initiated calls from the "508" area-code numbers, the defendants have since identified Sale Technology as the true caller. Therefore, the district court properly dismissed any claims that these two defendants are *directly* liable under the TCPA. Second, Lucas failed to sufficiently allege facts indicating that that the defendants can be held vicariously liable under the TCPA. In determining that vicarious liability *could* be applied to claims for relief under the TCPA, the FCC noted that "[t]he classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control," and extends to situations where a "third party has apparent (if not actual) authority" to act as a principal's agent. *Dish Network*, 28 FCC Rcd. at 6586, ¶ 34. Finally, ratification occurs when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions. *Sphere Drake Ins. v. Am. Gen. Life Ins.*, 376 F.3d 664, 677 (7th Cir. 2004).

Lucas argues that the defendants should be held vicariously liable for the illegal telemarketing calls made to his home because the defendants willfully encouraged and contributed to the illegal telemarketing practices engaged in by their telemarketer clients. However, Lucas cannot establish vicarious liability because he failed to allege facts indicating "formal agency," "apparent authority," or "ratification." Lucas did not allege facts indicating that the telemarketers were acting "on behalf of" the defendants or that they were subject to their control. Nor did he allege that the telemarketers believed that they had apparent authority to act as agents for the defendants. *See Dish Network*, 28 FCC Rcd. at 6586, ¶ 34. Lucas also failed to allege that the telemarketers took any action on behalf of the defendants that the defendants ratified. *See Sphere Drake Ins.*, 376 F.3d at 677.

No. 18-3633
- 11 -

a.  Motion to Amend Theory of Liability

Lucas sought to file a fourth amended complaint, seeking to rely on the FCC's rulings in *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991* and *In re Dialing Services, LLC*, in support of an alternative theory that the defendants could be held *directly* liable under the TCPA with respect to calls that they did not personally "initiate."  As noted above, Lucas did not seek leave to file this proposed amended complaint until after the district court had adopted the magistrate judge's 2014 recommendation and effectively dismissed all of Lucas's claims except for his assertion of direct liability for the "508" area-code calls allegedly made by TMC and Fred Accuardi.  He argued that those FCC declaratory rulings extended TCPA liability to situations in which a person knowingly assists in TCPA violations.  He also sought to add a civil-conspiracy claim.  Lucas argues that the district court abused its discretion when it denied his motion based on undue delay and prejudice to the defendants because his third amended complaint already sufficiently alleged the new theories of liability; he promptly sought leave to amend *after* the district court partially granted the defendants' motion to dismiss; and any delay in filing his motion was caused by the district court's delay in ruling on the defendants' motion to dismiss in light of the order staying the proceedings.

The district court did not abuse its discretion when it denied Lucas's motion to amend his complaint.  Although "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), denial of leave to amend the complaint may be appropriate where there is "undue delay." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Lucas's motion for leave to file a fourth amended complaint was filed nearly four years after he filed his third amended complaint.  Moreover, the order granting leave to file the third amended complaint set a December 2, 2013 deadline for any further amendments.  The district court concluded that Lucas's decision to wait until July 2017 to request to amend his complaint based, in part, on a 2015 FCC ruling constituted excessive delay and would result in undue prejudice to the defendants.  In addition, the district court rejected Lucas's argument that the delay was excusable in light of the court-ordered stay of the proceedings, finding that Lucas had remained active during the period of abeyance and filed

several motions during that time frame.  Under these circumstances, the denial of the motion for leave to file a fourth amended complaint was not an abuse of discretion.

    2.  <u>TCPA Liability based on Aiding and Abetting and Joint Enterprise</u>

Lucas has not reasserted any argument in support of his claim that the defendants were liable under the TCPA based on theories of "aiding and abetting" or "joint enterprise."  Therefore, those issues are considered abandoned and will not be reviewed.  *See Post v. Bradshaw*, 621 F.3d 406, 413-14 (6th Cir. 2010).

**<u>Dismissal of Non-TCPA Claims</u>**

    1.  <u>Ohio Statutory Claims</u>

The district court properly concluded that Lucas's allegations failed to state a claim under the OTA, the OTSA, and the OCSPA.  Lucas argues that he stated a viable claim under the OCSPA because the defendants are "suppliers" under that statute in that they knowingly assisted illegal telemarketing practices directed at consumers and "effect[ed] consumer transactions."  He notes that the statute defines a "supplier" as any person "engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."  Ohio Rev. Code § 1345.01(C).  He argues that the defendants' conduct effects consumer transactions because they provide their telemarketer clients access to consumers who would automatically screen the telemarketers' calls but for the CNAM services provided by the defendants.  Lucas maintains that his allegations established that the defendants engaged in a civil conspiracy with their telemarketer clients to violate the FTC Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, which prohibits "assisting and facilitating" illegal telemarketing practices, and therefore committed per se violations of the OCSPA.  Next, Lucas argues that the district court improperly concluded that PacTel is a "public utility" that is specifically excluded from the definition of "consumer transaction" under the OCSPA because telephone companies are exempt only when they transmit telephone messages, conduct which the defendants deny.

The district court properly dismissed Lucas's OCSPA claims because he failed to present persuasive authority establishing that the defendants are "suppliers" as defined under the Act. Despite Lucas's argument that the defendants' CNAM services effected consumer transactions,

No. 18-3633
- 13 -

the district court adopted the magistrate judge's determination that the defendants did not "effect" or "solicit" any of the telemarketing calls in this case and that any financial benefit that the defendants received from the use of the CNAM service was "too far removed from the actual [telemarketer] solicitation" to hold them directly responsible under the OCSPA. *See Charvat v. Farmers Ins. Columbus, Inc.*, 897 N.E.2d 167, 178 (Ohio Ct. App. 2008).

The district court also rejected Lucas's argument that the defendants' alleged violation of the TSR constituted a separate violation of the OCSPA. Lucas argued that Ohio case law listed in the Public Inspection File ("PIF") established that the defendants were liable under the OCSPA because they violated the TSR by "assisting and facilitating" illegal telemarketing calls. The magistrate judge rejected this argument, reasoning that the unpublished case law contained in the PIF relied on an extremely broad construction of the OCSPA and was neither persuasive nor dispositive of whether a TSR violation constituted an automatic violation of the OCSPA. The magistrate judge concluded that Lucas's reliance on the cases cited in the PIF was misplaced and that the significance of those opinions is overstated because the Ohio Attorney General's decisions to cite those opinions in the PIF is not discretionary. Rather, the Ohio Attorney General is directed to "[m]ake available for public inspection all . . . judgments, including supporting opinions, by courts of this state . . . determining that specific acts or practices violate section 1345.02, 1345.03, or 1345.03 of the Revised Code." *See* Ohio Rev. Code §§ 1345.05(A)(3), 1345.09(B). Lucas has failed to cite any additional persuasive authority to support his argument that a violation of the TSR constitutes a per se violation of the OCSPA.

Alternatively, the district court dismissed Lucas's OCSPA claims as derivative of his TCPA claims. Again, because Lucas failed to present any persuasive authority establishing that a violation of the TSR constitutes a distinct violation of the OCSPA, the district court properly determined that his OCSPA claims were subject to dismissal for the same reasons supporting the dismissal of his TCPA claims. Similarly, even if PacTel were not exempt as a public entity, the claim against PacTel was properly dismissed because he failed to state a viable OCSPA claim.

No. 18-3633
- 14 -

Finally, Lucas has not reasserted any argument in support of his claims under the OTA or the OTSA.  Therefore, those claims are considered abandoned and will not be reviewed.  *See Post*, 621 F.3d at 413-14.

2.  State Tort Claims

The district court properly dismissed Lucas's state-law tort claims.  Lucas argues that the district court incorrectly determined that he failed to state negligence and nuisance claims because the defendants owed him a duty under the TCPA and the TSR to not assist in illegal telemarketing practices and "a general duty not to use their property in a manner that 'injures the rights of others.'"  He contends that the CNAM revenue-sharing program injured him because it resulted in an increased number of illegal telemarketing calls being placed to his home.

The district court properly dismissed Lucas's negligence claim.  In order to prevail on a negligence claim under Ohio law, "a plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury."  *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 200 (Ohio 1998).  Here, the district court concluded that Lucas failed to allege sufficiently that the defendants owed him any "duty" under federal or state law.  In addition, despite Lucas's argument that the defendants owed him a duty not to violate laws prohibiting a defendant from assisting and facilitating illegal telemarketing, the district court properly concluded that "the violation of an administrative rule does not constitute negligence per se."  *See id.* at 203.  Finally, the district court adopted the magistrate judge's determination that the defendants did not violate a general duty to avoid using their property, e.g., their telephone numbers and CNAM service, in a manner that caused him injury in the form of increased telemarketing calls.  The district court concluded that Lucas's claim failed because the duty alleged to exist arose only from the TCPA and was not a duty recognized in the common law.  *Cf. Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 395-96 (Tex. Ct. App. 2004), *rev'd on other grounds*, 184 S.W.3d 707 (2006).

The district court also properly determined that Lucas failed to state a nuisance claim.  In support of this claim, Lucas alleged that the defendants' actions "are a nuisance which disturbs the physical senses and interferes with [his] lawful enjoyment of [his] home."  However, the district

court concluded that no controlling Ohio law supports recovery on this nuisance theory and dismissed the claim for the same reasons that it dismissed Lucas's OCSPA claim. Lucas has not presented any controlling authority supporting a distinct nuisance claim for illegal telemarketing claims that is separate from a claim under the OCSPA.

Finally, Lucas has not reasserted any argument in support of his invasion-of-privacy claim. Therefore, the claim is considered abandoned and will not be reviewed. *See Post*, 621 F.3d at 413-14.

### Rulings on Lucas's Requests for Sanctions

We review a district court's decision on whether to impose sanctions under Rule 37 for an abuse of discretion. *McCarthy v. Ameritch Publ'g, Inc.*, 763 F.3d 488, 491-92 (6th Cir. 2014). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Id.* (quoting *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994)).

Lucas sought $11,579 in sanctions based on: the loss of an OCSPA claim against Sale Technology, which he valued at $1,600; the loss of a TCPA claim against Sale Technology, which he valued at $6,000; and $3,979 in compensation for 71 hours '"wasted' because of the Defendants' discovery violations, including 42 hours preparing [his motion for sanctions]." Lucas alleged that the defendants initially responded that they had no records identifying the "true caller" and identified Sale Technology as the "true caller" only after the magistrate judge had recommended that Lucas's TCPA direct-liability claims could proceed against TMC and Accuardi. Lucas argued that the discovery violations prejudiced him because the delay resulted in the expiration of the two-year statute of limitations for an OCSPA claim against Sale Technology in that it prevented Lucas from amending his complaint to add Sale Technology as a defendant.

The district court did not abuse its discretion when it determined the amount of sanctions to be imposed against TMC and Accuardi. Based on the magistrate judge's recommendation, the district court concluded that sanctions were appropriate due to the defendants' delay in identifying Sale Technology, but it determined that no sanctions were warranted concerning the destruction

of certain records because they had been destroyed pursuant to ordinary business-records policy. In addition, Lucas failed to meet his burden of establishing that the defendants were on notice at the time the records were destroyed that they could be sued based on their clients' allegedly illegal telemarketing practices or that they had a duty to preserve any records relating to its telemarketer clients in 2011. *See Ross v. Am. Red Cross*, 567 F. App'x 296, 302-03 (6th Cir. 2014); *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Finally, although the district court noted that any OCSPA claim would be time-barred, it determined that Lucas had not alleged facts indicating that a TCPA claim against Sale Technology would be untimely. Under these circumstances, Lucas has not established that the sanctions imposed against TMC and Accuardi were unreasonable.

The district court did not abuse its discretion when it declined to impose sanctions against PacTel and Accuardi. Lucas sought sanctions against these defendants because PacTel allegedly failed to respond accurately to a subpoena requiring identification of the entities to whom certain numbers had been assigned and the owner of those entities when it denied having documents identifying the names of ITC's "owners, employees or representatives." Lucas alleged that Accuardi submitted a false affidavit in support of PacTel's response to the subpoena, in light of the fact that Accuardi is the PacTel CEO, general manager of ITC, and majority owner of both companies. The magistrate judge acknowledged that she was "troubled by the six related Defendants' apparent attempts to conceal the close relationships between three entities and Fred Accuardi, including PacTel's apparently incomplete disclosure of its close ties with ITC." However, she determined that no sanctions were warranted because Lucas had discovered the relationship between PacTel and ITC through other means, and because the delay had no impact on the litigation in light of the fact that Lucas's claims against PacTel and ITC were subject to dismissal based on the lack of a viable theory of liability under the TCPA.

Finally, Lucas's argument that the sanctions imposed failed to compensate him for litigating the defendants' discovery violations is unavailing. Relying on *Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365 (Fed. Cir. 2002), Lucas contends that the sanctions imposed should have included the equivalent of "attorneys fees," even though he was proceeding pro se. But a pro se plaintiff cannot recover attorneys fees under Rule 37. *See, e.g.*, *Wright v. Crowell*,

No. 18-3633
- 17 -

674 F.2d 521, 521-22 (6th Cir. 1982) (holding that a pro se litigant is not entitled to an award of attorneys fees under 42 U.S.C. § 1988); *see also Kay v. Ehrler*, 499 U.S. 432, 435-36 (1991) (holding that a lawyer who represents himself may not recover attorneys fees under 42 U.S.C. § 1988). Furthermore, Lucas's reliance on *Pickholtz* is misplaced because that decision recognized "that there is no federal statutory or appellate precedent for imposing attorney fees sanctions in favor of a *pro se* attorney under a court's inherent power." 284 F.3d at 1377. Nevertheless, the court held that "the district court . . . abused its discretion in determining that it lacked authority to award attorneys fees to a *pro se* attorney." *Id*. at 1377-78. But, in this case, there is no indication that the district court determined that it lacked inherent authority to award attorneys fees, and, in any event, Lucas is not an attorney.

Accordingly, we **DENY** the request for oral argument, **AFFIRM** the district court's judgment, and **DENY** the remaining motions and requests as moot.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk